UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BUZZFEED, INC.,

    Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE, ET AL.,

    Defendants.

No. 1:18-cv-01556-TSC

**DEFENDANTS' STATEMENT OF MATERIAL FACTS
NOT IN GENUINE DISPUTE**

Pursuant to Local Civil Rule 7(h), Defendants Department of Justice ("DOJ") and Federal Bureau of Prisons ("BOP"), through undersigned counsel, respectfully submit this Statement of Material Facts Not in Genuine Dispute in support of Defendants' Motion for Summary Judgment.

**I.**    **PLAINTIFF'S FOIA REQUEST**

    **A.**    **Submission and Referral of Plaintiff's FOIA Request**

1. By electronic submission through the DOJ web portal on August 25, 2015, Christopher McDaniel submitted a FOIA request, which was assigned tracking number EMRUFOIA082515-2 by DOJ. Declaration of Kara Christenson ("Christenson Decl.") ¶ 12 & Ex. A.

2. In his request, Mr. McDaniel sought "copies of any and all records in the possession of the Department of Justice, regardless of who produced them, regarding the following over the past 2 years ending today:

    1.    Emails pertaining to an effort to obtain lethal injection chemicals;
    2.    Emails pertaining to an attempt to select a drug for use in lethal injections;
    3.    Emails in which sodium thiopental, midazolam, pentobarbital were discussed;

1

      4.    All records indicating the federal government's current inventory of execution drugs;

      5.    All records indicating the source of all execution drugs in the federal government's current inventory;

      6.    All records indicating the person or persons that authorized the purchase(s) of all execution drugs in the federal government's current inventory;

      7.    All email messages between the Department and any supplier or potential supplier of execution drugs;

      8.    All email messages between the Department and the Bureau of Prisons regarding execution drugs."

Christenson Decl. ¶ 12 & Ex. B.

3. This request was referred to BOP on August 31, 2015, and BOP Central Office FOIA staff assigned FOIA Request No. 2015-07460 to the request. Christenson Decl. ¶ 13.

4. At the time, BOP determined that all responsive documents should be withheld in full pursuant to FOIA exemption 7(A). *Id.* ¶ 15 & Ex. C.

5. BOP further determined that FOIA Exemptions 5, 6, 7(C), 7(E) and 7(F) were also applicable. *Id.* ¶ 15 & Ex. C.

6. By letter on May 10, 2017, BOP informed Mr. McDaniel of the release determination, the nature of the exemptions applied, and was advised of his right to appeal BOP's determination to the Office of Information and Policy ("OIP"). Christenson Decl. ¶ 16 & Ex. C.

### B. Plaintiff's Appeal to OIP

7. On July 7, 2017, Mr. McDaniel filed an appeal with OIP regarding BOP's total withholding of the documents responsive to FOIA Request No. 2015-07460. The appeal was assigned Appeal No. DOJ-AP-2017-005146. Christenson Decl. ¶ 17 & Ex. D.

8. On September 19, 2017, OIP issued its response upholding BOP's determination, on modified grounds. In its response, OIP concluded that "BOP properly withheld this

information in full because it is protected from disclosure under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(A) and it is reasonably foreseeable that disclosure of this information would harm the interests protected by this provision." Christenson Decl. ¶ 18. Because OIP determined the information was properly withheld pursuant to Exemption 7(A), it did not address BOP's application of any other FOIA exemptions. *Id*. ¶ 18 & Ex. E.

## II. THE INSTANT LITIGATION AND DEFENDANT'S PRODUCTIONS

9. Plaintiff Buzzfeed, Inc. ("Buzzfeed"), filed the instant lawsuit on June 29, 2018. Compl., ECF No. 1.

10. BOP filed its Answer on September 17, 2018. Answer, ECF No. 12.

11. BOP filed a motion to dismiss for lack of jurisdiction on May 17, 2019, on the grounds that Buzzfeed did not have standing to file the Complaint given that Mr. McDaniel was the individual who filed the FOIA request. Defs.' Mot. to Dismiss, ECF No. 26.

12. Buzzfeed filed its opposition to BOP's motion on June 28, 2019, in which it argued, *inter alia*, that Buzzfeed did have standing to sue because Mr. McDaniel was acting in his capacity as a reporter for Buzzfeed. Pl.'s Opp'n, ECF No. 27.

13. BOP filed its reply on July 30, 2019. Defs.' Reply, ECF No. 29.

14. On March 11, 2020, the Court held an in-person hearing and denied BOP's motion to dismiss in an oral ruling. *See* Minute Order (Mar. 11, 2020).

## III. BOP'S SEARCH AND PROCESSING OF EMAIL RECORDS

15. BOP has conducted a search for documents responsive to Mr. McDaniel's request. *See* Christenson Decl. ¶ 20.

### A. BOP Netmail System

16. Mr. McDaniel's FOIA request sought eight (8) total categories of records, five (5) of which, specifically Subparts 1-3 and 7-8, requested emails. *See id.* ¶ 21 & Ex. B.

17. BOP uses a Novell GroupWise email system to provide internal and external email communication by staff. To archive email, BOP also uses the Netmail Email Archive System ("Netmail"). Netmail collects email content directly from GoupWise and saves it into its separate system in an SML file format, preserving applicable metadata in the corresponding property page. Regular email messages are flagged for a seven-year retention period and emails flagged as trash are subject to a 45-day retention period. *Id*. ¶ 22.

18. Via Netmail, BOP staff email is ordinarily searchable using names, date ranges, and specific search terms. After the email is searched and responsive email is located and collected, that email can be exported from Netmail for review purposes and will automatically include the corresponding property page(s). *Id*. ¶ 23.

   **B.   Search Parameters**

19. BOP identified key words generated from Mr. McDaniel's FOIA request and then identified staff who have been involved with obtaining, selecting, or purchasing lethal injection substances during the relevant time frame, including staff at the Central Office and NCRO who oversee the United States Penitentiary located in Terre Haute, Indiana ("USP Terre Haute"), where executions for BOP inmates are performed. *Id*. ¶ 25.

20. BOP then conducted an email search of eight (8) custodians (current and retired) using the following parameters:

    a.   <u>Date Range</u>:  August 25, 2013 through August 25, 2015.[1]

---

[1] Mr. McDaniel's FOIA request, submitted to DOJ on August 25, 2015, requested records from "the past 2 years ending today." As such, his request was interpreted as a request for records from August 25, 2013, through August 25, 2015. Christenson Decl. ¶ 12 n.3 & Ex. B.

4

   b. <u>Search Terms</u>: separate searches for each identified individual for each term using the following broad terms:

    (1) "Lethal Injection"
    (2) "Execute"
    (3) "Execution"
    (4) "Thiopental"
    (5) "Midazolam"
    (6) "Pentobarbital"

*Id.* ¶ 26.

21. BOP then reviewed all potentially responsive email records and determined that 154 records were responsive to Mr. McDaniel's FOIA request. *Id.* ¶ 36. Among those 154 records, seventy-five (75) records were deemed duplicative. *Id.*

22. BOP assigned each email record identified as responsive or duplicative a record number. Each record number, along with a brief description of the record and information withheld, as well as the FOIA Exemptions applied to the withheld information, has been enumerated in the attached *Vaughn* Index. *Id.* ¶ 37 & Ex. F.

**IV.** **BOP'S SEARCH AND PROCESSING OF NON-EMAIL RECORDS**

23. Mr. McDaniel's FOIA request, specifically subparts 4-6, sought records that were not specifically identified as email records. *Id.* ¶ 40 & Ex. B.

  **A.** <u>**Search for Records**</u>

24. During the relevant time frame, lethal injection substances, if any, would have been purchased by USP Terre Haute, and stored in locked space at that facility, to which only specific staff would have had access. Documents reflecting the inventory or purchase of such substances during the relevant time frame would have been maintained in a locked filing cabinet located at USP Terre Haute, to which only specified staff had access. Additionally, pursuant to BOP policy, any purchasing documents generated during the

5

relevant time frame would have been forwarded for budgeting purposes to the Financial Management Department at NCRO, and would have been maintained in a locked filing cabinet to which only specified staff had access. *Id*. ¶¶ 41-42.

25. As a result, BOP staff at USP Terre Haute and the NCRO Financial Management Department were instructed to conduct a search for any records responsive to subparts 4-6 of his request. *Id*. ¶ 43.

26. An authorized USP Terre Haute staff member conducted a search of records within the relevant time frame (i.e., from August 25, 2013, through August 25, 2015) maintained in the locked filing cabinet where the inventory and purchasing documents would have been located. Seven (7) pages of documents were located and processed. *Id*. ¶ 44.

27. In addition, an authorized Financial Management staff member conducted a search of records maintained in the relevant NCRO locked filing cabinet within the relevant time frame (i.e., from August 25, 2013, through August 25, 2015). Eight (8) pages of documents were located and processed. *Id.* ¶ 45.

**B.     Review of Records**

28. BOP reviewed the fifteen (15) pages of records and determined that eleven (11) pages were responsive, non-duplicative records. These records were divided into five (5) categories: (1) inventory log; (2) inventory form; (3) invoices; (4) credit card purchase forms; and (5) packaging slips. *Id*. ¶¶ 46-47.

29. Each category of records was assigned a record number. Each record number, along with a brief description of the record and information withheld, as well as the FOIA Exemptions applied to the information withheld, is enumerated in the attached the *Vaughn* Index. I*d*. ¶ 48 & Ex. F.

## V. RELEASE OF RECORDS

30. After thoroughly reviewing and processing each responsive record, BOP partially released five (5) responsive records to Mr. McDaniel:

    a. Record No. 153

    b. Record No. 154

    c. Record No. 155

    d. Record No. 156

    e. Record No. 158

    Christenson Decl. ¶¶ 38, 50.

31. Information withheld from these records is described in the *Vaughn* Index attached as Ex. F to the Declaration of Kara Christenson and supported by the FOIA exemptions as described below. *Id*. ¶¶ 50-51.

## VI. APPLICATION OF EXEMPTIONS

### A. Exemption 4

32. Exemption 4 protects "trade secrets and commercial or financial information obtained from a person which is privileged or confidential." *See* 5 U.S.C. § 552(b)(4). BOP has applied this exemption to identifying information, as well as commercial and financial information, included in the following records responsive to FOIA Request No. 2015-07460:

    a. Record No. 155;
    b. Record No. 156;
    c. Record No. 157;
    d. Record No. 158
    e. Record No. 159; and
    f. Record Nos. 1 – 81 (email records).[2]

---

[2] *See* Christenson Decl., Ex. F, *Vaughn* Index, for a full description of the records and withheld information. These records include duplicative records, which were deemed subject to the same exemptions as the original record.

7

Christenson Decl. ¶ 52.

## B. Exemption 5

33. Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *See* 5 U.S.C. § 552(b)(5). BOP has applied this exemption to email records that reveal deliberations among and between BOP and DOJ staff in an effort to revise the execution protocol (subject to the deliberative process privilege); privileged attorney-client communications containing legal advice, guidance or commentary (subject to the attorney-client privilege); and email communications generated at least in part in anticipation of litigation (subject to the work-product privilege). The email records to which BOP applied at least one of the three privileges, and thus Exemption 5 include:

   a. Record Nos. 1, 19, 33, 45, 57, 58, 78, 82-129, 130-52 (and any duplicates of such records) (Deliberative Process Privilege)
   b. Record Nos. 82-91, 93, 95-99, 101-103, 105-129, and 130-34, 136, 138-152 (and any duplicates of such records) (Attorney-Client Privilege and Work Product)

*Id*. ¶¶ 87-100.

34. The litigation relevant to BOP's invocation of the work-product privilege includes *Roane, et al. v. Gonzales*, No. 05-2337 (D.D.C.); *Robinson v. Mukasey*, No. 07-2145 (D.D.C.); *Bourgeois v. U.S. Dept. of Justice, et al.*, No. 12-00782 (D.D.C.), and *Fulks v. U.S. Dept. of Justice*, No. 13-00938 (D.D.C.), all of which challenged BOP's previous federal execution protocol and each of which was stayed in either 2011 or 2012 as BOP re-evaluated and revised its lethal injection protocol due to the unavailability of sodium thiopental, one of three-drugs used in its previous execution protocol. *See* Christenson Decl. ¶¶ 80-82. It also includes the Master Consolidated Case, *In the Matter of the Federal*

*Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-00145 (TSC) (D.D.C.), into which all of the above cases were consolidated in 2019. Christenson Decl. ¶ 84.

### C. Exemption 6

35. Exemption (6) provides for the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). BOP has applied this exemption to identifying information throughout every record responsive to FOIA Request No. 2015-07460. Exemption 6 was applied to the following types of information that could be used to identify BOP or DOJ staff involved in some aspect of the execution protocol, third parties who have not consented to the release of their personal identifying information, and information that could be used to identify third party individuals who participated in the sale or potential sale of lethal injection substances to the federal government:

   a. Names, initials, signatures, email addresses, telephone/fax numbers, job titles, and department titles.

Christenson Decl. ¶ 102.

### D. Exemption 7(A)

36. Under Exemption (7)(A), an agency may withhold from disclosure records or information compiled for law enforcement purposes, "to the extent that the production . . . could reasonably be expected to interfere with enforcement proceedings." *See* 5 U.S.C. § 552(b)(7)(A). BOP has applied this exemption to information that could lead to the identity of suppliers or potential suppliers of lethal injection substances that were considered for use in the execution protocol during the time relevant to FOIA Request No. 2015-07460. Christenson Decl. ¶¶ 114-123.

### E.     Exemption 7(C)

37.   Exemption 7(C) protects from mandatory disclosure records or information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). BOP applied this exemption to the same information in which Exemption 6 was applied. *See supra* ¶ 35; Christenson Decl. ¶ 126.

### F.     Exemption 7(E)

38.   Exemption 7(E) protects from disclosure records or information compiled for law enforcement purposes to the extent that disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). BOP applied this exemption to information describing the guidelines, techniques and procedures used to obtain lethal-injection substances included in the following records responsive to FOIA Request No. 2015-07460:

  a. Record Nos. 1-128
  b. Record Nos. 130-137;
  c. Record No. 152; and
  d. Record Nos. 155-159

Christenson Decl. ¶ 130.

### G.     Exemption 7(F)

39.   Exemption 7(F) provides for the withholding of information or records compiled for law enforcement purposes, the release of which "could reasonably be expected to endanger the life or physical safety of any individual." *See* 5 U.S.C. § 552(b)(7)(F). BOP applied this

exemption to the same identifying information throughout the records as was described under Exemption 6 and Exemption 7(C).  *See supra* ¶ 35; Christenson Decl. ¶ 135.