**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BUZZFEED, INC.,

    Plaintiff,

    v.                No. 1:18-cv-01556-TSC

U.S. DEPARTMENT OF JUSTICE, ET AL.,

    Defendants.

DECLARATION OF KARA CHRISTENSON

# Contents

I.     Preliminary Information ................................................................................................. 1
II.    Plaintiff's FOIA Request ............................................................................................... 3
III.   Search for Responsive Records .................................................................................... 5
    A.    BOP Search for Emails ..................................................................................... 6
    B.    BOP Search for Non-Email Records .............................................................. 10
IV.   Application of Exemptions ......................................................................................... 13
    A.    Exemption 4 – Justification for Application of Exemption ................................ 13
    C.    Exemption 5 – Justification for Application of Exemption ................................ 20
    D.    Exemption 6 – Justification for Application under FOIA ................................... 30
    E.    Exemption 7 – Justification for Threshold Requirement for Exemptions ........... 33
    F.    Exemption 7(A) – Justification for Application of Exemption .......................... 34
    G.    Exemption 7(C) – Justification for Application of Exemption ........................... 39
    H.    Exemption 7(E) – Justification for Application of Exemption ........................... 40
    I.    Exemption 7(F) – Justification for Application of Exemption ........................... 41

## I.      **Preliminary Information**

I, Kara Christenson, do hereby declare and state as follows:

1.      I am employed by the United States Department of Justice, Federal Bureau of Prisons ("BOP"), as a Government Information Specialist ("GIS") for Central Office, stationed at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester").  I have been assigned to Central Office since August 2016.  Prior to that time, I served as a Paralegal for the North Central Regional Office ("NCRO") from September 2008 to August 2016. From June of 1994 through September of 2008, I served as Legal Support staff for the Legal Department at the Federal Medical Center (FMC) in Rochester, MN.  I have been employed by BOP since March 1992.

2.      I am familiar with the Complaint filed by Plaintiff, Buzzfeed Inc., seeking disclosure of the records Christopher McDaniel sought through his Freedom of Information Act ("FOIA") Request No. 2015-07460, which was submitted to the Department of Justice and then forwarded to BOP for response.

3.      The statements I make hereinafter are made on the basis of my review of the official files and records of BOP, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties.  Due to the nature of my official duties as a GIS for Central Office, I am familiar with the procedures followed by Central Office and the NCRO of BOP in responding to requests made pursuant to the Freedom of Information Act ("FOIA").

4.      Requests for BOP records are governed by the Department of Justice's FOIA regulations, *see* 28 C.F.R. Part 16, BOP's FOIA regulations, *see* 28 C.F.R. Part 513, and BOP Program Statement 1351.05, Release of Information. [1]

---

[1] All BOP Program Statements referenced herein may be located at BOP's public website, www.bop.gov.

5.      Under 28 C.F.R. § 513.60, FOIA requests must be made in writing and addressed to the Director, Federal Bureau of Prisons, 320 First Street N.W., Washington, D.C. 20534.  All FOIA requests are received by the FOIA/Privacy Act Section of the Office of General Counsel in Central Office.  Pursuant to 28 C.F.R. § 16.3(a), each component of the Department of Justice, including BOP, must also have the capability to receive requests electronically through either email or a web portal.  Requesters may submit FOIA requests electronically to BOP through their public website located at www.bop.gov or via the FOIA/PA mail referral Unit with the Department of Justice ("DOJ").

6.       If submitted to DOJ, the request is referred to the appropriate component and the timeframe for response does not begin to run until the request is actually received by the component, or ten business days after the request was received by DOJ.  *See* 28 C.F.R. § 16.5. When referred, DOJ sends a letter acknowledging receipt, assigning a tracking number and notifying the requester of the referral.

7.      Once received by BOP, a Central Office FOIA Technician will review the request to determine the likely location of the records sought.  If the records are likely to be located in Central Office, such as policy-development or contracting records, the request will be assigned to Central Office FOIA processors.  Central Office FOIA staff will scan the request, upload it into the FOIA database and assign the request a FOIA tracking number.

8.      BOP has designated different processing tracks for FOIA requests, including an expedited track for requests that have been granted expedited processing, and a complex and simple track that distinguish between requests based on the location of the documents requested, the number of pages involved in processing the request, and other factors that complicate responding to the FOIA request.  *See* 28 C.F.R. § 16.5(b).  Except for requests placed on the expedited track, BOP will

ordinarily respond to FOIA requests on a first in, first out basis, according to their order of receipt. *See* 28 C.F.R. § 16.5(a).

9.      The FOIA processor assigned the FOIA request will review the request to determine where the records requested are likely to be located, and, if appropriate, will then assign a search for responsive records at the appropriate location(s). The FOIA processor will then process the request by releasing all non-exempt information and withholding exempt information by applying applicable FOIA exemptions.

10.     Once the FOIA request is processed, the requester will be advised in writing of any denial of information, whether in part or in whole, and the reasons for the denial. The requester will also be advised that he may appeal the denial of information to OIP.

11.     In its Complaint, Buzzfeed, Inc. challenges BOP's categorical withholding of all records responsive to FOIA Request No. 2015-07460, which seeks information about lethal injection substances. *See, e.g.*, Compl. ¶ 1, Doc. 1.

## II.    **Plaintiff's FOIA Request**

12.     On August 25, 2015, DOJ received a FOIA request from Christopher McDaniel, which was assigned tracking number EMRUFOIA082515-2 by DOJ. *See* Ex. A (August 28, 2015 Letter).[2] In his request, Mr. McDaniel sought "copies of any and all records in the possession of the Department of Justice, regardless of who produced them, regarding the following over the past 2 years ending today:[3]

       1.      Emails pertaining to an effort to obtain lethal injection chemicals;

---

[2] A list of all exhibits cited in this declaration are included at the end of this document.

[3] When interpreting the FOIA request, BOP interpreted "today" as the date that the FOIA request was received, i.e., August 25, 2015.

3

2.    Emails pertaining to an attempt to select a drug for use in lethal injections;

3.    Emails in which sodium thiopental, midazolam, pentobarbital were discussed;

4.    All records indicating the federal government's current inventory of execution drugs;

5.    All records indicating the source of all execution drugs in the federal government's current inventory;

6.    All records indicating the person or persons that authorized the purchase(s) of all execution drugs in the federal government's current inventory;

7.    All email messages between the Department and any supplier or potential supplier of execution drugs;

8.    All email messages between the Department and the Bureau of Prisons regarding execution drugs."

*See* Ex. B (FOIA Request No. 2015-07460).

13.    This request was referred to BOP on August 31, 2015, and BOP Central Office FOIA staff assigned FOIA Request No. 2015-07460 to the request.

14.    In my prior position as a paralegal, as well as my current position, I provide administrative and litigation assistance regarding death-penalty issues and have first-hand knowledge regarding the scope of documents maintained by BOP related to death penalty issues.  Accordingly, I was assigned FOIA Request No. 2015-07460 for processing.

15.    Based on my knowledge of the documents requested, the nature of the documents, pending litigation regarding death penalty issues and consideration of the harm that would ensue if the requested information was disclosed, I withheld all responsive documents, in full, pursuant to FOIA exemptions 5, 6, 7(A), 7(C), 7(E) and 7(F).  *See* Ex. C (May 10, 2017 Response Letter).

16.     By letter dated May 10, 2017, I informed Mr. McDaniel of the release determination and the nature of the exemptions applied, and I advised him of his right to appeal BOP's determination to the Office of Information and Policy ("OIP").  *Id.*

17.     On July 7, 2017, Mr. McDaniel filed an appeal with OIP regarding BOP's total withholding of the documents responsive to FOIA Request No. 2015-07460.  *See* Ex. D (July 10, 2017 acknowledgment letter).  The appeal was assigned Appeal No. DOJ-AP-2017-005146.  *Id.*

18.     On September 19, 2017, OIP issued its response upholding BOP's determination, on modified grounds.  *See* Ex. E (September 19, 2017 OIP Determination Letter).  In its response, OIP explained "BOP properly withheld this information in full because it is protected from disclosure under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(A) and it is reasonably foreseeable that disclosure of this information would harm the interests protected by this provision."  *Id.* Because OIP determined the information was properly withheld pursuant to Exemption 7(A), it did not address BOP's application of any other FOIA exemptions.

## III.     **Search for Responsive Records**

19.     Based on my knowledge of the documents, the scope of the request, and the nature of the responsive documents, I initially denied Mr. McDaniel's FOIA request in its entirety pursuant to Exemption 7(A), while determining Exemptions 5, 6, 7(C), 7(E) and 7(F) would also be applicable to exempt information as described herein, and my determination was upheld by OIP, at least as being appropriate under Exemption 7(A).

20.     However, upon further review of the search BOP conducted and my review of responsive documents, I also determined that Exemption 4, as will be described in detail below, applies to the information that has been redacted and/or withheld from release.

### A. **BOP Search for Emails**

21.    Five of the eight categories of documents sought by Mr. McDaniel's FOIA request consisted of a request for emails. Specifically, Subparts 1-3 and 7-8 of the request sought: (1) "Emails pertaining to an effort to obtain lethal injection chemicals;" (2) "Emails pertaining to an attempt to select a drug for use in lethal injections;" (3) "Emails in which sodium thiopental, midazolam and/or pentobarbital were discussed;" (7) "All email messages between the Department and any supplier or potential supplier" of execution drugs;" and (8) "All email messages between the Department and the Bureau of Prisons regarding execution drugs."  *See* Ex. B (FOIA Request No. 2015-07460).

22.    BOP uses a Novell GroupWise email system to provide internal and external email communication by staff.  To archive email, BOP also uses the Netmail Email Archive System ("Netmail").  Netmail collects email content directly from GroupWise and saves it into its separate system in an SML file format, preserving applicable metadata in the corresponding property page. Regular email messages are flagged for a seven-year retention period and emails flagged as trash are subject to a 45-day retention period.

23.    Via Netmail, BOP staff email is ordinarily searchable using names, date ranges, and specific search terms.  After the email is searched and responsive email is located and collected, that email can be exported from Netmail for review purposes and will automatically include the corresponding property page(s), which provide tracking information for the email.

24.    To search for emails responsive to a FOIA request, a network administrator must log into Netmail, identify the staff member's email to be searched by the staff member's network user ID, and then conduct a search against their archive based on defined search terms and dates provided by the FOIA requester.  After the search is completed and saved, the responsive email must be

exported to a reviewable file format.  This process must be repeated for every identified staff member.

25.     In drafting the scope of the email search, I identified key words generated from Mr. McDaniel's FOIA request and then identified staff who have been involved with obtaining, selecting, or purchasing lethal injection substances during the relevant time frame based on my personal knowledge, as well as discussions with Central Office and NCRO staff who oversee the United States Penitentiary located in Terre Haute, Indiana ("USP Terre Haute"), where executions for BOP inmates are performed.

26.     After determining the scope of the search request based on Mr. McDaniel's FOIA request, I provided the network administrator the following search parameters:

        a.      <u>Date Range</u>:  August 25, 2013 through August 25, 2015.[4]

        b.      <u>Search Terms</u>:  I requested separate searches for each identified individual

        for each term using the following broad terms:

                (1)     "Lethal Injection"
                (2)     "Execute"
                (3)     "Execution"
                (4)     "Thiopental"
                (5)     "Midazolam"
                (6)     "Pentobarbital"

        c.      <u>Directories</u>:  Based on my personal knowledge, as well as discussion with
        staff in both Central Office and the NCRO, I determined which staff were likely to
        have responsive emails.  Searches were then conducted for eight (8) current or now
        retired staff members.

---

[4] Mr. McDaniel's FOIA request submitted to DOJ on August 25, 2015, states "We request that you provide copies or any and all records in the possession of the Department of Justice, regardless of who produced them, regarding the following over the past 2 years ending today . . . ."  *See* Ex. B.  As such, I interpreted his request as a request for records dated from August 25, 2013, through August 25, 2015.

27.     Using the search procedures described above and the parameters I provided, the network specialist conducted the email search.  Five-thousand-eight-hundred-seventy (5,870) pages of email records, property pages, and separating blank pages were located and provided to me for processing.

### 1. Nonresponsive and Duplicative Email Records

28.      Due to the broad terms used in the attempt to obtain all responsive emails and the fact that many emails included multiple individuals whose directories were searched, several of the email records retrieved in the search were either nonresponsive to the FOIA request or duplicative of other records retrieved in the search.

29.     I reviewed each of the pages provided by the network administrator who performed the search and eliminated five-thousand-four-hundred-ninety eight (5,498) pages of records because they were entirely duplicative of other records, were blank pages, or were entirely non-responsive to the FOIA request.

30.     I deemed an email nonresponsive when it merely forwarded a hyperlink to a public news article that contained one of the search terms and contained no text in the body of the email, or if the body of the email contained only perfunctory content such as "FYI" or instructions regarding where or how to file the hyperlinked article.  I also deemed an email record nonresponsive if the email content was completely unrelated to the subject of the FOIA request (i.e., did not discuss lethal injection substances, provide information regarding BOP's inventory of lethal substances, pertain to an effort to obtain or select lethal injection substances, or reveal information regarding the purchaser or source of such substances).  For instance, I deemed emails that contained case summaries with one of the search terms, but did not provide further information responsive to the request, or emails that referred to budget "execution" rather than the death penalty, nonresponsive. I also deemed property pages nonresponsive, as they merely recited the sender(s), recipient(s), and

subject line of the email, and contained other nonresponsive information; they did not contain substantive comments or any portion of the body of the email itself.

31.     When an entire email chain of records was deemed nonresponsive or duplicative, each of the pages associated with the email chain, including the email chain records, property pages, separating blank pages, and attachments, if any, was removed.

## 2. <u>Categorization of Remaining Email Records</u>

32.     I then conducted a review of the remaining three-hundred-seventy-two (372) pages of potentially responsive records.  During this review, I categorized and identified email records by dividing each email chain into individual email records.  I considered each email, even if contained among a chain of several emails, to be one (1) record.  For instance, an email from a sender to the recipient(s) would be considered one record.  The response from a recipient to the sender would be considered a second record, and so on.

33.     I then reviewed each individual email record to determine whether it was responsive to Mr. McDaniel's FOIA request.

34.     If an email record within a chain of emails was deemed responsive, I assigned it a record number.  If an email record within a chain of emails was deemed duplicative of a responsive record that had already been assigned a record number, I assigned the duplicate record its own record number, and marked it as duplicative, and included a reference to the original record number.  If an email record within a chain of emails was deemed nonresponsive, I marked it as nonresponsive, but I did not assign it a record number.

35.     To avoid confusion and to retain the integrity of the emails, I retained the original format of each email chain that contained responsive records.  For example, if an email chain contained both a responsive email record and a nonresponsive email record, I did not alter the email chain, nor did I delete the nonresponsive record from within the email chain.  Rather, I retained the

nonresponsive email record and simply marked it as nonresponsive.  Similarly, if an email chain contained duplicate records, I did not alter the email chain or delete the duplicate email.  Rather, I marked the record as duplicative, and included a reference to the original record number.

36.     Based on my review of the email records, I identified one-hundred-fifty-four (154) email records that were responsive to Mr. McDaniel's FOIA request.  Among those 154 records, seventy-five (75) records were deemed duplicative.

37.     Each email record identified as responsive or duplicative was, as described above, assigned a record number.  Each record number, along with a brief description of the record and the information withheld, as well as the FOIA Exemptions applied to withheld information, is contained in the *Vaughn* Index, which was prepared for this litigation and attached hereto as Exhibit F.

38.     I processed all records responsive to Mr. McDaniel's request to achieve maximum disclosure consistent with the access provisions of the FOIA and the FOIA statutory exemptions.  Every effort was made to provide Mr. McDaniel with all reasonably segregable nonexempt information in the responsive records.  The following email records were released in part to Mr. McDaniel: Record Nos. 153 and 154.  Exempt information was redacted from the records, as described herein and in Ex. F, the *Vaughn* Index.

39.     All withheld material is supported by a statutory exemption or multiple exemptions.  BOP's withholding of information from the release in response to FOIA Request No. 2015-07460 will be addressed specifically in greater detail below.

### B. BOP Search for Non-Email Records

40.     In addition to email records, subparts 4-6 of Mr. McDaniel's request sought: (4) "All records indicating the federal government's current inventory of execution drugs;" (5) "All records

indicating the source of all execution drugs in the federal government's current inventory;" and (6) "All records indicating the person or persons that authorized the purchase(s) of all execution drugs in the federal government's current inventory." *See* Ex. B.

41.     During the relevant time frame, lethal injection substances, if any, would have been purchased by USP Terre Haute.  Pursuant to Program Statement 2100.04, Budget Execution Manual, documents reflecting such purchases would have been forwarded to the NCRO, Financial Management Department, for budgeting purposes.  Any such documents generated during the relevant time frame would have been kept in a locked filing cabinet to which only specified staff have access.

42.     Lethal injection substances that were purchased during the relevant time frame would have been stored at USP Terre Haute, in a locked space separate from substances used for medical purposes, and to which only specified staff would have had access.  Any inventory forms and/or purchasing documents related to lethal injection substances would have been maintained in a locked filing cabinet located at USP Terre Haute, to which only specified staff had access.

43.     In order to determine whether documents responsive to parts 4 through 6 of Mr. Daniel's FOIA request, I forwarded these portions of the request to USP Terre Haute and the NCRO Financial Management Department to conduct a search.

44.     An authorized USP Terre Haute staff member conducted a search of records within the relevant time frame (i.e., from August 25, 2013, through August 25, 2015) maintained in the locked filing cabinet where the inventory and purchasing documents would have been located.  The authorized staff member provided me with seven (7) pages of documents.

45.     An authorized NCRO Financial Management staff member likewise conducted a search of records within the relevant time frame (i.e., from August 25, 2013, through August 25, 2015),

maintained in the relevant NCRO locked filing cabinet.  The authorized staff member provided me with eight (8) pages of documents.

46.     I conducted a review of the fifteen (15) pages of records provided by USP Terre Haute and the NCRO Financial Management Department.  During this review, I removed two (2) pages of records consisting of FAX transmittal sheets that were not responsive to Mr. McDaniel's FOIA request and two (2) pages that were duplicative of other retrieved records.

47.     I then reviewed the remaining eleven (11) pages of responsive documents and divided them into five (5) categories of records: (1) inventory log (1 page); (2) inventory form (1 page); (3) invoices (4 pages); (4) credit card purchase forms (3 pages); and (5) packaging slips (2 pages).

48.     Each category of records was assigned a record number.  Each record number, along with a brief description of the record and the information withheld, as well as the FOIA Exemptions applied to withheld information, is contained in the *Vaughn* Index prepared for this litigation, which is attached hereto as Ex. F.

49.     By taking the steps describe above, I conducted a search of every location where responsive records could reasonably be expected to be maintained.  I have no reason to believe that responsive records were likely to be maintained elsewhere.

50.     I processed all records responsive to Mr. McDaniel's request to achieve maximum disclosure consistent with the access provisions of the FOIA and the FOIA statutory exemptions. Every effort was made to provide Mr. McDaniel with all reasonably segregable nonexempt information in the responsive records.  The following non-email records were released in part to Mr. McDaniel: Record Nos. 155, 156, and 158.  Exempt information was redacted from the records, as described herein and in the *Vaughn* Index.

51.     All withheld material is supported by a statutory exemption or multiple exemptions.  BOP's

withholding of information from the release in response to FOIA Request No. 2015-07460 will be

addressed specifically in greater detail below.

**IV.     Application of Exemptions**

   **A.  Exemption 4 – Justification for Application of Exemption**

52.     Exemption 4 protects "trade secrets and commercial or financial information obtained from

a person which is privileged or confidential."   *See* 5 U.S.C. § 552(b)(4).   BOP has applied this

exemption to identifying information, as well as commercial and financial information, included

in records responsive to FOIA Request No. 2015-07460, specifically:

   a.     Record Nos. 155-156 (two (2) pages of inventory forms)

   b.     Record Nos. 157 (four (4) pages of invoices);

   c.     Record Nos. 158 (three (3) pages of credit card purchase forms);

   d.     Record Nos. 159 (two (2) pages of packing slips); and

   e.     Record Nos. 1 – 81 (email records).[5]

53.     To apply Exemption 4 when withheld records do not contain trade secrets, an agency must

establish that the records are (1) commercial or financial; (2) obtained from a person; and (3)

privileged or confidential.

54.     Information is commercial if, in and of itself, it serves a commercial function or is of a

commercial nature or if the provider of the information has a commercial interest in the

information submitted to the agency.

55.     A "person" under Exemption 4 includes both individuals and companies.

---

[5] *See* Ex. F, *Vaughn* Index, for a full description of the records, including records that were
identified as duplicative.   The duplicative records were deemed to be subject to the same
exemptions as the original record.

56.     A commercial or financial matter is "confidential" for purposes of the exemption if it is customarily and actually kept private, or at least closely held, by the person imparting it.

57.     The invoices, packing slips, credit card purchasing forms, and email records addressing transactions regarding lethal-injection substances meet all three prongs of Exemption 4.

58.     First, the inventory forms, invoices, credit card purchasing forms, and packing slips (Record Nos. 155-159) contain commercial or financial information obtained from a person as follows:

a.      Record Nos. 155 and 156 contain commercial or financial information provided by a source of lethal injection substance(s).  These records provide information that could lead to the identity of the provider, including details about the substance(s) purchased, including the quantity, concentration, packaging details, expiration dates, and container units for such substance(s), as well as the date of delivery and inventory. The information was reformulated into government records by using information provided by a source provider.

b.      Record No. 157, consisting of 4 pages of invoices, contains commercial or financial information provided by the source of the substance(s).  These invoices provide identifying and contact information of a source provider, including names, account numbers, phone numbers, addresses, DEA & Tax ID numbers, and other information that could lead to the identity of the provider, including dates of purchase, substance description, item/stock/UPC numbers, price, quantity, packaging details, and expiration dates.  The records also contain commercial information relating to the provider's pricing and business strategies, and purchase requirements.

c.      Record No. 158, consisting of 3 pages of credit card purchasing forms, contains commercial or financial information provided by a source of lethal injection substance(s), which was reformulated by government staff who entered such information into the credit

card purchase forms.  The forms contain identifying and contact information for a source provider, including names, phone numbers, department titles, account numbers, and other information that could lead to the identity of the provider, including dates of purchase, substance description, item/stock numbers, price, quantity, and packaging details.

     d.     Record No 159, consisting of 2 pages of packing slips, contains commercial or financial information provided by a source provider including identifying and contact information for the provider, such as names, account numbers, phone numbers, addresses, DEA numbers, and other information that could lead to the identity of the provider, including dates of purchase, shipment, and receiving, substance description, item/stock/UPC/lot numbers, quantity, packaging details and expiration dates.  The records also contain commercial information relating to the provider's purchase requirements.

59.     The emails (Record Nos. 1-81), which consist of communications between BOP staff and a source provider, or communications that were forwarded from one BOP staff member to another BOP staff member containing information provided by a source provider(s), also contain commercial or financial information as follows:

     a.     Record Nos. 3, 5, 7, 9, 11, 13, 15, 34, and 59, and any duplicates of such records are emails from a source provider, which contain commercial information that could lead to the identity of the provider, as well as commercial information concerning the substance(s), including pricing and packaging details, and the company's ordering and purchase requirements.

     b.     Record Nos. 16, 17, and 18 consist of email attachments provided by the source provider.  Record No. 16 identifies substances offered by the source provider, along with the associated package size and information regarding the identity of the source provider,

while Record Nos. 17 and 18 provide identifying information for the source provider, as well as pricing strategies, business model, and instructions for ordering.

c.      Record Nos. 2, 4, 6, 8, 10, 12, 14,  and 60, and any duplicates thereof, consist of emails from BOP staff to a source provider, and reflect the negotiations between BOP staff and a source provider regarding details of ultimate purchase transaction(s) based on information provided by a  provider of lethal injection substance(s).  These records contain commercial information that could lead to the identity of the provider, as well as commercial information concerning the substance(s), including pricing and packaging details, and the company's ordering and purchase requirements.

d.      Record Nos. 1, 19, 33, 45, 57, 58, and 78, and any duplicates thereof, consist of emails between BOP staff forwarding information provided by a source provider in order to complete the transaction and discussing the details of the transaction based on the information provided by a source provider.  These records also contain commercial information that could lead to the identity of the provider, as well as commercial information concerning the substance(s), including pricing and packaging details, and the company's ordering and purchase requirements.

60.    The commercial information described above is confidential, as it provides information that could lead to the identity of a source provider(s).  The disclosure of the identity of a source provider would not only impair the Government's ability to obtain lethal injection substances in the future, but also is typically kept private by both the source provider(s) themselves, and the Government.

61.    This information is not customarily released to the public by the person from whom it was obtained because the source of the lethal injection substances are commonly subject to harassment,

threats, and negative publicity leading to commercial decline when it is discovered that they are providing substances to be used in implementing the death penalty.

62.     For example, when it was disclosed that Woodlands Compounding Pharmacy was providing lethal injection substances to be used in the State of Texas's lethal injection protocol, the owner of the pharmacy demanded the return of the substances citing a "firestorm" of angry emails, protests, and media coverage.  *See* Ex. G, (Oct. 9, 2013 Fox News Article).[6]

63.     An October 6, 2013, blog posting followed, announcing Woodlands Compounding Pharmacy as the "first winner of the death race."  *See* Ex. H (Oct. 6, 2013 Blog).[7]  The blog, which appeared below a graphic of an exploding head, then proceeded to invite its readers to:

> "[m]eet the pharmacist who sold the medical ethics and shamed his profession for $2,800, . . . **Mr. Jasper Lovoi, RPh**; the man who had no issue selling the poison to [Texas Department of Criminal Justice] as long as he believed the identity of his company was protected and would not be revealed."

*Id.* (emphasis in the original).

64.     The blog invited the public to write a negative review about the pharmacy on the pharmacy's Google page and to contact the American Pharmacist Association to lodge a complaint against the pharmacy.  The blog also contained a hyperlink to the letter signed by the pharmacist seeking the return of the substances.  *See* Ex. I, (Oct. 4, 2013 letter).[8]

---

[6] Barnini Chakraborty, *Texas refuses to give back lethal drugs, proceeds with execution*, FOX NEWS Politics, (Oct. 9, 2013), http://www.foxnews.com/politics/2013/10/09/texas-execution-to-proceed-despite-controversy-over-drug-and-compounding.html.

[7] *The Pharmacist who approves the business of killing, but only under the veil of secrecy*, The Pentobarbital Experiment Blog (October 6, 2013): https://thepentobarbitalexperiment.wordpress.com/2013/10/06/the-pharmacist-who-approves-the-business-of-killing-but-only-under-the-veil-of-secrecy/.

[8] October 6, 2013 Letter from Jasper Loboi, RPh, included as hyperlink from: *The Pharmacist who approves the business of killing, but only under the veil of secrecy*, The Pentobarbital Experiment Blog (October 6, 2013), https://thepentobarbitalexperiment.wordpress.com/2013/10/06/the-

65.     Doxing[9] suppliers and/or their employees with the intent to shame, coerce or threaten them through negative publicity and subsequent financial injury into refusing to provide lethal injection substances is a recognized strategy by anti-death penalty advocates.  In fact, Supreme Court Justice Samuel Alito recognized there was a "guerilla war" against the death penalty during arguments in *Glossip v. Gross*.  *See* Ex. J (July 1, 2015 Mimesis Law Article).[10]  Justice Alito catalogued the results of one such effort in his majority opinion for the Court in *Glossip*.  *See Glossip v. Gross*, 135 S. Ct. 2726, 2733 (2015) (noting that a concerted campaign in 2009-2011 caused the sole American manufacturer of sodium thiopental to exit the world market for production of the drug). Other federal and state courts have continued to recognize these concerns in cases centering on the potential disclosure of lethal injection drug suppliers.  *See Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1331–32 (11th Cir. 2020) ("As described by the *Glossip* Court, the ultimate outcome of this very effective advocacy by death penalty opponents has been to make it difficult— if not impossible—for states to acquire sodium thiopental and pentobarbital for use in executions, even though it is generally acknowledged that the use of either of these drugs renders an execution by lethal injection as humane as it can possibly be."); *Texas Dep't of Criminal Justice v. Levin*, 572 S.W.3d 671, 682 (Tex. 2019) (recognizing that a fear of negative publicity and declining sales was one of the reasons pharmacies do not want to be publicly identified as suppliers of lethal injection drugs); and *McGehee v. Texas Dep't of Criminal Justice*, No. No. H-18-1546, 2018 WL

---

pharmacist-who-approves-the-business-of-killing-but-only-under-the-veil-of-secrecy/.

[9] Doxing is the practice of publishing private or identifying information about a particular individual or organization on the Internet, typically with malicious intent.

[10] T. Tabo, *Alito's Payback in the "Guerilla War" Over Executions*, Mimesis Law, (July 1, 2015), http://mimesislaw.com/fault-lines/alitos-payback-in-the-guerilla-war-over-executions/1610.

3996956, at *8-10 (S.D. Tex. Aug. 21, 2018) (identifying numerous jurisdictions in which disclosure efforts were rebuffed in light of providers' fears of exposure).

66.     Due to these fears, during the relevant times (i.e., Aug. 2013 – Aug. 2015), BOP restricted communications with, and knowledge of, providers of lethal injection substances only to those within the agency who were directly involved in the process of obtaining the substances or had a need to know the information in the performance of their duties.

67.      In addition to information that directly identifies suppliers or potential suppliers of lethal injection substances, BOP determined that other information included in the records could reveal the identity of the source provider(s), such as dates and times, the specific description of the substance(s), including the specific quantity per unit sold, packing details, expiration dates, and the price of the substance(s).  For example, individuals could compare dates, times, or the manner in which a substance was packaged or sold to heightened email activity, or activity reported in accordance with government reporting requirements, within a certain timeframe to determine, or least narrow down, companies who were manufacturing or otherwise supplying lethal injection substances to BOP.

68.     The commercial information withheld from the records could also reveal companies' contract negotiation strategies, their physical capabilities in terms of quantity or quality of manufacturing, obtaining, or compounding such substances, and pricing strategies.  Disclosure of this information would subject the companies to a competitive disadvantage, and would deter them from sharing information with the Government or engaging in business transactions for future procurement of lethal injection substances.

69.     For various records, information in those records that BOP withheld under Exemption 4 may also be exempt under one or more of the following:  Exemptions 5, 6, 7(A), 7(C), 7(E) and 7(F).  While every effort was made to release all segregable information, *see supra* ¶¶ 38 & 50,

BOP withheld the entirety of those records in which exempt information was inextricably intertwined with non-exempt information.

### C.  Exemption 5 – Justification for Application of Exemption

70.     Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  *See* 5 U.S.C. § 552(b)(5).  This language has been construed to exempt documents that are normally privileged in the civil discovery context.  Of the litigation privileges generally available to BOP, the deliberative-process, attorney-client, and work-product privileges are applicable to the records responsive to Mr. McDaniel's FOIA request.

71.     The "inter-agency or intra-agency" threshold is met based on the scope of the request for records with regard to subpart 8 of Mr. McDaniel's request seeking "all email messages between BOP and the DOJ regarding execution drugs."  Since such messages would be among individuals who are within the DOJ and BOP, this request meets the intra-agency threshold requirement on its face.  The threshold is also met for the remaining subparts of his FOIA request to the extent such emails were among DOJ and/or BOP staff.

### 1.     Attorney-Client, Work-Product and Deliberative Process Privileges

72.     The attorney-client privilege protects confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice. In the FOIA context, the agency is the "client" and the agency's lawyers are the "attorneys" for the purposes of attorney-client privilege.  To be privileged, a communication must be for the purpose of securing primarily either (i) an opinion on law, (ii) legal services, or (iii) assistance in some legal proceeding.

73.     Information involving communications with agency attorneys regarding compliance with employment laws and legal advice from attorneys about the requirements of certain federal statutes

and regulations is also covered by the attorney-client privilege.  And while not every record created by a government lawyer qualifies for the attorney-client privilege, the privilege has readily been recognized when the record is prepared by the attorney in anticipation of litigation.

74.     To qualify for the work-product privilege, a document must have been created by or at the direction of an attorney in anticipation of litigation.  The litigation anticipated need not be imminent, as long as the motivating factor behind the creation of the document was to aid in possible future litigation.  The work product doctrine shields materials "prepared in anticipation of litigation or for trial by or for [a] party or by or for that . . . party's representative (including the . . . party's attorney, consultant, . . . or agent)."  Fed. R. Civ. P. 26(b)(3).  It also includes factual materials prepared in anticipation of litigation.

75.     The deliberative process privilege, on the other hand, is not necessarily linked to litigation or legal advice and is applied if the communication was 1) pre-decisional and 2) deliberative.  Materials are pre-decisional if they are generated before the adoption of an agency policy.  The document is deliberative in nature if it is a direct part of the deliberative process—that is, it makes recommendations or expresses opinions on legal or policy matters.  The exemption covers recommendations, draft documents, proposals, analyses, suggestions, discussions, and other subjective documents that reflect the give-and-take of the consultative process.

76.      This privilege exists to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the government.  It rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.

77.     The privilege further protects against premature disclosure of proposed polices before they are actually adopted as public confusion might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action.  Accordingly, even the status of an

21

agency decision within an agency decision-making process is protectable if release of the information would prematurely disclose the recommended outcome of the consultative process or the source of any decisions.

### 2.    Lethal Injection Regulations and Litigation

78.    BOP is tasked with setting the date, time, place and method of execution when a sentence of death has been imposed.  Specifically, ". . . a sentence of death shall be executed: . . .  [b]y intravenous injection of a lethal substance or substances in a quantity sufficient to cause death, such substance or substances to be determined by the Director of the Federal Bureau of Prisons and to be administered by qualified personnel selected by the Warden and acting at the direction of the Marshal."  *See* 28 C.F.R. § 26.3(a) (1993).

79.    BOP has fulfilled its law-enforcement mandate associated with the implementation of the death penalty pursuant to 28 C.F.R. § 26.3(a) three times since 1964:  Timothy McVeigh and Juan Garza in June 2001, and Louis Jones in March 2003.

80.    Beginning in 2005, plaintiffs (all of whom are federal inmates facing a sentence of death) filed civil actions in the District of Columbia alleging constitutional and statutory violations related to the use of a three-drug protocol consisting of sodium thiopental, pancuronium bromide and potassium chloride by the federal government in implementing a sentence of death.  *See Roane, et al. v. Gonzales*, No. 05-2337 (D.D.C. filed Dec. 6, 2005), Doc. 1 (Complaint) & Doc. 8 (Amended Complaint); *Robinson v. Mukasey*, No. 07-2145 (D.D.C. filed Nov. 28, 2007); *Bourgeois v. U.S. Dept. of Justice, et al.*, No. 12-00782 (D.D.C. filed May 15, 2012), and *Fulks v. U.S. Dept. of Justice*, No. 13-00938 (D.D.C. filed June 21, 2013).

81.    On March 4, 2011, the Department of Justice announced that "at the present time, the federal government does not have any reserves of sodium thiopental for lethal injections."  *See Roane*, 05-02337, Doc. 281 (Joint Status Report).

22

82.     Due to the unavailability of sodium thiopental, each of the cases contesting the constitutionality and statutory authority for use of the three-drug protocol were stayed pending BOP's completion of its re-evaluation and revision of the lethal injection protocol.  *See Roane,* Minute Order (July 29, 2011) & Minute Order (November 3, 2011); *Robinson*, Doc. 9 (Joint Status Report) & Minute Order (January 13, 2012); *Bourgeois*, Doc. 14 (Joint Motion for Stay) & Doc. 15 (January 23, 2013 Order); and *Fulks*, Doc. 6 (Joint Motion for Stay) & Doc. 7 (September 13, 2013 Order).[11]

83.     Following the stays of execution in *Roane*, *Robinson*, *Bourgeois*, and *Fulks*, and in accordance with the regulations requiring BOP to select lethal injection substances to implement the death penalty, BOP and DOJ engaged in a comprehensive review and revision of the federal execution protocol.  On July 25, 2019, BOP adopted and DOJ announced a proposed addendum to the federal execution protocol and scheduled executions for five condemned federal inmates: Daniel Lewis, Lezmond Mitchell, Wesley Purkey, Alfred Bourgeois, and Dustin Honken. *See Roane*, 05-02338, at Doc. 385; *see also* Ex. K (Dept. of Justice press release, dated July 25, 2019).[12]

84.     On August 20, 2019, the United States District Court for the District of Columbia consolidated each of the four (4) pending protocol cases, including *Roane*, *Mukasey*, *Bourgeois*,

---

[11] While the Court in *Roane* granted a preliminary injunction barring Defendants from setting an execution date and executing plaintiffs in that matter (*see Roane*, Docs. 5, 27, 67, 68, 336 (Orders Granting Motions for Injunction)), in *Robinson*, *Bourgeois* and *Fulks*, the federal defendants represented that no execution warrant would be sought and no execution would be carried out against the plaintiffs until revision of the lethal injection protocol was complete. *See Robinson*, Doc. 9 (Joint Status Report); *Bourgeois,* Doc. 14 (Joint Motion to Stay); and *Fulks*, Doc. 6 (Joint Motion to Stay).

[12] July 25, 2019 Dept. of Justice Press Release, https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-decade-lapse.

and *Fulks*, into a newly established Master Case: *In the Matter of the Federal Bureau of Prisons'*
*Execution Protocol Cases*, No. 19-mc-00145 (TSC) (D.D.C.) [hereinafter "*Execution Protocol*
*Cases*"].  *See Roane*, Doc. 392.[13]  Thereafter, four (4) of the five (5) inmates who had been
scheduled for execution (Bourgeois, Lee, Honken, and Purkey) filed motions seeking an injunction
barring their execution.  *See Execution Protocol Cases*, 19-mc-00145, at Docs. 2, 13, 29, 34.

85.     On November 20, 2019, the United States District Court for the District of Columbia issued
a preliminary injunction barring the execution of all federal death row inmates.  *Id.* at Doc. 51.  On
November 21, 2019, the defendants filed an appeal in the United States Court of Appeals for the
District of Columbia, 19-5322, Doc. 1.  The same day, in the U.S. District Court for the District of
Columbia, the defendants filed a motion for a stay of the preliminary injunction, pending appeal
to the D.C. Circuit Court.  *See Execution Protocol Cases*, No. 19-mc-00145, at Doc. 53.  The
motion for a stay was denied.  *See id.* Minute Order (Nov. 22, 2019).  Defendants also sought a
stay pending appeal in the D.C. Circuit, but that effort was rejected as well on December 2, 2019.
*Execution Protocol Cases*, No. 19-5322, Order (D.C. Cir. Dec. 2, 2019).  That same day, the
defendants filed an application in the United States Supreme Court, seeking a stay or vacatur of

---

[13] Since the Master Case was established, several federal death row inmates have intervened as
plaintiffs in the case, or have filed separate civil cases challenging the lethal injection addendum,
which have been consolidated into the Master Case.  *See Execution Protocol Cases*, No. 19-mc-
00145 at Doc. 26 (federal death row inmate Dustin Honken's unopposed motion to intervene,
granted by the Court on November 8, 2019, by Minute Order); *Lee v. Barr et al.*, No. 19-2559
(D.D.C.) (filed on Aug. 23, 2019 by federal death row inmate Daniel Lewis Lee and consolidated
into Master Case on Aug. 29, 2019 (Doc. 10)); *Purkey v. Barr et al.*, No. 19-03214 (D.D.C.) (filed
on Oct. 25, 2019, by federal death row inmate Wesley Purkey and consolidated into Master Case
on November 8, 2019 (Doc. 13)); *Holder v. Barr et al.*, No. 19-03520 (D. D.C.) (filed on Nov. 22,
2019, by federal death row inmate Norris Holder and consolidated into Master Case on Dec. 4,
2019 (Doc. 5)); *Bernard v. Barr et al.*, No. 20-00474 (D.D.C.) (filed on Feb. 19, 2020, by federal
death row inmate Brandon Bernard and consolidated into Master Case on April 2, 2020 (Doc. 7));
and *Nelson v. Barr et al.*, No. 20-00557 (D.D.C.) (filed on Feb. 25, 2020, by federal death row
inmate Keith Nelson and consolidated into Master Case on April 2, 2020 (Doc. 17)).

the district court's order issuing the preliminary injunction, which was denied on December 6, 2019. *See Barr et al., v. Roane, Jr., et al.,* No. 19A615. The Supreme Court denied the application on December 6, 2019. 140 S. Ct. 353 (Dec. 6, 2019). On April 7, 2020, the Court of Appeals for the District of Columbia vacated the district court's preliminary injunction. *Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020). Plaintiffs have sought *en banc* review of the panel's decision. *Execution Protocol Cases*, No. 19-5322, Doc. 1839754 (D.C. Cir. Apr. 24, 2020). That request was denied on May 15, 2020. *See id.* Order (May 15, 2020). Plaintiffs filed for a writ of certiorari with the Supreme Court on June 5, 2020 and filed an Emergency Application for a Stay of the Mandate Pending Disposition of their petition with the Supreme Court. *Id.* The D.C. Circuit's is currently scheduled to issue its mandate today, June 12, 2020. *See Execution Protocol Cases*, No. 19-5322, Order (D.C. Cir. June 8, 2020).

86.    Plaintiff's amended complaint was filed on June 1, 2020. *Execution Protocol Cases*, Doc 92. Defendants' dispositive motion is due on July 31, 2020. *Id.* (March 18, 2020, Minute Order). Currently, the briefing schedule, to include filing of cross motions, cross oppositions, and cross replies, extends as far out as December 4, 2020. *Id.*

### 3.    <u>Application of Privileges</u>

87.    BOP has invoked Exemption 5 and the attorney-client, work-product and deliberative-process privileges to withhold records responsive to Mr. McDaniel's FOIA Request.

88.    Subparts 1-3 and 7-8 of the FOIA request seek records to include emails pertaining to the effort to obtain lethal injection chemicals (subpart 1); emails pertaining to an attempt to select a drug for use in lethal injections (subpart 2); emails in which sodium thiopental, midazolam [and/or] pentobarbital were discussed (subpart 3); emails between DOJ and suppliers or potential suppliers of execution drugs (subpart 7); and all email messages between BOP and the DOJ regarding execution drugs (subpart 8). *See* Ex. B. The FOIA Request was submitted on August 25, 2013,

and expressly limits the time frame for responsive records from August 25, 2013 through August 25, 2015.

89.     Since this FOIA request seeks records created <u>after</u> the DOJ announced it would be reviewing its lethal injection protocol due to the unavailability of sodium thiopental, but prior to BOP finalizing its revised protocol in July 2019, the scope of portions of the request, particularly records responsive to subparts 1-3 & 7-8, seeks pre-decisional, deliberative records regarding BOP's efforts to determine substances for the revised lethal injection protocol.  Intra or inter-agency email records responsive to subparts 1-3 & 7-8 of Mr. McDaniel's FOIA request, consist of, as described below and more fully in the attached *Vaughn* Index, email communication between BOP attorneys, BOP and DOJ attorneys, BOP/DOJ attorneys and BOP staff, or between two or more BOP non-attorney staff.  The email records contain information that was considered as part of BOP's effort to fulfill its regulatory requirement to determine the substance(s) used in the execution of a federal death sentence, which occurred in the context of litigation of BOP's execution protocol.  Such records are covered by the deliberative process privilege.

90.     In addition, many of the email records responsive to Mr. McDaniel's FOIA request are also privileged pursuant to the attorney-client and work-product privileges, because they consist of communications between attorneys or between attorneys and their client(s), and contain opinions or guidance regarding compliance with the regulations that require BOP to implement federal death sentences and other regulatory requirements concerning procurement of lethal injection substances, pending or anticipated legal proceedings, laws, regulations, or case decisions, or because it was a document created by or obtained at the direction of an attorney in anticipation of litigation, specifically, the lethal injection protocol litigation pending in this Court.

91.     BOP applied Exemption 5 and the litigation privileges, as described below, to the following types of email records:

92. ***Communications regarding identifying viable substances for inclusion in the execution protocol***:  Record Nos. 1, 19, 33, 45, 57, 58, 78, 135-137, and 152, and any duplicate records thereof, are covered by the deliberative process. These records were generated prior to the finalization of the execution protocol addendum, and reflect discussions among and between staff which would reveal BOP's deliberative process in identifying, obtaining, and selecting an appropriate substance to be included in the revised execution protocol.

93. Record Nos. 136 and 152 are also covered by the attorney-client and work-product privileges because the records contain legal analysis, advice, and opinions regarding specific lethal injection substances and equipment that were being considered for inclusion in the federal execution protocol, and methods to procure such substances and equipment.  The email communications were generated as part of BOP's efforts to revise the execution protocol and in anticipation of the pending protocol litigation.

94. ***Communications regarding execution protocols utilized by different states***: Record Nos. 82-120 and 130-134, including any duplicates thereof, are covered by the deliberative process privilege. These email records were generated prior to the finalization of the execution protocol addendum, and contain discussions among and between BOP staff regarding other execution protocols utilized by state agencies. The email communications include individual staff's recommendations, comments, or opinions regarding the practical implications of utilizing or adopting those protocols, in whole or in part, for the federal execution protocol.  Disclosure of the records would expose BOP's deliberative process in formulating the revised execution protocol.

95. Among these records, the following are also subject to the attorney-client and work-product privileges: Record Nos. 82-91, 93, 95-99, 101-103, 105-120, and 130-134, including any duplicate records thereof.  Because the death penalty and the lethal injection protocol are inherently

legal processes, advice and guidance from agency attorneys was instrumental in creating BOP's execution protocol addendum.  In addition, given the backdrop of ongoing litigation concerning the execution protocol at the time in *Roane*, *Robinson*, *Bourgeois*, and *Fulks*, legal analysis concerning the possible implementation of state protocols, in whole or in part in the federal execution protocol, was necessarily sought by BOP.  The specific topics discussed, including which portions of the state protocols were being considered, is confidential information that was not shared at the time and has not been released since the advice was sought, and thus, is protected by the attorney-client privilege.  In addition, the work-product doctrine applies, as the emails were generated in anticipation of the protocol litigation ongoing at that time.

96.     ***Communications regarding expert testimony***: Record Nos. 121-128 (including duplicate records) are covered by the deliberative process, attorney-client and work-product privileges. These records consist of communication between BOP attorneys and between BOP and DOJ attorneys in which litigation advantages and disadvantages of selecting various individuals for purposes of providing expert testimony or consultation regarding certain lethal injection substances that were being considered for inclusion in the revised execution protocol were discussed.   These records were generated prior to the finalization of the execution protocol addendum, and contain opinions and deliberations by agency attorneys related to BOP's efforts to revise the execution protocol. Disclosing such documents would reveal a key aspect of the agency's deliberative process in revising the execution protocol. The records also contain legal advice concerning confidential information that has not been released (i.e., identity of potential expert and content of information sought to be obtained from the expert), as well as legal analysis, opinions, and work-product prepared in both anticipation of revising the federal execution protocol and the pending litigation challenging the protocol.  As such, the documents are protected by all three privileges.

97.     While Record Nos. 126 and 127 consist of a declaration and its cover page, they were provided as an attachment to privileged email discussions.  The attorney-client privilege and work-product privileges apply to factual materials if they were provided to an attorney for the purpose of obtaining legal advice, or were included among mental opinions and impressions prepared in anticipation of litigation.  *See Coastal States*, 617 F.2d 854 at 862 (indicating the purpose of the attorney-client privilege is to protect a client's disclosures to an attorney); *Judicial Watch*, 432 F.3d at 371 (indicating the work-product doctrine does not distinguish between factual and deliberative material).  Here, the declaration was provided to the attorneys in order to solicit legal advice concerning its contents, and the emails records contain discussions and opinions concerning its content.  Disclosure would reveal litigation strategy being considered in *Roane*, *Robinson*, *Bourgeois*, and *Fulks*, and was subject to consideration, analysis, and comment by BOP and DOJ attorneys during deliberations over revisions to the execution protocol.

98.     ***Communication regarding joint status report***:  Record No. 129 is covered by the deliberative process, attorney-client and work-product privileges. This record consists of email communication between BOP and DOJ attorneys discussing the contents of a status report to be filed in the pending protocol litigation, *Roane*, 05-02237 (D.D.C.). The record contains legal advice concerning confidential information that has not been released, as well as legal analysis, opinions, and suggested litigation strategy. The records were created prior to the adoption of the execution protocol addendum and reflect BOP's deliberative process in creating the revised federal execution protocol. As such, the record is subject to each of the three litigation privileges asserted by BOP.

99.     ***Communication regarding media inquiries***: Record Nos. 138-151 are covered by the deliberative process privilege.  These records consist of email communications in which BOP and DOJ attorneys and staff discussed proposed answers to media inquiries regarding the death

penalty and BOP's execution protocol.  The records were generated prior to the finalization of the revised execution protocol and contain discussions and recommendations concerning how BOP's existing policies should be presented to the media. As such, they are subject to the deliberative process privilege.  Among these records, Record Nos. 139-151 are also subject to the attorney-client privilege because they were prepared in response to DOJ's request for legal advice pertaining to BOP's execution protocol and the ongoing litigation in *Roane*, *Robinson*, *Bourgeios* and *Fulks*. For similar reasons, the work-product doctrine applies to these records.

100.     For various records, information in those records that BOP withheld under Exemption 5 may also be exempt under one or more of the following:  Exemptions 4, 6, 7(A), 7(C), 7(E) and 7(F).  While every effort was made to release all segregable information, *see supra* ¶¶ 38 & 50, BOP withheld the entirety of those records in which exempt information was inextricably intertwined with non-exempt information.

### D. Exemption 6 – Justification for Application under FOIA

101.     Exemption (b)(6) provides for the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  All information that applies to a particular person falls within the scope of Exemption 6.

102.     Throughout all of the records responsive to Mr. McDaniel's FOIA request, Exemption 6 was applied to the following types of information that could be used to identify BOP or DOJ staff involved in some aspect of the execution protocol, third-party individuals who participated in the sale or potential sale of lethal injection substances to the federal government, and third-party

individuals who have not consented to release of their personal information:  Names, initials, signatures, addresses, email addresses, telephone/fax numbers, job titles, and department titles.[14]

103.    Exemption 6 was applied to the above-referenced information because each individual identified in the responsive records has a substantial interest in the privacy of their information, as well as their personal safety, especially due to the nature of the records involved.  None of the individuals identified in the records have provided a written waiver of their personal privacy interests or otherwise authorized release of their identifying information.

104.    Disclosure of this information would reveal personal information of federal employees ("staff") who are employed in a sensitive occupation, some of whom perform work within a prison environment and are responsible for the safety and security of the institution, their colleagues, inmates, and the public.  Further, due to the nature of the records, staff identified in the responsive records would also be identified as being involved in some component of the federal death penalty, which could include procurement of lethal injection substances, contributing to the creation of the lethal injection protocol, and/or actual implementation of the protocol.  As recognized by this Court itself, the mission and nature of the work of these staff members render them vulnerable to harassment, threats or attack.  *See Roane*, 05-02337 (D. D.C.) at Doc. 30-1 (Protective Order prohibiting the release of identifying information concerning anyone involved in past executions or those expected to be involved in future executions, even to the plaintiffs).  Further, disclosure of the names and personal-contact information of these staff members would permit the targeting of individual employees, as well as potentially their families and friends outside the workplace.

---

[14] *See* Ex. F, *Vaughn* Index for full description of each record and information that was subject to Exemption 6.

105.    For example, in April 2019, five individuals were sentenced for their role in murdering a

BOP correctional officer.  The individuals admitted that they conspired to murder the staff member

specifically in retaliation for his actions in seizing contraband from them, and that they recruited

the assistance of hitmen from outside the facility to do the job.  *See* Ex. L, (April 30, 2019 USAO

for D. Puerto Rico Press Release).[15]   In another case, an inmate in Pennsylvania stabbed a

correctional officer at the United States Penitentiary-Canaan 200 times with two shanks and

mutilated his body because of what he told prison officials was "a disrespect issue."  *See* Ex. M

(July 11, 2017 DOJ Press Release);[16] Ex. N (June 5, 2017 WNEP News Article).[17]  While murders

of BOP staff members are thankfully rare, these cases highlight the many risks of harm a BOP

staff member faces as a result of carrying out their official duties.  The controversial nature of the

death penalty could increase the risk for those directly involved in the execution process.

106.    Disclosure of the names or other identifying information of third parties would reveal

private information of persons who may be engaged in a highly-sensitive and emotionally-charged

issue.  Each of the third parties identified in the responsive documents would be associated with

the federal death penalty, and specifically, with supplying or potentially supplying lethal injection

substances needed to implement the death penalty protocol.  Similar to staff, disclosing the job

titles of third parties may allow these individuals to be identified based on their positions.

Revealing this information would allow owners, managers and employees, along with their friends

---

[15] "Five men sentenced for their role in conspiracy to murder Federal Bureau of Prison Correctional Officer Osvaldo Albarati-Casanas," U.S. Attorney's Office, District of Puerto Rico, (April 30, 2019), https://www.atf.gov/news/pr/five-men-sentenced-their-role-conspiracy-murder-federal-bureau-prisons-correctional-officer.

[16] July 11, 2017, Dept. of Justice Press Release, https://www.justice.gov/opa/pr/ federal-jury-returns-sentence-life-imprisonment-murder-federal-correctional-officer.

[17] Jim Hamill, "Stunning Video, Testimony in Prison Murder Trial," (June 5, 2017), https://www.wnep.com/article/news/local/bradford-county/opening-statements-complete-in-prison-murder-trial/523-4c9f43ed-ba87-4a45-b02a-815b404fe9c1.

and families, to be targeted, and would likely subject these individuals to embarrassment, harassment, threats or even assault.  *See* ¶¶ 61-65, *supra*.

107.    Disclosure of this information would constitute a clearly unwarranted invasion of personal privacy that is not overcome by a cognizable public interest.  While Mr. McDaniel asserts in FOIA Request No. 2015-07460 that his request "is being submitted in the public interest and is likely to contribute significantly to public understanding of the operation or activities of your department," he does not indicate how the disclosure of the names and personal information of staff or third party entities who do not participate in the operation of government, would further the public interest.  *See* Ex. B.

108.    Since Mr. McDaniel failed to identify any public interest in knowing the names and personal information of staff and third parties involved with implementation of the lethal injection protocol, he has not identified a public interest that outweighs these individuals' substantial privacy interest.  In contrast, revealing the information would subject these persons and those close to them to embarrassment, as well as threats, harassment, assault, or other reprisals by anti-death penalty advocates, inmates, or perhaps the families and friends of those who have received a sentence of death.

109.    For various records, information in those records that BOP withheld under Exemption 6 may also be exempt under one or more of the following:  Exemptions 4, 5, 7(A), 7(C), 7(E) and 7(F).  While every effort was made to release all segregable information, *see supra* ¶¶ 38 & 50, BOP withheld the entirety of those records in which exempt information was inextricably intertwined with non-exempt information.

### E.  Exemption 7 – Justification for Threshold Requirement for Exemptions

110.    As a threshold to applying Exemption 7, an agency has to demonstrate that the "records or information [were] compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).

111.    BOP is a law enforcement agency.  The term "law enforcement officer" has been defined as "an employee of the Bureau of Prisons or Federal Prison Industries, Inc."  *See, e.g.*, 5 U.S.C. § 8401(17)(D)(i).   Furthermore, BOP employees perform law enforcement functions.   They possess the authority to make arrests, 18 U.S.C. § 3050; seize evidence, 18 U.S.C. § 4012; and execute searches on inmates and visitors to the institution, 28 C.F.R. §§ 511.10-511.12, 552.10-552.14.

112.    BOP is also tasked as part of its law enforcement function with setting the date, time, place, and method of execution when a sentence of death has been imposed.  Specifically,

> a sentence of death shall be executed: (1) On a date and at a time designated by the Director of the Federal Bureau of Prisons . . . (2) At a federal penal or correctional institution designated by the Director of the Federal Bureau of Prisons; (3) By a United States Marshal designated by the Director of the United States Marshals Service, assisted by additional personnel selected by the Marshal and the Warden of the designated institution and acting at the direction of the Marshal; and (4) By intravenous injection of a lethal substance or substances in a quantity sufficient to cause death, such substance or substances to be determined by the Director of the Federal Bureau of Prisons and to be administered by qualified personnel selected by the Warden and acting at the direction of the Marshal.

*See* 28 C.F.R. § 26.3(a) (1993).

113.    Because BOP, along with the United States Marshals Service, is charged with carrying out the judgment of a sentence of death, the requested records – all of which address the deliberations, selection, procurement, and inventory of lethal injection chemicals to fulfill this mission – were necessarily compiled for law enforcement purposes.

### F.  Exemption 7(A) – Justification for Application of Exemption

114.    Under Exemption (7)(A), an agency may withhold from disclosure records or information compiled for law enforcement purposes, "but only to the extent that the production . . . could reasonably be expected to interfere with enforcement proceedings."  *See* 5 U.S.C. § 552(b)(7)(A).

To satisfy this standard, an agency must be able to point to a specific pending or contemplated law-enforcement proceeding and identify some articulable harm that could reasonably be expected to result if the record or information requested were disclosed.  Rule 7(A) applies to civil and regulatory proceedings, as well as to criminal matters, and includes matters in which the agency has the initiative in bringing an enforcement action as well as ones in which it must be prepared to respond to a third-party's challenge.

115.     As discussed above, BOP is tasked with implementing federal death sentences and carrying out the executions of condemned prisoners.  Enforcement proceedings remain pending or reasonably anticipated for each death row inmate.  Individuals sentenced to death may challenge their sentences through direct appeal and post-conviction petitions for relief, a process which can take years in some cases.  Following exhaustion of post-conviction appeals and petitions for relief, inmates often engage in civil litigation to challenge the method in which the government intends to carry out their execution or to bar the execution altogether, which effectively delays or bars the timely enforcement of a capital sentence.

116.     To take one example, federal death row inmate Wesley Purkey was sentenced to death by the United States District Court for the Western District of Missouri on January 23, 2004.  *See U.S. v. Purkey*, Case No. 4:01-cr-308 (W.D. Mo.), Docs. 505, 506.  After exhausting his direct appeal and petitions for post-conviction relief, Purkey filed a Petition for *Writ of Certiorari* in the Supreme Court, which was denied on October 14, 2014.  *See Purkey v. U.S.*, Case No. 13-9783 (2014).  Since that time, Purkey has filed, and continues to file, various challenges to numerous aspects of his federal death sentence.  For example, Purkey has twice filed a petition for writ of mandamus in the Eighth Circuit Court of Appeals requesting that his execution date be set in an expeditious manner, both of which he later requested to be voluntarily dismissed.  *See In Re: Wesley Ira Purkey*, Case. No. 17-1373 (8th Cir. 2017); *In Re: Wesley Purkey*, Case No. 19-1232

(8th Cir. 2019).  Purkey has also filed two petitions in the U.S. District Court for the Southern District of Indiana concerning his sentence and execution of such sentence.  *See Purkey v. Wetson*, Case No. 2:19-00230 (S.D. Ind. filed May 13, 2019) (seeking an order to expedite execution of his death sentence); *Purkey v. U.S.A. et al.,* Case No. 2:19-cv-00414 (S.D. Ind. Filed Aug. 27, 2019) (seeking to vacate his conviction and sentence based on ineffective assistance of counsel and constitutional claims).  Purkey sought voluntary dismissal of Case No. 2:19-00230, but is pursuing an appeal of Case No. 2:19-cv-00414 in the Seventh Circuit Court of Appeals.  *See Purkey v. U.S.A. et al.*, Case No. 19-3318 (7th Cir. filed Nov. 22, 2019).  Additionally, Purkey currently has three (3) civil complaints pending in various jurisdictions which challenge various aspects of his sentence and execution.  *See Purkey v. Barr, et al.,* Case No. 19-00517 (S.D. Ind. filed Oct. 28, 2019) (challenging the government's decision to select him for execution in December 2019); *Purkey v. Barr, et al.*, Case No. 19-3570 (D.D.C. filed Nov. 26, 2019) (seeking an injunction against his execution based on his alleged incompetence); and *Execution Protocol Cases*, Case No. 19-mc-00145, (challenging the government's method of execution, as described above).

117.    Over half of the 61 inmates on federal death row have not fully exhausted their appeals and petitions for post-conviction relief.  As such, while civil litigation such as that described above remains pending, the enforcement proceedings to implement the federal sentences of death for each death row prisoner remains pending, or at least reasonably anticipated.

118.    BOP believes the disclosure of records which reveal the identity of suppliers or potential suppliers of lethal injection substances is reasonably likely to interfere with law enforcement proceedings necessary to effectuate capital sentences and its ability to carry out future executions.  As discussed above, and as reported by the media and prior court decisions, disclosure of the identity of lethal injection suppliers tends to have the effect of obstructing the government's access to lethal injection substances.  *See supra* ¶ 65.

119.     Even if BOP has sufficient quantities of lethal substances to carry out the death penalty, disclosure of the records can be reasonably expected to interfere with current and anticipated enforcement proceedings, as is evidenced by the numerous lawsuits filed by commercial businesses to enjoin executions by states that had obtained their lethal injection drug supplies from those businesses after the business's involvement became known.  *See* Ex. O (Aug. 13, 208 Washington Post Article).[18]  *See also In re Lombardi*, 741 F.3d 888, 894 (8th Cir. 2014) (noting that after the 2013 disclosure of the identity of the pharmacy that supplied Texas with its lethal injection drug, the pharmacy "demanded the . . . return [of] a supply of compounded pentobarbital sold for use in executions, because of a 'firestorm,' including 'constant inquiries from the press, the hate mail and messages,' that result from publication of the pharmacy's identity") (quoting from the record).

120.     Given this history, the Government's ability to obtain lethal substances in the future from providers whose identity has been disclosed, or any other provider once they discover their information will be released, would be severely impaired.  In fact, the actions taken as part of the anti-death penalty advocates in the campaign against the death penalty has forced states to continually change the drugs they use in lethal injections or find new supplies of existing drugs.

121.     For example, in 2011, Hospira Inc., the United States manufacturer of sodium thiopental, stopped manufacturing this drug as a result of controversies over its use in executions, thereby forcing those responsible for implementing the death penalty to seek alternative substances.  *See*

---

[18] Mark Berman, "Drug Companies Don't Want to Be Involved in Executions, So They're Suing to Keep Their Drugs Out," Washington Post (Aug. 13, 2018) (describing lawsuits in Nebraska, Nevada, and Arkansas).

Ex. P (April 4, 2012, Center for Public Integrity Article).[19]  Similarly, Woodlands Compounding Pharmacy, which agreed to provide lethal injection substances to the State of Texas, demanded the return of its supply after information that it manufactured the substance was released.  *See* Ex. G (October 9, 2013, Article "Texas refuses to give back lethal drugs, proceeds to execution").  The owner of the pharmacy claimed "Texas authorities put him 'in the middle of a firestorm' of protesters, hate calls and press requests after letting it leak that he sold eight 2.5-gram doses of pentobarbital to the state for upcoming executions."  *See id.*

122.    Once it became known that the state of Missouri was intending to incorporate the drug propofol into its lethal-injection protocol, the German drug manufacturer that produced propofol announced it would no longer sell the drug to states for executions and shifted its distribution model.  *See* Ex. Q (Aug. 7, 2013 TIME article).[20]  In November 2012 through mid-March 2013, the drug maker also stopped shipments to Louisiana distributor Morris & Dickson LLC after it discovered the distributor sent a carton containing 20 vials to Missouri's Department of Corrections. *See* Ex. R (Oct. 10, 2013 REUTERS Article).[21]

---

[19] *See* Kimberly Leonard, The Center for Public Integrity, *Lethal injection drug access could put executions on hold* (April 4, 2012, 6:00 a.m.), https://www.publicintegrity.org/2012/04/04/8589/lethal-injection-drug-access-could-put-executions-hold. *See also Gray v. McAuliffe*, No. 3:16CV982-HEH, 2017 WL 102970, at *7 (E.D. Va. Jan. 10, 2017), *appeal dismissed* (4th Cir. Jan. 11, 2017) (noting that "[i]n light of the pressure waged by death penalty opponents, it has become increasingly difficult to obtain the drugs Virginia traditionally used to render a prisoner unconscious" and that "[b]ecause death penalty opponents have made it difficult to obtain FDA–approved drugs customarily used in executions, Virginia has recently resorted to obtaining drugs from compounding pharmacies instead of traditional suppliers.").

[20] Josh Sanburn, *The Hidden Hand Squeezing Texas' Supply of Execution Drugs*, TIME, (Aug. 7, 2013),  http:/nation.time.com/2013/08/07/the-hidden-hand-squeezing-texas-supply-of-execution-drugs/.

[21] Kevin Murphy, *German firm blocked shipments to U.S. distributor after drug sent for executions*, REUTERS, (Oct. 10, 2013 9:57 p.m.), https://www.reuters.com/article/us-usa-execution-drugs/german-firm-blocked-shipments-to-u-s-distributor-after-drug-sent-for-executions-idUSBRE99A02U20131011.

123.    As these examples demonstrate, revealing the sources of any substance considered for use in BOP's lethal injection protocol can be reasonably expected to interfere with the enforcement proceedings in all cases in which a sentence of capital punishment is lawfully issued by a federal court.  As such, Exemption 7(A) was applied to any information that could lead to the identity of such suppliers or potential suppliers.

124.    For various records, information in those records that BOP withheld under Exemption 7(A) may also be exempt under one or more of the following:  Exemptions 4, 5, 6, 7(C), 7(E) and 7(F). While every effort was made to release all segregable information, *see supra* ¶¶ 38 & 50, BOP withheld the entirety of those records in which exempt information was inextricably intertwined with non-exempt information.

### G.  <u>Exemption 7(C) – Justification for Application of Exemption</u>

125.    Exemption 7(C) protects from mandatory disclosure records or information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

126.     Exemption 7(C) was applied to withhold the same information identified under Exemption 6 and for the same reasons articulated to justify the withholding under Exemption 6.  *See supra* ¶¶ 101-109.

127.    For various records, information in those records that BOP withheld under Exemption 7(C) may also be exempt under one or more of the following:  Exemptions 4, 5, 6, 7(A), 7(E) and 7(F). While every effort was made to release all segregable information, *see supra* ¶¶ 38 & 50, BOP withheld the entirety of those records in which exempt information was inextricably intertwined with non-exempt information.

## H.  Exemption 7(E) – Justification for Application of Exemption

128.    Exemption 7(E) protects from mandatory disclosure records or information compiled for law enforcement purposes to the extent that disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

129.    Exemption 7(E) was applied to withhold information describing the guidelines, techniques and procedures used to obtain lethal-injection substances.   Pursuant to 28 C.F.R. Part 26, BOP is responsible for implementing federal death sentences.  An integral part of that duty is to select and obtain substances to carry out a sentence of death by lethal injection.  28 C.F.R. § 26.3 (a).  While the general lethal injection and procurement procedures for BOP may be known by the public, the specific techniques and procedures utilized are not.  Although the public may be aware that the government must purchase lethal injection substances from outside sources, the process is not subject to full and open competition, as the disclosure of the agency's needs would compromise its ability to obtain such substances and would subject the parties involved to threats, harassment, or even physical injury.  As such, the specific techniques and procedures used to obtain lethal injection substances are not well known to the public, and in fact, are only shared with particularly identified BOP and DOJ personnel, and even those individuals are prohibited from sharing this information, even within their own agencies.

130.    The following records would reveal the strategy undertaken in order to procure such substances, as well as the sources of substances for which a purchase was attempted and/or completed, and information regarding the method by which BOP procured or attempted to procure such substances: Record Nos. 1-128, 130-137, 152 and 155-159.  If disclosed, this information is reasonably likely to interfere with BOP's ability to procure the necessary substances for use in the

lethal injection protocol, and thus could interrupt the procurement process and usurp BOP's legal mandate to carry out the death penalty.  Additionally, as discussed in detail above, disclosure of the information could subject both the federal officials who were involved in procuring such substances, as well as the providers of those substances, to harassment or threats to their safety by anti-death penalty advocates, inmates, or their friends and families, which in turn, could hinder BOP from carrying out its law enforcement mission of implementing the lethal injection protocol. *See supra* ¶¶ 61-65; 104-105.  As such, the law enforcement guidelines, techniques and procedures utilized by BOP are subject to withholding under Exemption 7(E).

131.    For various records, information in those records that BOP withheld under Exemption 7(E) may also be exempt under one or more of the following:  Exemptions 4, 5, 6, 7(A), 7(C) and 7(F). While every effort was made to release all segregable information, *see supra* ¶¶ 38 & 50, BOP withheld the entirety of those records in which exempt information was inextricably intertwined with non-exempt information.

### I.    <u>Exemption 7(F) – Justification for Application of Exemption</u>

132.    Exemption 7(F) provides for the withholding of information or records compiled for law enforcement purposes, the release of which could endanger the life or physical safety of any individual.  *See* 5 U.S.C. § 552(b)(7)(F).

133.    As previously explained, disclosure of the names, personal identifiers and direct contact information of staff or third parties associated with implementing the death penalty could subject them to being targeted for harassment, threats or assault.  *See supra* ¶¶ 61-65; 104-105. Specifically, the individuals whose identities would be disclosed could reasonably be expected to be subjected to retaliation, threats, harassment or other actions at the direction or discretion of the inmates who have received a sentence of death.  While these inmates may be incarcerated, this does not mean that they are incapable of committing violent acts either directly against identified

staff who may work in the prison in which they are housed, or at their direction by persons in the community.  *See supra* ¶ 105, nn.18, 19.

134.    Disclosure could also reasonably be expected to subject the identified individuals to harassment or threats against their lives or physical safety by persons in the public, including anti-death penalty advocates.  For example, in an article he authored, Mr. McDaniel highlights one such threat sent by Nick Humez via the comments section at the website of a pharmacy that was suspected of providing lethal injection substances to the state of Missouri for executions.  *See* Ex. S (August 29, 2016 BUZZFEED, Inc. Article).[22]  The threat read as follows:

> "Your site says nothing about pentobarbital.  Do you compound it for the state of Missouri's department of corrections, as has been publicly alleged in an AP story that ran this morning, and if so, now that the story has gone public, do you think that is prudent?  Seems to me that manufacturing a drug expressly to kill people flies in the face of one of those commandments Moses got from Jehovah on Sinai, but maybe I'm just being old-fashioned.  Still, were I you I'd at least want to beef up my security now that you've been put in the spotlight as a likely supplier and failed to issue a flat denial.  As the folks at the federal building can tell you, it only takes one fanatic with a truckload of fertilizer to make a real dent in business as usual.  In your place, I'd either swear to the nation that my company didn't make execution drugs of ANY sort, and then make dang sure that's true, or else openly accept the burden of putting my employees and myself at unacceptable (and possibly uninsurable) risk.  Just sayin'."

*Id.*

135.    Since disclosure of the names and personal identifying information and direct contact information of individuals could reasonably be expected to result in harassment, threats or other activities endangering their life and physical safety, this information is exempt pursuant to Exemption 7(F).  Exemption 7(F) was applied to withhold the same information identified under

---

[22] Chris McDaniel, FBI Documents Don't Back Up Claimed Threat to Execution Drug Supplier, BUZZFEED.NEWS (August 29, 2016, 10:04 p.m.), https://www.buzzfeednews.com/article/chrismcdaniel/fbi-documents-dont-back-up-claimed-threat-to-execution-drug.

Exemption 6 and 7(C) and for the same reasons articulated to justify the withholding under those exemptions.  *See supra* ¶¶ 101-109.

136.     For various records, information in those records that BOP withheld under Exemption 7(F) may also be exempt under one or more of the following:  Exemptions 4, 5, 6, 7(A), 7(C) and 7(E). While every effort was made to release all segregable information, *see supra* ¶¶ 38 & 50, BOP withheld the entirety of those records in which exempt information was inextricably intertwined with non-exempt information.

I declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 12th day of June 2020.


Kara Christenson
Central Office FOIA GIS
Rochester, Minnesota

## TABLE OF EXHIBITS

| A | August 28, 2015 DOJ FOIA Request Acknowledgement Letter |
|---|---|
| B | Plaintiff's FOIA Request No. 2015-07460 |
| C | May 10, 2017 BOP FOIA Response Letter |
| D | July 10, 2017 OIP Appeal Acknowledgment Letter |
| E | September 19, 2017 OIP Determination Letter |
| F | BOP's *Vaughn* Index for FOIA Request No. 2015-07460 |
| G | Oct. 9, 2013 Fox News Article |
| H | Oct. 6, 2013 Blog Post |
| I | Oct. 4, 2013 letter |
| J | July 1, 2015 Mimesis Law Article |
| K | July 25, 2019 Dept. of Justice Press Release |
| L | April 30, 2019 USAO for D. Puerto Rico Press Release |
| M | July 11, 2017 Dept. of Justice Press Release |
| N | June 5, 2017 WNEP News Article |
| O | Aug. 13, 2018 Washington Post Article |
| P | April 4, 2012, Center for Public Integrity Article |
| Q | Aug. 7, 2013 TIME Article |
| R | Oct. 10, 2013 REUTERS Article |
| S | Aug. 29, 2016 BUZZFEED, Inc. Article |

Exhibit A



**U.S. Department of Justice**

_Washington, D.C. 20530_

August 28, 2015

Christopher McDaniel
40 W 23rd St, 5th Fl.
New York, NY   10010

Dear Mr. McDaniel:

This is in response to your request for records, Tracking Number, EMRUFOIA082515-2.   Your Freedom of Information Act and/or Privacy Act (FOIA/PA) request was received by this office which serves as the receipt and referral unit for FOIA/PA requests addressed to the Department of Justice (DOJ).   Federal agencies are required to respond to a FOIA request within 20 business days.   This period does not begin until the request is actually received by the component within the DOJ that maintains the records sought, or ten business days after the request is received in this office, whichever is earlier.

We have referred your request to the DOJ component(s) you have designated or, based on descriptive information you have provided, to the component(s) most likely to have the records. All future inquiries concerning the status of your request should be addressed to the office(s) listed below:

> FOIA/PA
> Federal Bureau of Prisons
> Department of Justice
> HOLC Building, Suite 841
> Washington, DC   20534
> (202) 514-6655

Sincerely,

Evie Sassok, Assistant Director
Logistics Management
Facilities and Administrative Services Staff
Justice Management Division

Exhibit B

Hello,

This is a request under the Freedom of Information Act. We request that you provide copies of any and all records in the possession of the Department of Justice, regardless of who produced them, regarding the following over the past 2 years ending today:

1. Emails pertaining to an effort to obtain lethal injection chemicals;
2. Emails pertaining to an attempt to select a drug for use in lethal injections;
3. Emails in which sodium thiopental, midazolam, pentobarbital were discussed;
4. All records indicating the federal government's current inventory of execution drugs;
5. All records indicating the source of all execution drugs in the federal government's current inventory;
6. All records indicating the person or persons that authorized the purchase(s) of all execution drugs in the federal government's current inventory;
7. All email messages between the Department and any supplier or potential supplier of execution drugs;
8. All email messages between the Department and the Bureau of Prisons regarding execution drugs.

For this request, we ask that you provide documents as soon as they are available, rather than waiting until all of the records are compiled.

If any or part of this request is denied, please send a letter listing the specific exemptions upon which you rely for each denial and provide the contact information for the official to whom we may appeal.

We request that you produce responsive materials in their entirety, including all attachments, appendices, enclosures, and/or exhibits.

Because this records request is being submitted in the public interest and is likely to contribute significantly to public understanding of the operation or activities of your department, we ask that you waive any fees or charge a substantially reduced fee. However, should you decline to waive or reduce fees, proceed without further approval if the cost does not exceed $100.00 and send an invoice with the records. If the cost will exceed $100.00, please inform us of the cost in advance.

All correspondence regarding this request should be sent to Christopher McDaniel. He can be reached at 646.979.4761 or Chris.McDaniel@buzzfeed.com.

Do not hesitate to contact us with any questions. We appreciate your attention to this matter.

Thank you for your time.

Sincerely,

Christopher McDaniel

Mailing address:

Attn: Chris McDaniel
40 W 23rd St
5th Floor
New York, NY 10010

Exhibit C



**U.S. Department of Justice**

**Federal Bureau of Prisons**

_North Central Regional Office_

_Office of the Regional Counsel_                    _Kansas City, KS 66101_

May 10, 2017

Chris McDaniel
40 W 23rd St, 5th Floor
New York, NY  10010
Chris.McDaniel@buzzfeed.com

Re:  Information Request No.  2015-07460

Dear Mr. McDaniel:

This is in response to the above referenced information request.  Specifically, you request copies of various records concerning lethal injection chemicals.

The Attorney General has exempted the Bureau of Prisons from certain provisions of the Privacy Act of 1974. Title 5 U.S.C. Section 552a(j). Therefore, all material granted, excised from documents, or denied herein has been processed under the authority of an alternative means of access, which is part of said exemption. The exemption, including the alternative means of access, is set forth in Title 28 Code of Federal Regulations, Section 16.97. Accordingly, your access rights are limited to those provided by the non-exempted portions of the Privacy Act of 1974 and the Freedom of Information Act(FOIA), Title 5 U.S.C. Section 552 and as implemented by Title 28 Code of Federal Regulations, Part 16, Subpart A and D. The procedures established for use by the Bureau of Prisons are outlined in Program Statement 1351.5, <u>Release of Information</u>, and Program Statement 5800.11, <u>Inmate Central File, Privacy Folder and Parole Commission File.</u>

The records you have requested have been reviewed in this office and it has been determined they are not releasable to you.

Pursuant to the Freedom of Information Act, 5 U.S.C. 552(b)(2)-(7), portions of the records are exempt in part or in full from disclosure to you under the following exemptions:

(b)(5) - inter- or intra-agency correspondence which would not be available to a party other than a party in litigation with the agency
(b)(6) - constitutes a clearly unwarranted invasion of personal privacy
(b)(7)(A) - could reasonably be expected to interfere with law enforcement proceedings

(b)(7)(C) - constitutes an unwarranted invasion of personal privacy
(b)(7)(E) - discloses investigative techniques and procedures
(b)(7)(F) - could reasonably be expected to endanger the life or physical safety of any individual

Pursuant to Title 28 Code of Federal Regulations, Section 16.9 or 16.45, the material herewith denied in full or in part may be appealed to the Assistant Attorney General, by filing a written appeal.  Both the appeal letter and face of the envelope should be marked "Freedom of Information Act Appeal, and should be addressed to the Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., Suite 11050, Washington, D.C. 20530-0001.  Your appeal must be received by OIP within 60 days from the date of this letter.

Sincerely,

Richard M. Winter
Regional Counsel

Exhibit D

1425 New York Avenue N.W.
Suite 11050
Washington, DC 20005

Christopher S. McDaniel
BuzzFeed News
111 E 18th St
Newsroom
New York, NY 10003

July 10, 2017

Dear Mr. Christopher S. McDaniel,

This is to advise you that your administrative appeal from the action of the BOP regarding Request No. 2015-07460 was received by this Office on 07/07/2017.

The Office of Information Policy has the responsibility of adjudicating such appeals.  In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt.  Your appeal has been assigned number DOJ-AP-2017-005146.  Please mention this number in any future correspondence to this Office regarding this matter. Please note that if you provide an e-mail address or another electronic means of communication with your request or appeal, this Office may respond to your appeal electronically even if you submitted your appeal to this Office via regular U.S. Mail.

We will notify you of the decision on your appeal as soon as we can.  If you have any questions about the status of your appeal, you may contact me at (202) 514-3642.  If you have submitted your appeal through FOIAonline, you may also obtain an update on the status of your appeal by logging into your account.

Sincerely,

*Davita Brown/for*

Priscilla Jones

Supervisory Administrative Specialist

Exhibit E



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

Mr. Chris McDaniel
BuzzFeed News
111 East 18th Street                         Re:     Appeal No. DOJ-AP-2017-005146
New York, NY 10003                                   Request No. 2015-07460
chris.mcdaniel@buzzfeed.com                          MWH:PJA

**VIA: FOIAonline**

Dear Mr. McDaniel:

      You appealed from the action of the Federal Bureau of Prisons (BOP) on your Freedom
of Information Act request for access to records concerning lethal injection chemicals.

      After carefully considering your appeal, I am affirming, on modified grounds, BOP's
action on your request. The FOIA provides for disclosure of many agency records. At the same
time, Congress included in the FOIA nine exemptions from disclosure that provide protection for
important interests such as personal privacy, privileged communications, and certain law
enforcement activities. BOP properly withheld this information in full because it is protected
from disclosure under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(A) and it is reasonably
foreseeable that disclosure of this information would harm the interests protected by this
provision. This provision concerns records or information compiled for law enforcement
purposes the release of which could reasonably be expected to interfere with enforcement
proceedings.

      Please be advised that this Office's decision was made only after a full review of this
matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and
analyzed your appeal, your underlying request, and the action of BOP in response to your
request. If you have any questions regarding the action this Office has taken on your appeal, you
may contact this Office's FOIA Public Liaison for your appeal. Specifically, you may speak with
the undersigned agency official by calling (202) 514-3642.

      If you are dissatisfied with my action on your appeal, the FOIA permits you to file a
lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

      For your information, the Office of Government Information Services (OGIS) offers
mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-
exclusive alternative to litigation. Using OGIS services does not affect your right to pursue

- 2 -

litigation.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

9/19/2017

X

Sean R. O'Neill
Chief, Administrative Appeals Staff
Signed by: OIP

Exhibit F

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

Email Records (1-154)

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| 1 | Email between two BOP staff | Email record between BOP staff forwarding a drug list provided by a source provider in order to complete a transaction.<br><br>Date and Time<br><br>Identifying and contact information for a source provider<br><br>Identity of BOP staff<br><br>Account Information | 4: Confidential commercial or financial information provided by a supplier/potential supplier of lethal injection substances, including identifying information such as names, titles, phone/fax numbers, email addresses, account numbers, dates, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government.<br><br>5: Deliberations of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances. |
| 2 | Email from BOP staff to a source provider | Email record consisting of negotiations between BOP staff and a source provider regarding the details of a transaction based on the information provided by | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, account numbers, dates, substance description, including price, quantity & packaging details, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information for BOP |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | a source provider of the substance. | staff involved in procurement of lethal injection substances, including names, titles, phone/fax numbers, and email addresses. |
| | | Identifying information for a source provider | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. |
| | | Identifying and contact Information for BOP staff | 7(C): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information (as described above) that could lead to the identity of BOP staff involved in procurement of lethal injection substances. |
| | | Account Information | |
| | | Date and time | 7(E): Techniques and procedures to procure lethal injection substances. |
| | | Substance Item No., name, quantity, price, and packaging details. | 7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances. |
| 3 | Email from a source provider to BOP staff | Email from a source provider regarding account information for purchase of a lethal injection substance. | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, titles, phone numbers, email addresses, account numbers, dates, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. |
| | | Identifying and contact information for a source provider | 6: Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances. |
| | | Identity of BOP staff | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. |
| | | Account Information | 7(C): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances. |
| | | Date and time | |
| | | | 7(E): Techniques and procedures to procure lethal injection substances. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | | 7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances. |
| 4 | Email from BOP staff to a source provider | Email from BOP staff to a source provider, regarding requirements for purchase of a lethal injection substance.<br><br>Identifying information for a source provider<br><br>Identifying and contact Information for BOP staff<br><br>Account Information<br><br>Date and time | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, account numbers, dates, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles, phone/fax numbers, and email addresses.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information (as described above) that could lead to the identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information (as described above) that could lead to the identity of BOP staff involved in procurement of lethal injection substances. |
| 5 | Email from a source provider to BOP staff | Email from a source provider regarding the requirements for purchase of a lethal injection substance. | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, titles, phone numbers, email addresses, account numbers, dates, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | Identifying and contact information for a source provider | 6: Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances. |
| | | Identity of BOP staff | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. |
| | | Account Information | |
| | | Date and time | 7(C): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances. |
| | | | 7(E): Techniques and procedures to procure lethal injection substances. |
| | | | 7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances. |
| 6 | Email  from BOP staff to a source provider | Email from BOP staff to a source provider as part of the exchange of information regarding the details of the transaction based on the information provided by a source provider of the substance. | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, account numbers, dates, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. |
| | | | 6: Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles, phone/fax numbers, and email addresses. |
| | | Identifying information for a source provider | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. |
| | | Identifying and contact Information for BOP staff | 7(C): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information (as described above) that could lead to the identity of BOP staff involved in procurement of lethal injection substances. |
| | | Account Information | |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | Date and time | 7(E): Techniques and procedures to procure lethal injection substances. <br><br> 7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information (as described above) that could lead to the identity of BOP staff involved in procurement of lethal injection substances. |
| 7 | Email from a source provider to BOP staff | Email from a source provider as part of the exchange of information regarding the details of the transaction. <br><br> Identifying and contact information for a source provider <br><br> Account Information <br><br> Date and time | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, titles, phone/fax numbers, email addresses, account numbers, dates, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. <br><br> 6: Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government. <br><br> 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. <br><br> 7(C): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government. <br><br> 7(E): Techniques and procedures to procure lethal injection substances. <br><br> 7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government. |
| 8 | Email from BOP staff to a source provider | Email from BOP staff to a source provider as part of the exchange of information regarding the details of the transaction based on the information provided by a source provider of the substance. | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, account numbers, dates, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. <br><br> 6: Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles, phone/fax numbers, and email addresses. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | Identifying information for a source provider | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. |
| | | Identifying and contact Information for BOP staff | 7(C): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information (as described above) that could lead to the identity of BOP staff involved in procurement of lethal injection substances. |
| | | Account Information | |
| | | Date and time | 7(E): Techniques and procedures to procure lethal injection substances. |
| | | | 7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information (as described above) that could lead to the identity of BOP staff involved in procurement of lethal injection substances. |
| 9 | Email from source provider to BOP staff | Email from a source provider regarding the terms and requirements for purchase of a lethal injection substance. | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, titles, phone/fax numbers, email addresses, account numbers, dates, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government; Confidential commercial information concerning expiration of substances. |
| | | Identifying and contact information for a source provider | 6: Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government. |
| | | Account Information | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. |
| | | Drug expiration information | 7(C): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government. |
| | | Date and time | 7(E): Techniques and procedures to procure lethal injection substances. |
| | | | 7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| 10 | Email  from BOP staff to a source provider | Email from BOP staff to a source provider as part of the exchange of information regarding the details of the transaction based on the information provided by a source provider of the substance.<br><br>Identifying information for a source provider<br><br>Identifying and contact Information for BOP staff<br><br>Account Information<br><br>Drug expiration information<br><br>Date and time | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, account numbers, dates, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government; Confidential commercial information pertaining to expiration of drugs.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles, phone numbers, and email addresses.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information (as described above) that could lead to the identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information (as described above) that could lead to the identity of BOP staff involved in procurement of lethal injection substances. |
| 11 | Email from a source provider to BOP staff | Email from a source provider regarding the terms and requirements for purchase of a lethal injection substance.<br><br>Identifying and contact information for a source provider | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, titles, phone/fax numbers, email addresses, account numbers, dates, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government; Confidential commercial information concerning expiration of substances.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | Account Information | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. |
| | | Drug expiration information | 7(C): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government. |
| | | Date and time | 7(E): Techniques and procedures to procure lethal injection substances. |
| | | | 7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government. |
| 12 | Email from BOP staff to a source provider | Email from BOP staff to a source provider as part of the exchange of information regarding the details of the transaction based on the information provided by a source provider of the substance. | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, account numbers, dates, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. |
| | | | 6: Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles, phone/fax numbers, and email addresses. |
| | | Identifying information for a source provider | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. |
| | | Identifying and contact Information for BOP staff | 7(C): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information (as described above) that could lead to the identity of BOP staff involved in procurement of lethal injection substances. |
| | | Account Information | 7(E): Techniques and procedures to procure lethal injection substances. |
| | | Date and time | 7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information (as described above) that could lead to the identity of BOP staff involved in procurement of lethal injection substances. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| 13 | Email from a source provider to BOP staff | Email from a source provider regarding the terms and requirements for purchase of a lethal injection substance.<br><br>Identifying and contact information for a source provider<br><br>Account Information<br><br>Date and time<br><br>Substance Item No., Name, quantity, price, and packaging information. | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, titles, phone/fax numbers, email addresses, account numbers, dates, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government; Confidential commercial information concerning substance description, including item number, price, quantity & packaging details.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government. |
| 14 | Email from BOP staff to a source provider | Email from BOP staff to a source provider as part of the exchange of information regarding the details of the transaction based on the information provided by a source provider of the substance.<br><br>Identifying information for a source provider | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, account numbers, dates, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles, phone/fax numbers, and email addresses.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | Identifying and contact Information for BOP staff<br><br>Account Information<br><br>Date and time | 7(C): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information (as described above) that could lead to the identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information (as described above) that could lead to the identity of BOP staff involved in procurement of lethal injection substances. |
| 15 | Email from a source provider to BOP staff | Email from a source provider regarding the terms and requirements for purchase of a lethal injection substance.<br><br>Identifying and contact information for a source provider<br><br>Identity of BOP staff<br><br>Account Information<br><br>Order instructions<br><br>Date and time | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, titles, phone/fax numbers, email addresses, account numbers, dates, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government; Confidential commercial information re instructions & requirements  for ordering.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| 16 | Attachment to email from a source provider to BOP staff | Attachment consisting of a list of drugs with corresponding quantities and packaging sizes provided by source provider.<br><br>Attachment to Record No. 15<br><br>Identifying information for a source provider<br><br>List of substances with corresponding quantities and packaging sizes. | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, titles, phone numbers, email addresses, account numbers, dates, and other information that could lead to the identity of such suppliers; Confidential commercial information concerning substance(s) offered for purchase, including quantity & packaging details.<br><br>7(A): Identifying information (as described above) that could lead to the identity of suppliers/potential suppliers of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 17 | Attachment to email from a source provider to BOP staff | Cover Sheet Indicating Name of Attachment Record No. 18<br><br>Attachment to Record No. 15<br><br>Identifying information for a source provider based on title and identifier for substance list | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including information that reveals identity of source provider.<br><br>7(A): Identifying information (as described above) that could lead to the identity of suppliers/potential suppliers of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 18 | Attachment to email from a source provider | Ordering instruction included as attachment to Record No. 15 | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, phone/fax numbers, email addresses, websites, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government; Confidential commercial information including pricing strategies, business model, and instructions for ordering. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | Identifying and contact information for a source provider<br><br>Method for placing orders, which would reveal source provider<br><br>Business models/strategy and pricing strategy of source provider. | 7(A): Identifying information (as described above) that could lead to the identity of suppliers/potential suppliers of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 19 | Email between BOP staff | Email between BOP staff including purchase information based on information provided by a source provider.<br><br>Identifying information for a source provider<br><br>Identity of BOP staff<br><br>Account Information<br><br>Date and Time | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, account numbers, dates, and other information that could lead to the identity of such suppliers.<br><br>5: Deliberations of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of suppliers/potential suppliers of lethal injection substances to the federal government.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 20 | Duplicate of No. 3 | See Duplicate | See Duplicate |
| 21 | Duplicate of No. 4 | See Duplicate | See Duplicate |
| 22 | Duplicate of No. 5 | See Duplicate | See Duplicate |
| 23 | Duplicate of No. 6 | See Duplicate | See Duplicate |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| 24 | Duplicate of No. 7 | See Duplicate | See Duplicate |
| 25 | Duplicate of No. 8 | See Duplicate | See Duplicate |
| 26 | Duplicate of No. 9 | See Duplicate | See Duplicate |
| 27 | Duplicate of No. 10 | See Duplicate | See Duplicate |
| 28 | Duplicate of No. 11 | See Duplicate | See Duplicate |
| 29 | Duplicate of No. 12 | See Duplicate | See Duplicate |
| 30 | Duplicate of No. 13 | See Duplicate | See Duplicate |
| 31 | Duplicate of No. 14 | See Duplicate | See Duplicate |
| 32 | Duplicate of No. 15 | See Duplicate | See Duplicate |
| 33 | Email between BOP staff | Email between BOP staff including purchase information based on information provided by source provider.<br><br>Identifying information for a source provider<br><br>Identifying Information for BOP staff<br><br>Account Information<br><br>Date and Time | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, account numbers, dates, and other information that could lead to the identity of such suppliers.<br><br>5: Deliberations of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of suppliers/potential suppliers of lethal injection substances to the federal government.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 34 | Email from a source provider to BOP staff | Email from a source provider regarding the terms and requirements for purchase of a lethal injection substance. | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, titles, phone/fax numbers, email addresses, account numbers, dates, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government; Confidential commercial information re requirements for ordering. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | Identifying and contact information for a source provider | 6: Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances. |
| | | Identity of BOP staff | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. |
| | | Date and time | 7(C): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances. |
| | | | 7(E): Techniques and procedures to procure lethal injection substances. |
| | | | 7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances. |
| 35 | Duplicate of No. 6 | See Duplicate | See Duplicate |
| 36 | Duplicate of No. 7 | See Duplicate | See Duplicate |
| 37 | Duplicate of No. 8 | See Duplicate | See Duplicate |
| 38 | Duplicate of No. 9 | See Duplicate | See Duplicate |
| 39 | Duplicate of No. 10 | See Duplicate | See Duplicate |
| 40 | Duplicate of No. 11 | See Duplicate | See Duplicate |
| 41 | Duplicate of No. 12 | See Duplicate | See Duplicate |
| 42 | Duplicate of No. 13 | See Duplicate | See Duplicate |
| 43 | Duplicate of No. 14 | See Duplicate | See Duplicate |
| 44 | Duplicate of No. 15 | See Duplicate | See Duplicate |
| 45 | Email between BOP staff | Email between BOP staff including purchase information based on information provided by a source provider. | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, account numbers, dates, and other information that could lead to the identity such suppliers. <br><br> 5: Deliberations of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol. |

14

Buzzfeed Inc., v. U.S. Dept. of Justice, et al., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | Identifying information for a source provider | 6: Identity of BOP staff involved in procurement of lethal injection substances. |
| | | Identity of BOP staff | 7(A): Identifying information (as described above) that could lead to the identity of suppliers/potential suppliers of lethal injection substances to the federal government. |
| | | Account Information | 7(C): Identity of BOP staff involved in procurement of lethal injection substances. |
| | | Date and Time | 7(E): Techniques and procedures to procure lethal injection substances. |
| | | | 7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 46 | Duplicate of No. 34 | See Duplicate | See Duplicate |
| 47 | Duplicate of No. 6 | See Duplicate | See Duplicate |
| 48 | Duplicate of No. 7 | See Duplicate | See Duplicate |
| 49 | Duplicate of No. 8 | See Duplicate | See Duplicate |
| 50 | Duplicate of No. 9 | See Duplicate | See Duplicate |
| 51 | Duplicate of No. 10 | See Duplicate | See Duplicate |
| 52 | Duplicate of No. 11 | See Duplicate | See Duplicate |
| 53 | Duplicate of No. 12 | See Duplicate | See Duplicate |
| 54 | Duplicate of No. 13 | See Duplicate | See Duplicate |
| 55 | Duplicate of No. 14 | See Duplicate | See Duplicate |
| 56 | Duplicate of No. 15 | See Duplicate | See Duplicate |
| 57 | Email between BOP staff | Email between BOP staff discussing purchasing quantity based on information provided by a source provider.<br><br>Identifying information for a source provider<br><br>Identity of BOP staff<br><br>Account Information | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, account numbers, dates, and other information that could lead to the identity of such suppliers; Confidential commercial information regarding packaging and expiration date of substances.<br><br>5: Deliberations of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of suppliers/potential suppliers of lethal injection substances to the federal government. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | Date and Time | 7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 58 | Email between BOP staff | Email between BOP staff discussing purchasing quantity based on information provided by a source provider.<br><br>Identity of BOP staff<br><br>Packaging information for substance. | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government, such as quantity & packaging details of substance(s).<br><br>5: Deliberations of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of suppliers/potential suppliers of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 59 | Email from a source provider to BOP staff | Email from a source provider regarding purchasing information to include substance quantity information.<br><br>Identifying and contact information for a source provider | 4: Confidential commercial or financial information provided by a supplier/potential supplier of lethal injection substances, including identifying information such as names, titles, phone/fax numbers, email addresses, account numbers, dates, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government; Confidential commercial information concerning substance description, including quantity & packaging details.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals involved in the sale or potential sale of lethal injection substances to the federal government. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | Account Information<br><br>Packaging information for substance.<br><br>Date and time | 7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals involved in the sale or potential sale of lethal injection substances to the federal government.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government. |
| 60 | Email from BOP staff to a source provider | Email from BOP staff to a source provider as part of the exchange of information regarding the details of the transaction, including substance quantity information, based on the information provided by a source provider of the substance.<br><br>Identifying information for a source provider<br><br>Identifying and contact information for BOP staff<br><br>Account Information<br><br>Date and time | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, account numbers, dates, and other information that could lead to the identity of such suppliers.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles, phone numbers, and email addresses.<br><br>7(A): Identifying information (as described above) that could lead to the identity of suppliers/potential suppliers of lethal injection substances to the federal government.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 61 | Duplicate of No. 9 | See Duplicate | See Duplicate |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| 62 | Duplicate of No. 10 | See Duplicate | See Duplicate |
| 63 | Duplicate of No. 11 | See Duplicate | See Duplicate |
| 64 | Duplicate of No. 12 | See Duplicate | See Duplicate |
| 65 | Duplicate of No. 13 | See Duplicate | See Duplicate |
| 66 | Duplicate of No. 14 | See Duplicate | See Duplicate |
| 67 | Duplicate of No. 15 | See Duplicate | See Duplicate |
| 68 | Duplicate of No. 58 | See Duplicate | See Duplicate |
| 69 | Duplicate of No. 59 | See Duplicate | See Duplicate |
| 70 | Duplicate of No.60 | See Duplicate | See Duplicate |
| 71 | Duplicate of No. 9 | See Duplicate | See Duplicate |
| 72 | Duplicate of No. 10 | See Duplicate | See Duplicate |
| 73 | Duplicate of No. 11 | See Duplicate | See Duplicate |
| 74 | Duplicate of No. 12 | See Duplicate | See Duplicate |
| 75 | Duplicate of No. 13 | See Duplicate | See Duplicate |
| 76 | Duplicate of No. 14 | See Duplicate | See Duplicate |
| 77 | Duplicate of No. 15 | See Duplicate | See Duplicate |
| 78 | Email between BOP staff | Email between BOP staff regarding purchasing information based on information provided by a source provider.<br><br>Identifying information for a source provider<br><br>Identifying and contact information for BOP staff<br><br>Account Information<br><br>Date and time | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, account numbers, dates, and other information that could lead to the identity of such suppliers.<br><br>5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles, phone numbers, and email addresses.<br><br>7(A): Identifying information (as described above) that could lead to the identity of suppliers/potential suppliers of lethal injection substances to the federal government.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | | 7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 79 | Duplicate of No. 13 | See Duplicate | See Duplicate |
| 80 | Duplicate of No. 14 | See Duplicate | See Duplicate |
| 81 | Duplicate of No. 15 | See Duplicate | See Duplicate |
| 82 | Email between BOP Attorneys | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis/commentary in the body of the email regarding the protocol substances and procedures.<br><br>Identifying and contact information for BOP staff<br><br>Hyperlink<br><br>Marked Sensitive/Privileged | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 83 | Email from BOP attorney to other BOP attorneys and BOP staff | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis/commentary in | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles, & phone/fax numbers. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | the body of the email regarding the protocol substances and procedures.<br><br>Identifying and contact information for BOP staff<br><br>Hyperlink<br><br>Discussion of drugs used by state<br><br>Marked Sensitive/Privileged | 7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 84 | Duplicate of No. 82 | See Duplicate | See Duplicate |
| 85 | Email from BOP attorney to another BOP attorney and BOP staff | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis and commentary in the body of the email regarding the protocol substances and procedures, and comparison against other state protocols.<br><br>Identifying and contact information for BOP staff | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles, phone/fax numbers, and email addresses.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | Hyperlink<br><br>Marked Sensitive/Privileged | |
| 86 | Duplicate of No. 85 | See Duplicate | See Duplicate |
| 87 | Email from BOP attorney to another BOP attorney and BOP staff. | Email that includes a hyperlink to a source addressing a state's protocol and procedures, along with legal analysis and commentary in the body of the email regarding the protocol.<br><br>Identifying and contact information for BOP staff<br><br>Hyperlink<br><br>Marked Sensitive/Privileged | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 88 | Duplicate of No. 87 | See Duplicate | See Duplicate |
| 89 | Email from BOP attorney to another BOP attorney and BOP staff | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis and commentary in the body of the email regarding the protocol substances and procedures. | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |

21

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | | 7(E): Techniques and procedures to procure lethal injection substances. |
| | | Identifying and contact information for BOP staff<br><br>Hyperlink<br><br>Marked Sensitive/Privileged | 7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 90 | Email from BOP attorney to another BOP attorney and BOP staff. | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis, opinion & commentary in the body of the email regarding the protocol substances and procedures, in light of federal execution protocols being considered at the time.<br><br>Identifying and contact information for BOP staff<br><br>Hyperlink<br><br>Marked Sensitive/Privileged | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles, phone/fax numbers, and email addresses.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 91 | Duplicate of No. 90 | See Duplicate | See Duplicate |
| 92 | Email between BOP staff | Email containing commentary regarding a | 5: Deliberations of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Hyperlink to source of information. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | specific substance and the BOP staff member's opinion regarding whether it should be considered for the protocol.<br><br>Identity of BOP staff | 6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 93 | Email from BOP attorney to another BOP attorney and BOP staff | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis, opinion & commentary in the body of the email regarding the protocol substances and procedures.<br><br>Identifying and contact information for BOP staff<br><br>Hyperlink<br><br>Marked Sensitive/Privileged | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 94 | Email from BOP staff to BOP attorneys and BOP staff | Email containing commentary regarding a state protocol, and comparing specific | 5: Deliberations of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances. |

23

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | equipment and procedures used against other protocols.<br><br>Identity of BOP staff | 7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 95 | Email from BOP attorney to BOP attorneys and BOP staff | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis, commentary, and comparison of protocol substances and procedures against other protocols.<br><br>Identifying and contact information for BOP staff<br><br>Hyperlink<br><br>Marked Sensitive/Privileged | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 96 | Duplicate of No. 95 | See Duplicate | See Duplicate |
| 97 | Email from BOP attorney to another BOP attorney | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis, | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | commentary, and comparison of protocol substances and procedures against other protocols.<br><br>Identifying and contact information for BOP staff<br><br>Hyperlink<br><br>Marked Sensitive/Privileged | 7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 98 | Email from BOP attorney to another BOP attorney | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis and commentary in the body of the email regarding the protocol substances and procedures.<br><br>Identifying and contact information for BOP staff<br><br>Hyperlink<br><br>Marked Sensitive/Privileged | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| 99 | Email from BOP attorney to BOP attorneys and BOP staff | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis and commentary in the body of the email regarding the protocol substances and procedures.<br><br>Identifying and contact information for BOP staff<br><br>Hyperlink<br><br>Marked Sensitive/Privileged | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 100 | Email between BOP staff | Email providing a hyperlink addressing a state source for lethal-injection substances and containing commentary and the staff's opinion regarding how the BOP should respond to this information.<br><br>Identity of BOP staff<br><br>Hyperlink | 5: Deliberations of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Hyperlink to source of information.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 101 | Duplicate of No. 97 | See Duplicate | See Duplicate |
| 102 | Duplicate of No. 98 | See Duplicate | See Duplicate |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| 103 | Email from BOP attorney to BOP attorney and BOP staff | Email containing legal analysis, opinion and commentary regarding a state protocol and the substances and procedures used by the state.<br><br>Identifying and contact information for BOP staff<br><br>Marked Sensitive/Privileged | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 104 | Email from BOP staff to BOP attorney | Email that includes text of news article addressing state protocol substances and procedures.<br><br>Identity of BOP staff<br><br>Confidential information sent to agency attorney for review and response in light of protocol review/revision. | 5: Deliberations of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 105 | Email from BOP attorney to BOP attorneys and BOP staff | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis and commentary in the body | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | of the email regarding the protocol substances and procedures and legal opinion about what to do with the information, in light of the protocol review/revision ongoing at the time.<br><br>Identifying and contact information for BOP staff<br><br>Date and time<br><br>Hyperlink<br><br>Marked Sensitive/Privileged | 7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 106 | Email from BOP attorney to BOP attorney and BOP staff | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis and commentary in the body of the email regarding the protocol substances and procedures.<br><br>Identifying and contact information for BOP staff | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | Hyperlink<br><br>Marked Sensitive/Privileged | |
| 107 | Email from BOP attorney to BOP attorney and BOP staff | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis, opinion and commentary in the body of the email regarding the protocol substances and procedures.<br><br>Identifying and contact information for BOP staff<br><br>Hyperlink<br><br>Marked Sensitive/Privileged | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 108 | Email from BOP attorney to another BOP attorney and three BOP staff members | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis and commentary in the body of the email regarding | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | the protocol substances and procedures.<br><br>Identifying and contact information for BOP staff<br><br>Hyperlink<br><br>Marked Sensitive/Privileged | 7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 109 | Email from BOP attorney to BOP staff member | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal question to staff regarding impact on proposed lethal injection protocol.<br><br>Identifying and contact information for BOP staff<br><br>Hyperlink | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 110 | Duplicate of No. 109 | See Duplicate | See Duplicate |
| 111 | Duplicate of No. 87 | See Duplicate | See Duplicate |
| 112 | Email from BOP attorney to BOP attorney | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis and | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | commentary in the body of the email regarding the protocol substances and procedures.<br><br>Identifying and contact information for BOP staff<br><br>Hyperlink<br><br>Marked Sensitive/Privileged | 7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 113 | Email from BOP attorney to BOP attorneys and BOP staff | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis, opinion & commentary in the body of the email regarding the protocol substances and procedures.<br><br>Identifying and contact information for BOP staff<br><br>Hyperlink<br><br>Marked Sensitive/Privileged | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| 114 | Email from BOP attorney to BOP attorney | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis and commentary in the body of the email regarding the protocol substances and procedures.<br><br>Identity of BOP staff<br><br>Hyperlink | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 115 | Email from BOP attorney to BOP attorney | Email responding to Record No. 116, asking a question regarding substances used in a lethal injection protocol referenced in the hyperlink included in Record No. 116.<br><br>Identifying and contact information of BOP staff | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication.<br><br>6: Identifying and contact information for BOP staff involved in procurement of lethal injection substances, including names & email addresses.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 116 | Email from BOP attorney to BOP attorneys and three BOP staff | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis and commentary in the body | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | of the email regarding the protocol substances and procedures.<br><br>Identity of BOP staff<br><br>Hyperlink | 7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |
| 117 | Email from BOP attorney to BOP attorneys and BOP staff | Email that includes a hyperlink to a source addressing state protocol substances and procedures, along with legal analysis and commentary regarding the substances and procedures, including legal opinion regarding application of article to the federal lethal injection protocol review ongoing at the time.<br><br>Identifying and contact information for BOP staff<br><br>Marked Sensitive/Privileged | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Hyperlink to source of information.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 118 | Duplicate of No. 117 | See Duplicate | See Duplicate |
| 119 | Email from BOP attorney to another BOP attorney | Email summarizing an order of a court regarding a state's use of certain lethal | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | injection substances and offering legal advice and analysis concerning its impact on determining the federal lethal injection protocol.<br><br>Identifying and contact information for BOP staff<br><br>Marked Sensitive/Privileged | 6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 120 | Email from BOP attorney to another BOP attorney | Email discussing a specific state's lethal injection protocol and offering commentary and opinion in light of potential protocols under consideration by the BOP.<br><br>Identifying and contact information for BOP staff | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 121 | Email from BOP attorney to DOJ attorney | Email containing deliberations, legal opinion re: contacting an individual for purposes of securing expert testimony or consultation regarding | 5: Deliberations/work-product of BOP/DOJ staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis.<br><br>6: Identifying information for BOP/DOJ staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers; Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | certain lethal injection substances being considered at the time.<br><br>Identifying and contact information for BOP and DOJ staff<br><br>Identity of third-parties<br><br>Marked Sensitive/Privileged | 7(C): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances; Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances; Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement. |
| 122 | Email from BOP attorney to BOP attorney | Email containing deliberations, legal opinion re: contacting an individual for purposes of securing expert testimony or consultation regarding certain lethal injection substances being considered at the time.<br><br>Identifying and contact information for BOP staff<br><br>Identity of third-parties<br><br>Marked Sensitive/Privileged | 5: Deliberations/work-product of BOP/DOJ staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis.<br><br>6: Identifying information for BOP/DOJ staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers; Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement.<br><br>7(C): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances; Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances; Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| 123 | Email from BOP attorney to BOP attorney | Email containing deliberations, legal opinion re: contacting an individual for purposes of securing expert testimony or consultation regarding certain lethal injection substances being considered at the time.<br><br>Identifying information for BOP staff<br><br>Identity of third-parties | 5: Deliberations/work-product of BOP/DOJ staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis.<br><br>6: Identifying information for BOP/DOJ staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers; Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement.<br><br>7(C): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances; Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances; Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement. |
| 124 | Email from BOP attorney to another BOP attorney | Email containing deliberations, legal opinion re: contacting an individual for purposes of securing expert testimony or consultation regarding certain lethal injection substances being considered at the time.<br><br>Identifying and contact information for BOP staff | 5: Deliberations/work-product of BOP/DOJ staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis.<br><br>6: Identifying information for BOP/DOJ staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers; Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement.<br><br>7(C): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances; Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | Identity of third-parties<br><br>Marked Sensitive/Privileged | 7(F): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances; Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement. |
| 125 | Duplicate to 124 | See Duplicate | See Duplicate |
| 126 | Cover page for Attachment | Cover page for attachment to Record No. 124. that formed the work-product created in Record. No. 124, and formed the basis of the confidential attorney-client communication and legal analysis in Record No. 124.<br><br>Identity of third-parties | 5: Reveals deliberative process/work-product of BOP/DOJ attorneys re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication (confidential information shared with attorney)<br><br>6: Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement.<br><br>7(C): Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement. |
| 127 | Email Attachment to Record No. 124. | Attachment to Record No. 124. that formed the work-product created in Record. No. 124, and formed the basis of the confidential attorney-client communication and legal analysis in Record No. 124.<br><br>Identity of third-parties | 5: Reveals deliberative process/work-product of BOP/DOJ attorneys re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication (confidential information shared with attorney); Factual material incorporated into attorney work-product as described in Record No. 124.<br><br>6: Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement<br><br>7(C): Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| 128 | Email from DOJ attorney to BOP attorney | Email discussing potential expert(s) for the federal protocol and/or consultants for determining lethal injection substances to be used in federal execution protocol.<br><br>Identifying and contact information for BOP and DOJ staff, as well as non-BOP/DOJ attorneys and potential experts. | 5: Deliberations/work-product of BOP/DOJ staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis.<br><br>6: Identity of BOP/DOJ staff involved in procurement of lethal injection substances; Identifying information that could lead to the identity of individuals involved in the determination or procurement of lethal injection substances; Identifying information for non-BOP/DOJ attorneys who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination or procurement, including names, titles, phone/fax numbers, addresses, and email addresses.<br><br>7(C): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances and third parties.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances and third parties. |
| 129 | Email from BOP attorney to DOJ attorney and BOP attorney | Email discussing language for a filing in the *Roane* case, and offering advice and commentary concerning the content of the filing.<br><br>Identifying and contact information for BOP and DOJ staff<br><br>Identity of third-parties | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis; Case strategy.<br><br>6: Identifying and contact information for BOP/DOJ staff involved in procurement of lethal injection substances, including names and email addresses; Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement.<br><br>7(C): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances, including names and email addresses; Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement.<br><br>7(F): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances; Identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance determination and procurement. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| 130 | Email from BOP attorney to BOP attorney and BOP staff | Email discussing a specific state's lethal injection protocol, comparing its lethal injection substance(s) against other state protocols, and analyzing those protocols in light of potential protocols under consideration by BOP<br><br>Identifying and contact information for BOP staff<br><br>Marked Sensitive/Privileged | 5: Deliberations/work-product of BOP/DOJ staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis.<br><br>6: Identifying information for BOP/DOJ staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances. |
| 131 | Duplicate to 130 | See Duplicate | See Duplicate |
| 132 | Email from BOP attorney to BOP attorney and BOP staff | Email discussing a specific state's lethal injection protocol, comparing its lethal injection substance(s) against other state protocols, and analyzing those protocols in light of potential protocols under consideration by the BOP.<br><br>Identifying and contact information for BOP staff | 5: Deliberations/work-product of BOP/DOJ staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis.<br><br>6: Identifying information for BOP/DOJ staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | Marked Sensitive/Privileged | |
| 133 | Email from BOP attorney to BOP attorney | Email discussing a specific state's lethal injection protocol and analyzing its lethal injection substance(s) and procedures in light of potential protocols under consideration by the BOP.<br><br>Identifying and contact information for BOP staff<br><br>Marked Sensitive/Privileged | 5: Deliberations/work-product of BOP/DOJ staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis.<br><br>6: Identifying information for BOP/DOJ staff involved in procurement of lethal injection substances, including names, titles, phone/fax numbers, and email addresses.<br><br>7(C): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances. |
| 134 | Duplicate to No. 133 | See Duplicate | See Duplicate |
| 135 | Email from BOP staff to BOP staff | Email discussing availability of potential lethal injection substances and equipment with regard to a proposed protocol under consideration.<br><br>Identifying and contact information for BOP staff<br><br>Description of substances including | 5: Deliberations of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances; Identifying information that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government, including description of substances, quantity & packaging details.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances; Identifying information that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government, including description of substances, quantity & packaging details.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | quantity and packaging details.<br><br>Date and time | 7(F): Identity of BOP staff involved in procurement of lethal injection substances; Identifying information that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government, including description of substances, quantity & packaging details. |
| 136 | Email from BOP attorney to BOP attorney | Email discussing and analyzing availability of potential lethal injection protocols, including the specific substances and equipment in light of a proposed protocol under consideration at the time.<br><br>Identifying and contact information for BOP staff<br><br>Marked Sensitive/Privileged | 5: Deliberations/work-product of BOP/DOJ staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol; Privileged attorney-client communication; Legal analysis.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 137 | Email from BOP staff to BOP staff | Email discussing availability of potential lethal injection substances with regard to a proposed protocol under consideration.<br><br>Identifying and contact information for BOP staff | 5: Deliberations of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances; Identifying information that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government, including description of substances, quantity & packaging details.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances; Identifying information that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government, including description of substances, quantity & packaging details.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)
Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | Description of substances including quantity and packaging details. | 7(F): Identity of BOP staff involved in procurement of lethal injection substances; Identifying information that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government, including description of substances, quantity & packaging details. |
| | | Date and time | |
| 138 | Email from BOP staff to BOP attorneys and staff | Email discussing the DOJ's proposed answer to media questions regarding BOP's injection protocol and other topics regarding the federal death penalty.<br><br>Identifying and contact information for BOP staff | 5: Deliberations of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol & re: proposed answers to media inquiries; Privileged attorney-client communication.<br><br>6: Identifying information for BOP staff involved in procurement of lethal injection substances, including names, titles & phone/fax numbers.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 139 | Email from DOJ attorney to BOP attorney | Email discussing the DOJ's proposed answer to media questions regarding BOP's inventory of lethal-injection substances and use of lethal injection substances.<br><br>Identifying and contact information for BOP and DOJ staff | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol & re: proposed answers to media inquiries; Privileged attorney-client communication.<br><br>6: Identifying and contact information for BOP staff involved in procurement of lethal injection substances, including names and email addresses.<br><br>7(C): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| 140 | Email from BOP attorney to BOP staff, DOJ and ODAG attorneys | Email discussing the DOJ's proposed answer to media questions regarding BOP's injection protocol and other topics regarding the federal death penalty, including the availability of drugs and the impact on litigation and the proposed protocol being considered at the time.<br><br>Identifying and contact information for BOP and DOJ staff | 5: Deliberations/work-product of BOP/DOJ staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol & in connection with ongoing litigation; Privileged attorney-client communication.<br><br>6: Identifying and contact information for BOP staff involved in procurement of lethal injection substances, including names and email addresses.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances. |
| 141 | Email from ODAG attorney to DOJ attorney | Email discussing the DOJ's proposed answer to media questions regarding BOP's injection protocol and other topics regarding the federal death penalty, including the availability of drugs and the impact on litigation and the proposed protocol being considered at the time. | 5: Deliberations/work-product of BOP/DOJ staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol & in connection with ongoing litigation; Privileged attorney-client communication.<br><br>6: Identifying and contact information for BOP staff involved in procurement of lethal injection substances, including names and email addresses.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | Identifying and contact information for BOP and DOJ staff | |
| 142 | Duplicate to 140 | See Duplicate | See Duplicate |
| 143 | Duplicate of No. 141 | See Duplicate | See Duplicate |
| 144 | Duplicate of No. 140 | See Duplicate | See Duplicate |
| 145 | Duplicate of No. 141 | See Duplicate | See Duplicate |
| 146 | Email from BOP attorney to BOP attorney | Email discussing DOJ's proposed answer to media questions regarding BOP's injection protocol and other topics regarding the federal death penalty.<br><br>Identifying and contact information for BOP and DOJ staff. | 5: Deliberations/work-product of BOP staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol & in connection with ongoing litigation; Privileged attorney-client communication.<br><br>6: Identifying and contact information for BOP staff involved in procurement of lethal injection substances, including names and email addresses.<br><br>7(C): Identifying information (as described above) for BOP staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances. |
| 147 | Duplicate of No. 141 | See Duplicate | See Duplicate |
| 148 | Duplicate of No. 141 | See Duplicate | See Duplicate |
| 149 | Email from DOJ attorney to BOP attorney, BOP staff, ODAG attorney | Email discussing DOJ's proposed answer to media questions regarding BOP's injection protocol and other topics regarding the federal death penalty.<br><br>Identifying and contact information for BOP and DOJ staff. | 5: Deliberations/work-product of BOP/DOJ staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol & in connection with ongoing litigation; Privileged attorney-client communication.<br><br>6: Identifying and contact information for BOP/DOJ staff involved in procurement of lethal injection substances, including names and phone numbers.<br><br>7(C): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances.<br><br>7(F): Identifying information (as described above) for BOP/DOJ staff involved in procurement of lethal injection substances. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| 150 | Duplicate of No. 149 | See Duplicate | See Duplicate |
| 151 | Duplicate of No. 149 | See Duplicate | See Duplicate |
| 152 | Email from BOP attorney to BOP attorney | Email containing attorney's proposal and request to another attorney for analysis regarding methods of obtaining lethal injection substances.<br><br>Identifying information for BOP staff. | 5: Deliberations/work-product of BOP/DOJ staff re: efforts to select and obtain lethal injection substances prior to adoption of revised protocol & in connection with ongoing litigation; Privileged attorney-client communication.<br><br>6: Identity of BOP/DOJ staff involved in procurement of lethal injection substances.<br><br>7(C): Identity of BOP/DOJ staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identity of BOP/DOJ staff involved in procurement of lethal injection substances. |
| 153 | Email between BOP attorney and members of the American Correctional Association (ACA) Legal Issues Committee. | Email discussing cases and/or topics to be discussed and/or presented during Legal Issues Committee meeting, as part of ACA meeting.<br><br>Released in part with the following redactions:<br><br>Names, email addresses of non-BOP/DOJ third parties who are members of the ACA Legal Issues Committee. | 6: Identity of third parties engaged in discussion with BOP personnel who have not consented to release of their information.<br><br>7(C): Identity of third parties engaged in discussion with BOP personnel who have not consented to release of their information. |
| 154 | Email from BOP attorney to BOP attorneys | Email summarizing two Supreme Court opinions (*U.S. v. Johnson* and *Glossip v. Gross*). | 6: Identity of BOP personnel who have not consented to release of their information.<br><br>7(C): Identity of BOP personnel who have not consented to release of their information. |

45

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| Record No. | Description | Information | Exemptions |
|---|---|---|---|
| | | Released in part with the following redactions:<br><br>Names, email addresses, direct phone numbers of BOP staff. | |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al.*, 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

NON-EMAIL RECORDS (155-159)

| Record No. | Description | Information | Exemption Status |
|---|---|---|---|
| 155 | General Inventory Log<br><br>1 Page | BOP form documenting inventory of lethal injection substances.<br><br>Released with the following information redacted:<br><br>Substance description, including quantity, packaging details, expiration date, container unit.<br><br>Date | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including substance description (quantity, concentration, packaging details, expiration dates, container unit), and date of delivery and inventory, which could reveal the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government.<br><br>7(E): Techniques and procedures to procure lethal injection substances. |
| 156 | Inventory Form<br><br>1 Page | BOP form documenting inventory of lethal injection substances.<br><br>Identity of BOP staff.<br><br>Released with the following information redacted:<br><br>Identity of BOP staff<br><br>DEA registrant information | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including substance description (quantity, concentration, packaging details, container unit), and date of inventory, which could reveal the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government.<br><br>6: Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government.<br><br>7(C): Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identity of BOP staff involved in procurement of lethal injection substances. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| | | Substance description, including quantity & packaging details<br><br>Date | |
|---|---|---|---|
| 157 | Invoices<br><br>4 Pages | Invoice prepared & submitted by a source provider re: sale of lethal injection substance(s) to BOP.<br><br>Identifying information of a source provider.<br><br>Identifying information of BOP staff.<br><br>Purchase requirements<br><br>Substance description, including item/stock numbers, price, quantity & packaging details, expiration dates | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, account numbers, phone numbers, addresses, DEA & Tax ID numbers & dates; Substance description, including item/stock/UPC numbers, price, quantity, packaging details, & expiration dates; Pricing/business strategies; Purchase requirements; Other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals involved in the sale or potential sale of lethal injection substances to the federal government; Identifying information for BOP staff involved in procurement of lethal injection substances, including names, account numbers, DEA registration number, & dates.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals involved in the sale or potential sale of lethal injection substances to the federal government; Identifying information (as described above) that could lead to the identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals involved in the sale or potential sale of lethal injection substances to the federal government; Identifying information (as described above) that could lead to the identity of BOP staff involved in procurement of lethal injection substances. |
| 158 | Credit card purchase forms<br><br>3 Pages | BOP forms used to purchase lethal injection substance(s). | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, phone numbers, department titles, account numbers, dates, substance description, including item/stock numbers, price, quantity & packaging details, and other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| | | Released with the following information redacted:<br><br>Identifying information of a source provider.<br><br>Identifying information of BOP staff.<br><br>Substance description, price, quantity & packaging details<br><br>Date and Time | 6: Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information for BOP staff involved in procurement of lethal injection substances, including names, phone/fax numbers accounting codes and account numbers, signatures, dates.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government.<br><br>7(C): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information (as described above) that could lead to the identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identifying information (as described above) that could lead to the identity of BOP staff involved in procurement of lethal injection substances. |
|---|---|---|---|
| 159 | Packing Slips<br><br>2 Pages | Packaging slips prepared & submitted by a source provider re: sale of lethal injection substance(s) to BOP.<br><br>Identifying information of a source provider.<br><br>Identifying information of BOP staff.<br><br>Purchase requirements<br><br>Substance description, including item/stock/lot | 4: Confidential commercial or financial information provided by suppliers/potential suppliers of lethal injection substances, including identifying information such as names, account numbers, phone numbers, addresses, DEA numbers & dates; Substance description, including item/stock/UPC/lot numbers, quantity, packaging details & expiration dates; Purchase requirements; Other information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government.<br><br>6: Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(A): Identifying information (as described above) that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. |

*Buzzfeed Inc., v. U.S. Dept. of Justice, et al*., 18-cv-01556 (D.D.C.)

Christenson Declaration, *Vaughn* Index, Bureau of Prisons, FOIA Request No. 2015-07460

| | | numbers, quantity & packaging details, and expiration dates. | 7(C): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances.<br><br>7(E): Techniques and procedures to procure lethal injection substances.<br><br>7(F): Identifying information (as described above) that could lead to the identity of individuals supplying or potentially supplying lethal injection substances to the federal government; Identity of BOP staff involved in procurement of lethal injection substances. |
|---|---|---|---|

Exhibit G

Print    Close



# Texas refuses to give back lethal drugs, proceeds with execution

By Barnini Chakraborty, ,

Published January 12, 2017

[Fox News](#)



The gurney in the death chamber is shown in this May 27, 2008 file photo from Huntsville, Texas. (AP)

A Texas man convicted of killing his parents was executed as planned Wednesday night despite a growing controversy over the drug used to carry out the punishment.

Last week, state prison officials refused a request from the compounding pharmacy that created and sold Texas the pentobarbital -- a single-dose drug used in executions -- to return the drug.

Jasper Lovoi, owner of The Woodlands Compounding Pharmacy, claims Texas authorities put him "in the middle of a firestorm" of protesters, hate calls and press requests after letting it leak that he sold eight 2.5-gram doses of pentobarbital to the state for upcoming executions.

Lovoi says he had been promised anonymity by the state.

But Jason Clark, a spokesman for the Texas Department of Criminal Justice, said the department bought the drug vials legally and won't return them.

Clark said the state has enough vials to carry out scheduled executions for the remainder of the year.

Death penalty states like Texas, which has executed 505 people since 1981, have been turning to compounding pharmacies to purchase lethal doses of barbiturates used in executions.

The switch comes after the drugs' primary makers shut off supplies to states following pressure from anti-death penalty advocates.

Compounding pharmacies allow certified specialists to mix ingredients for medicine themselves and sell them. For example, if there is only an adult-dose of a particular drug available, compounding pharmacists can manipulate the active ingredients and change the dosage or strength.

However, the U.S. Food and Drug Administration does not vouch for the validity, safety or effectiveness of drugs made in compounding pharmacies.

Earlier this year, these new go-to drug dens came under scrutiny following a deadly meningitis outbreak that was linked to contaminated injections made at a Massachusetts compounding pharmacy.

In Texas, attorneys for Michael Yowell, 43, had hoped to get a last-minute stay for their client. But minutes before he was taken to the death chamber, the U.S. Supreme Court rejected a lawsuit he and two other condemned prisoners had brought seeking execution delays on grounds the pentobarbital could cause unconstitutional pain and suffering.

He was pronounced dead at 7:11pm CDT (8:11 ET) in Huntsville, Texas.

Yowell was convicted of killing his parents, Johnny and Carol Yowell, in 1998 and setting fire to their home in Lubbock, Texas. According to court records, Yowell told authorities he shot his father and then beat, strangled and killed his mother. He then blew up the house.

Yowell's grandmother, who lived with them, was killed though Yowell was not convicted in her death.

Last month, the House passed legislation aimed at regulating compounding pharmacies. The bill, which is now in the Senate, would create a national set of standards to track the distribution chain of pharmaceuticals. Proponents say the bill closes a pretty wide gap between state and federal oversight of compounding pharmacies. In the Massachusetts meningitis outbreak, 64 people died and more than 700 people got sick across 20 states from a bad batch of steroids produced at the New England Compounding Center.

Other states like South Dakota and Georgia have had similar problems with purchasing drugs directly through manufacturers.

Georgia's first use of an execution drug obtained through a compounding pharmacy was put on hold in July after the condemned inmate challenged a new state law that bars the release of information about where Georgia obtains its execution drug.

Separately, on Tuesday, the 5th Circuit Court of Appeals rejected a motion made by Yowell's attorneys who asked to supervise "every step of the execution process."

*The Associated Press contributed to this report.*

*You can find Barnini Chakraborty on Twitter* @Barnini.

🖨 Print    ⊗ Close

URL

https://www.foxnews.com/politics/texas-refuses-to-give-back-lethal-drugs-proceeds-with-execution

- [Home](#)
- [Video](#)
- [Politics](#)
- [U.S.](#)
- [Opinion](#)
- [Entertainment](#)
- [Tech](#)
- [Science](#)
- [Health](#)
- [Travel](#)
- [Lifestyle](#)
- [World](#)
- [Sports](#)
- [Weather](#)

- [Privacy](#)
- [Terms](#)

This material may not be published, broadcast, rewritten, or redistributed. © FOX News Network, LLC. All rights reserved. All market data delayed 20 minutes. [Updated Privacy](#) - [Do Not Sell my Personal Information](#) - [New Terms of Use](#) - [FAQ](#)

Exhibit H

# The Pentobarbital Experiment

Danish company Lundbeck took an active and dedicated part in executions of human beings. Here is the full story: the facts and the numbers.

**October 6, 2013**

# The Pharmacist who approves the business of killing, but only under the veil of secrecy

By The Pentobarbital Experiment



October 6, 2013 – The Pharmacist who approves the business of killing, but only under the veil of secrecy

The state of Texas is now using compounding pharmacies to get its supply of killing drugs. The first winner of the death race is the **Woodlands Compounding Pharmacy**, which supplied 8 doses of home made Pentobarbital.

Meet the pharmacist who sold the medical ethics and shamed his profession for $2,800 (https://thepentobarbitalexperiment.files.wordpress.com/2013/10/woodlandsbill16092013.pdf), **Mr. Jasper Lovoi, RPh**; the man who had no issue selling the poison to TDCJ (http://www.tdcj.state.tx.us) as long as he believed the identity of his company was protected and would not be revealed.

That worked fine from September 16th, 2013 (date of his infamous transaction with TDCJ) until October 1st, 2013 when three death row prisoners filed a lawsuit against TDCJ (https://thepentobarbitalexperiment.files.wordpress.com/2013/10/tx_licomplaint011013.pdf) for using

lethal drugs acquired via an unknown, and potentially illegal, source. Subsequently, <u>TDCJ filed a response (https://thepentobarbitalexperiment.files.wordpress.com/2013/10/tdcj-response021013.pdf)</u> on October 2nd, which revealed the details of the purchase and the identity of the vendor.

On October 4th, the <u>deceived and disappointed Mr. Lovoi sent a letter to TDCJ (https://thepentobarbitalexperiment.files.wordpress.com/2013/10/woodlandsletter041013.pdf)</u> complaining about his identity and the details of the sale having been made public and requesting that TDCJ returns the drugs to his company. As you can tell from the letter, he is far more concerned about his business being disrupted by media calls and receiving messages than being involved in human killings in the first place!

It is one of these rare PentoX moments, and they don't occur frequently!

Undoubtedly, the Woodlands compounding pharmacy is the first but not the last one that will be fooled and tricked into selling its soul to the evil death machine.

**<u>To mark this special occasion:</u>**

- <u>Write a review about the Woodlands Compounding Pharmacy (http://bit.ly/1fRCQpR)</u> on their Google+ page;
- Contact the American Pharmacist Association via its <u>website (http://www.pharmacist.com/contact-us)</u> or its <u>facebook page (http://www.facebook.com/APhAPharmacists)</u> to lodge a complaint and a request for an official statement on pharmacists' involvement in human executions;
- If you haven't already done so, <u>sign and share our petition (http://chn.ge/19lZ3TD):</u> "David Miller & Dagmar Climo, IACP: Address the ethical issue of supplying drugs for executions" on Change.org.

As always, collective work is of the essence, and today more than ever before!

Thank you!

**PentoX**

<u>Related:</u> Read <u>The killer around the corner: the International Academy of Compounding Pharmacists (https://thepentobarbitalexperiment.wordpress.com/2013/08/05/the-killer-around-the-corner-the-international-academy-of-compounding-pharmacists/)</u> (August 5, 2013) and <u>Texas and compounding pharmacies: partners in crime (https://thepentobarbitalexperiment.wordpress.com/2013/10/03/texas-and-compounding-pharmacies-partners-in-crime/)</u> (October 3, 2013)

Advertisements



6/10/2020    The Pharmacist who approves the business of killing, but only under the veil of secrecy | The Pentobarbital Experiment

Case 1:18-cv-01456-TSC Document 35-4 Filed 06/12/20 Page 117 of 177

REPORT THIS AD

# About The Pentobarbital Experiment

"Lundbeck is a global pharmaceutical company engaged in the research and development, production, marketing and sale of drugs for treatment of psychiatric and neurological disorders." As the sole supplier of Pentobarbital to US departments of corrections, Danish company Lundbeck took an active and dedicated part in the executions of human beings. This is a clear violation of its ethical obligations as a European pharmaceutical laboratory. Its manufacturing plant for Pentobarbital is based in Kansas, USA. Here is the full story: the facts and the numbers brought to you by European activists dedicated to the universal abolition of the death penalty. Disclaimer: This blog was created to raise awareness and to encourage legitimate citizen actions to bring an end to the torturous executions in the USA. It does not, and never did advocate violence or retaliation against whoever participates in the legal lynchings of human beings.

This entry was posted on Sunday, October 6th, 2013 at 17:00 and tagged with American Medical Association, American Pharmacists Association, Code of ethics, Compounding, Drug, Executions, FDA, Food and Drug Administration, Houston, Lethal injection, Pentobarbital, Texas, Texas Department of Criminal Justice, United States, Woodlands Compounding Pharmacy and posted in General, Timeline. You can follow any responses to this entry through the RSS 2.0 feed.

## 2 responses to "The Pharmacist who approves the business of killing, but only under the veil of secrecy"

○ _How can LloydsPharmacy help patients make the process of taking their medication safer? | The LoveLloyds Blog_

October 8th, 2013 at 17:26
[…] The Pharmacist who approves the business of killing, but only under the veil of secrecy (thepentobarbitalexperiment.wordpress.com) […]

0

0

i
Rate This

○ _Susan Chandler_

October 14th, 2013 at 17:20
Reblogged this on Wobbly Warrior's Blog.

0

6/10/2020    Case 1:18-cv-01156-TSC   Document 35-4   Filed 06/12/20   Page 118 of 177
The Pharmacist who approves the business of killing but only under the veil of secrecy | The Pentobarbital Experiment

0

i
Rate This

Subscribe to RSS
Create a free website or blog at WordPress.com.

Exhibit I

# The Woodlands Compounding Pharmacy

3200 Research Forest Dr. Ste. A3

The Woodlands, TX 77381

Phone: 281-419-1340

Fax: 281-419-2181

October 4, 2013

Judge Larry Gist
Board Member, Texas Board of Criminal Justice
Fax 512.305.9398

Brad Livingston
Texas Department of Criminal Justice
Fax 936.437.2123

Bryan Collier
Deputy Executive Director, Texas Department of Criminal Justice
Fax 936.437.8925

Jason Clark
Information Director, Texas Department of Criminal Justice
Fax 936.437.6055

Region I Regional Director Richard Alford
Texas Department of Criminal Justice
Fax 936.437.2651

Region I Deputy Director Robert "Jay" Eason
Texas Department of Criminal Justice
Fax 936.437.2651

Katherine D. Hayes
Assistant Attorney General
Fax 512.320.8132

Dear Sirs and Madam:

I am the owner and pharmacist-in-charge of the Woodlands Compounding Pharmacy, the pharmacy that has provided TDCJ with vials of compounded pentobarbital.

Based on the phone calls I had with Erica Minor of TDCJ regarding its request for these drugs, including statements that she made to me, it was my belief that this information

would be kept on the "down low" and that it was unlikely that it would be discovered that my pharmacy provided these drugs. Based on Ms. Minor's requests, I took steps to ensure it would be private. However, the State of Texas misrepresented this fact because my name and the name of my pharmacy are posted all over the internet. Now that the information has been made public, I find myself in the middle of a firestorm that I was not advised of and did not bargain for. Had I known that this information would be made public, which the State implied it would not, I never would have agreed to provide the drugs to the TDCJ.

I, and my staff, are very busy operating our pharmacy, and do not have the time to deal with the constant inquiries from the press, the hate mail and messages, as well as getting dragged into the state's lawsuit with the prisoners, and possible future lawsuits. For these reasons, I must demand that TDCJ immediately return the vials of compounded pentobarbital in exchange for a refund.

Please contact me immediately to arrange for the return of the drugs. Otherwise I may have to ask the Court in the prisoners' lawsuit to consider my concerns.

Sincerely,

Jasper Lovoi, RPh.

Exhibit J

About      Privacy Policy      Terms of Service

# MIMESIS
### LAW

NEW FAULT LINES WEBSITE          MIMESIS LAW

SEARCH

Mimesis Law    |    **10 June 2020**



Home    >    Fault Lines                                    by *Tamara Tabo* -Jul 1, 2015

## ALITO'S PAYBACK IN THE "GUERILLA WAR" OVER EXECUTIONS

July 1, 2015 (Mimesis Law) — This week, the United States Supreme Court released its decision in *Glossip v. Gross*, where Oklahoma inmates sentenced to die challenged the State's use of a controversial three-drug lethal injection protocol.

Justice Samuel Alito wrote for the majority.  Chief Justice Roberts and Justices Scalia, Kennedy, and Thomas joined. (Justices Scalia and Thomas each filed concurring opinions joined by the other.  Justice Breyer wrote a scathing dissent, with support from Justice Ginsburg.  Justice Sotomayor dissented, joined by Ginsburg, Breyer, and Kagan.)

Justice Alito's majority opinion addresses two main issues.

First, the majority concluded that the District Court did not commit clear error when it found that the inmate petitioners failed to show that using the drug midazolam during executions posed a substantial risk of severe pain.  The lower court's factual finding was pivotal because of the particular role midazolam plays in the three-drug lethal injection protocol.

The three-drug lethal injection protocol used by states in the past included a barbiturate to anesthetize the inmate, then a paralytic agent such as pancuronium bromide to slow the inmate's breathing, and potassium chloride to stop the inmate's heart.  The second and third drugs, quite frankly, hurt.  When considering a 2008 challenge to the lethal injection protocol in *Baze v. Rees*, Chief Justice Roberts wrote, "It is uncontested that, failing a proper dose of sodium thiopental to render the prisoner unconscious, there is substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and of pain from potassium chloride."





**OUTSOURCING LINDA GREENHOUSE TO YALE**

RELATED BY 

TAGS        **CATEGORY**        AUTHOR


**In Beckles, SCOTUS Perpetuates the Advisory G ...**
by *Josh Kendrick* - Mar 8, 2017
Fault Lines


**At the Supreme Court, You've Got the Fr ...**
by *Andrew King* - Mar 7, 2017
Fault Lines


**Judge Silberman to Notorious RBG: Shut Up!**
by *Andrew King* - Mar 3, 2017
Fault Lines


**Judge John Kane on Supreme Court Nominee, 10t ...**
by *John L. Kane Jr.* - Feb 28, 2017
Fault Lines



**POPULAR POSTS**

The Oklahoma protocol at issue in *Glossip* uses midazolam in place of the sodium thiopental.  So, midazolam must do the same thing — render the prisoner unconscious, unable to feel the effects of the next two drugs in the sequence.

The District Court in *Glossip* was satisfied that midazolam does.

When the Supreme Court reviewed the District Court's decision, it applied the "clear error" standard.  This standard of review only corrects the lower court's decision if the decision was "clearly erroneous," and it precludes correction if the reviewing court might simply have decided the factual question differently.  Justice Alito's opinion sifts through plenty of rivaling expert testimony offered in *Glossip*.  But His conclusion that the District Court did not commit clear error says as much about how deferential the standard of review is as it does about the actual anesthetic effects of midazolam.

On the second main issue in *Glossip*, the majority found that the inmates did not meet a very important burden: pleading and proving that there is a known and available alternative method of execution that is better than the midazolam protocol.

The inmates suggest that sodium thiopental or pentobarbital would be good alternatives to midazolam.  The State of Oklahoma actually agrees.  What a shame that an influential anti-death penalty lobby didn't think of that before intimidating manufacturers of those drugs to stop making them available to prisons.

Under pressure from opponents of capital punishment, the European Union banned the sale of drugs used in the standard lethal injection protocol to U.S. prisons.  Anti death penalty activists also convinced the EU to add "short and intermediate acting barbiturate anaesthetic agents" like pentobarbital and sodium thiopental to its Regulation on Products used for Capital Punishment and Torture.

The apparent strategy of capital punishment opponents was to take away the means of lethal injection, in order to force prisons to stop executing inmates. Instead, Oklahoma and other states began experimenting with alternative drug cocktails, including combinations using midazolam.

This strategy is like banning the sale of rope to U.S. prisons, instead of repealing statutes that allow execution by hanging. The strategy works pretty well until the prisons start looking around for a rubber hose or leather strap to make the noose out of.

At oral arguments for *Glossip*, Justice Samuel Alito posed what I considered at the time to be the decisive question.

> *Now, this Court has held that the death penalty is constitutional.  It's controversial as a constitutional matter.  It certainly is controversial as a policy matter.  Those who oppose the death penalty are free to try to persuade legislatures to abolish the death penalty.  Some of those efforts have been successful. They're free to ask this Court to overrule the death penalty.*
>
> *But until that occurs, is it appropriate for the judiciary to countenance what amounts to a guerrilla war against the death penalty which consists of efforts to make it impossible for the States to obtain drugs that could be used to carry out capital punishment with  little, if any, pain?  And so the States are reduced to using drugs like this one which give rise to disputes about whether, in fact, every possibility of pain is  eliminated.*

In Justice Alito's majority opinion in *Glossip*, Alito answered his own question.  By insisting that the inmates bore the burden of providing an alternative to midazolam, the Court forced onto anti-death penalty abolitionists the consequences of guerrilla war. In war, there are casualties.  In war, there is collateral damage.  In war, there are strategies that backfire.

## Share this:

Reddit     Email     Print     Facebook     LinkedIn
Google     Twitter

### Related

The Death Penalty: Not Quite Dead Yet
January 19, 2016
In "Fault Lines"

Scalia's Greatest Hits
February 15, 2016
In "Fault Lines"

Tweaking The Machinery of Death
July 6, 2015
In "Fault Lines"

DEATH PENALTY    FAUL LINES    SAMUEL ALITO    SCOTUS

**2 Comments on this post.**
☐ Notify me of follow-up comments by email.

**LEAVE A REPLY**

Name *

Email *

Website

POST COMMENT    ☐ Notify me of new posts by email.

Comments for Fault Lines posts are closed here. You can leave comments for
this post at the new site, faultlines.us



**Have the anti-death penalty folks been hung by their own petard? «
Hercules and the umpire.**
2 July 2015 at 9:05 am - Reply
[...] subject. It is in that vein that urge you to read Tamara Tabo's provocative article entitled
Alito's payback in the "Guerilla War" over executions, Mimesis Law (June 1, [...]



**The Trilemma of The Religious Death Penalty Juror**
29 June 2016 at 11:22 am - Reply
[...] to enforce the death penalty. It might even be considered by some on the court to be part of
the "guerilla war" halting executions across the [...]

Disclaimer: Advertising content does not reflect
any knowledge of or endorsement by Mimesis
Law, Fault Lines or any contributor. The
advertisements you see on your device are what
robots think you are interested in buying, not
Mimesis Law or its writers.

Copyright 2015-2016 Mimesis Law

Exhibit K

Case 1:18-cv-01556-TSC Document 35-4 Filed 06/12/20 Page 127 of 177



🇺🇸 An official website of the United States government
[Here's how you know]

THE UNITED STATES
DEPARTMENT *of* JUSTICE
TICE NEWS

**Department of Justice**

Office of Public Affairs

FOR IMMEDIATE RELEASE        Thursday, July 25, 2019

# Federal Government to Resume Capital Punishment After Nearly Two Decade Lapse

### Attorney General William P. Barr Directs the Federal Bureau of Prisons to Adopt an Addendum to the Federal Execution Protocol and Schedule the Executions of Five Death-Row Inmates Convicted of Murdering Children

Attorney General William P. Barr has directed the Federal Bureau of Prisons (BOP) to adopt a proposed Addendum to the Federal Execution Protocol—clearing the way for the federal government to resume capital punishment after a nearly two decade lapse, and bringing justice to victims of the most horrific crimes. The Attorney General has further directed the Acting Director of the BOP, Hugh Hurwitz, to schedule the executions of five death-row inmates convicted of murdering, and in some cases torturing and raping, the most vulnerable in our society—children and the elderly.

"Congress has expressly authorized the death penalty through legislation adopted by the people's representatives in both houses of Congress and signed by the President," Attorney General Barr said. "Under Administrations of both parties, the Department of Justice has sought the death penalty against the worst criminals, including these five murderers, each of whom was convicted by a jury of his peers after a full and fair proceeding. The Justice Department upholds the rule of law—and we owe it to the victims and their families to carry forward the sentence imposed by our justice system."

The Federal Execution Protocol Addendum, which closely mirrors protocols utilized by several states, including currently Georgia, Missouri, and Texas, replaces the three-drug procedure previously used in federal executions with a single drug—pentobarbital. Since 2010, 14 states have used pentobarbital in over 200 executions, and federal courts, including the Supreme Court, have repeatedly upheld the use of pentobarbital in executions as consistent with the Eighth Amendment.

Upon the Attorney General's direction, Acting Director Hurwitz adopted the Addendum to the Federal Execution Protocol and, in accordance with 28 C.F.R. Part 26, scheduled executions for the following individuals:

- Daniel Lewis Lee, a member of a white supremacist group, murdered a family of three, including an eight-year-old girl. After robbing and shooting the victims with a stun gun, Lee covered their heads with plastic bags, sealed the bags with duct tape, weighed down each victim with rocks, and threw the family of three into the Illinois bayou. On May 4, 1999, a jury in the U.S. District Court for the Eastern District of Arkansas found Lee guilty of numerous offenses, including three counts of murder in aid of racketeering, and he was sentenced to death. Lee's execution is scheduled to occur on Dec. 9, 2019.
- Lezmond Mitchell stabbed to death a 63-year-old grandmother and forced her nine-year-old granddaughter to sit beside her lifeless body for a 30 to 40-mile drive. Mitchell then slit the girl's throat twice, crushed her head with 20-pound rocks, and severed and buried both victims' heads and hands. On May 8, 2003, a jury in the U.S. District Court for the District of Arizona found Mitchell guilty of numerous offenses, including first degree murder, felony murder, and carjacking resulting in murder, and he was sentenced to death. Mitchell's execution is scheduled to occur on Dec. 11, 2019.

Case 1:18-cv-01556-TSC Document 35-4 Filed 06/12/20 Page 128 of 177

- Wesley Ira Purkey violently raped and murdered a 16-year-old girl, and then dismembered, burned, and dumped the young girl's body in a septic pond. He also was convicted in state court for using a claw hammer to bludgeon to death an 80-year-old woman who suffered from polio and walked with a cane. On Nov. 5, 2003, a jury in the U.S. District Court for the Western District of Missouri found Purkey guilty of kidnapping a child resulting in the child's death, and he was sentenced to death. Purkey's execution is scheduled to occur on Dec. 13, 2019.

- Alfred Bourgeois physically and emotionally tortured, sexually molested, and then beat to death his two-and-a-half-year-old daughter. On March 16, 2004, a jury in the U.S. District Court for the Southern District of Texas found Bourgeois guilty of multiple offenses, including murder, and he was sentenced to death. Bourgeois' execution is scheduled to occur on Jan. 13, 2020.

- Dustin Lee Honken shot and killed five people—two men who planned to testify against him and a single, working mother and her ten-year-old and six-year-old daughters. On Oct. 14, 2004, a jury in the U.S. District Court for the Northern District of Iowa found Honken guilty of numerous offenses, including five counts of murder during the course of a continuing criminal enterprise, and he was sentenced to death. Honken's execution is scheduled to occur on Jan. 15, 2020.

Each of these inmates has exhausted their appellate and post-conviction remedies, and currently no legal impediments prevent their executions, which will take place at U.S. Penitentiary Terre Haute, Indiana.  Additional executions will be scheduled at a later date.

---

**Component(s):**
Office of the Attorney General

**Press Release Number:**
19-807

*Updated July 25, 2019*

Exhibit L



# Department of Justice

### U.S. Attorney's Office
### District of Puerto Rico

For Immediate Release                                                   Tuesday, April 30, 2019

Rosa Emilia Rodríguez-Vélez, United States Attorney
Contact: Lymarie V. Llovet-Ayala
(787) 766-5656
www.justice.gov/usao-pr

## Five men sentenced for their role in conspiracy to murder Federal Bureau of Prisons Correctional Officer Osvaldo Albarati-Casanas

SAN JUAN, P.R. – On April 30, 2019, five men were sentenced by the Honorable Judge Gustavo A. Gelpi today for their roles in the conspiracy to murder Lieutenant Osvaldo Albarati-Casañas, a Federal Bureau of Prisons Correctional Officer, announced United States Attorney for the District of Puerto Rico, Rosa Emilia Rodríguez-Vélez. Lieutenant Albarati was murdered on February 26, 2013.

On December 7, 2018, Ángel D. Ramos-Cruz, Juan Quiñones-Meléndez, Orlando Mojica-Rodríguez, and Jayson Rodríguez-González entered pleas of guilty to the pending indictment and on December 14, 2018, Miguel Diaz-Rivera pled guilty for his role in the conspiracy. As part of the plea agreements, the defendants acknowledged that they conspired to murder Lt. Albarati as a direct result of continuous seizures of contraband by Albarati and other correctional officers. At the time of the conspiracy, Ramos-Cruz was an inmate at the facility and from inside MDC, he contacted an associate, Quiñones-Meléndez, a.k.a. "El Manco", and requested that "El Manco" recruit the triggermen to carry out the hit or "vuelta."

"Vuelta" which translates in English to "turn" or "errand" was a term that the organizations of Orlando Mojica-Rodríguez and Quiñones-Meléndez would use to describe a plan to commit a murder. Quiñonez-Meléndez contacted his fellow associate Orlando Mojica-Rodríguez a.k.a. "Yogui," to shore up resources and triggermen. Quiñones-Meléndez recruited Carlos Rosado-Rosado, a.k.a. "Cano" and Jayson Rodríguez-González, a.k.a. "Gonzo," to participate in the murder of Lt. Albarati. Meanwhile, Mojica-Rodríguez recruited Alexander Rosario de León, a.k.a. "Coqui," as an additional enforcer to participate in the murder. Rosado-Rosado and Rosario de León had previously entered guilty pleas.

The murder of Lt. Albarati was carried out on February 26, 2013, as planned. Co-defendant, Oscar Martínez-Hernández was found guilty by a jury on September 20, 2018, for his role in the conspiracy to murder Lt. Albarati. 2

Today the defendants were sentenced by Judge Gelpi in accordance with their respective plea agreements for their specific roles in the offense. Ramos-Cruz was sentenced to 309 months, Quiñones-Meléndez was sentenced to 285 months, Diaz-Rivera was sentenced to 129 months, Mojica-Rodriguez was sentenced to 249 months, and Rodriguez-Gonzalez was sentenced to 396 months.

"Throughout his law enforcement career, Lieutenant Albarati's service was exemplary, selfless and courageous," said United States Attorney Rosa Emilia Rodríguez-Vélez. "With this conviction we take another step towards our goal of holding those who carried out this reprehensible and senseless murder accountable for their actions. The Department of Justice will continue to honor Lieutenant Albarati's legacy as a public servant, his dedication to safeguard the community, and his integrity."

6/10/2020                    Five men sentenced for their role in conspiracy to murder federal Bureau of Prisons correctional officer | Ysabel Abarati-Casanas | Bur...

Case 1:18-cv-01156-TSC   Document 35-4   Filed 06/12/20   Page 131 of 177

The murder of government employees and officials is a crime punishable by death or imprisonment for any term of years or for life. Murder for hire is a crime punishable by death or imprisonment for any terms of years or for life. Use of a firearm resulting in death is also punishable by a maximum term of life.

The case was investigated by the FBI with the collaboration of the U.S. Department of Justice, Office of the Inspector General, Miami Field Office, the Federal Bureau of Prisons, DEA, ATF, the United States Marshals Service, ICE-HSI, the Puerto Rico Police Department, the San Juan Municipal Police, and other law enforcement agencies that covered hundreds of leads developed as a result of the investigation.

The case was prosecuted by Assistant United States Attorneys Nicholas W. Cannon and Max Pérez-Bouret.

# # #

<u>Miami Field Division</u>

Exhibit M

Case 1:18-cr-01556-TSC Document 354 Filed 06/12/20 Page 133 of 177

 An official website of the United States government
Here's how you know

THE UNITED STATES
DEPARTMENT *of* JUSTICE
STICE NEWS

**Department of Justice**

Office of Public Affairs

FOR IMMEDIATE RELEASE                                             Tuesday, July 11, 2017

## Federal Jury Returns Sentence of Life Imprisonment for Murder of a Federal Correctional Officer

A federal jury in Scranton returned a verdict yesterday of life in prison for Jessie Con-Ui, 40, a federal inmate, for the first-degree murder of U.S. Correctional Officer Eric Williams.  Senior U.S. District Court Judge A. Richard Caputo scheduled the formal imposition of the life sentence for October 12.

Attorney General Jeff Sessions of the Justice Department; Acting Assistant Attorney General Kenneth A. Blanco of the Justice Department's Criminal Division; and U.S. Attorney Bruce D. Brandler for the Middle District of Pennsylvania made the announcement.

On June 7, 2017, the same jury convicted Con-Ui of "willfully, deliberately, maliciously, and with premeditation and malice aforethought" killing Officer Williams while he was engaged in the performance of his duties at the Canaan Federal Correctional Complex, U.S. Penitentiary, in Waymart, Pennsylvania, on Feb. 25, 2013.

The evidence at trial established that Con-Ui, armed with two sharpened weapons (commonly known as "shanks"), positioned himself at the top of a metal stairway as Correctional Officer Williams ascended the stairway leading to the second floor of a housing unit within the prison. Con-Ui kicked Correctional Officer Williams down the stairs and then stabbed him over 200 times with the weapons. Con-Ui also repeatedly kicked and stomped on Correctional Officer Williams, causing massive fatal injuries.

At the time of the murder, Con-Ui was serving an 11-year federal sentence for conspiracy to possess with intent to distribute more than 5 kilograms of cocaine, imposed by the United States District Court for the District of Arizona in 2005.  Con-Ui was also serving a concurrent life sentence for first-degree murder imposed by the Maricopa County Superior Court, Phoenix, Arizona, in 2008 for the 2002 murder of Carlos Garcia in Phoenix, Arizona.

"I extend my sincere condolences to Officer Williams's family, colleagues, and friends.  The murder of a dedicated public servant in the line of duty, under such heinous circumstances, strikes at the core and soul of our nation," said Acting Assistant Attorney General Blanco.  "We hope and pray that Officer Williams's family will find some closure with the conclusion of these proceedings, and knowing that his dedicated service will always be remembered by a grateful nation."

"We are extremely disappointed with the jury's verdict, but I want to highlight the outstanding work of all the men and women who worked on this case for over four years," said U.S. Attorney Brandler.  "The Phoenix, Arizona Division of the Federal Bureau of Investigation; the Phoenix Police Department; the Phoenix Department of Corrections; the Phoenix Juvenile Justice Office; the Federal Bureau of Investigation Laboratory in Quantico, Virginia; the Scranton, Pennsylvania Division of the Federal Bureau of Investigation; the Federal Bureau of Prisons; the U.S. Attorney's Office Victim-Witness Unit and legal support staff; and Assistant United States Attorneys Fran P. Sempa and Robert J. O'Hara and Department of Justice Capital Case Section Trial Attorney Robert J. Feitel, all performed their roles in exemplary fashion and deserve our appreciation for their tireless efforts in the prosecution of this case."

6/10/2020　Federal Jury Returns Sentence of Life Imprisonment for Murder of Federal Correctional Officer | OPA | Department of Justice

Case 1:18-cr-01556-TSC Document 354 Filed 06/12/20 Page 134 of 177

"A correctional officer has one of the most dangerous jobs in law enforcement. Eric Williams was performing that job at USP Canaan, when was he blindsided and brutalized by Jessie Con-Ui," said Michael Harpster, Special Agent in Charge of the FBI's Philadelphia Division. "The heinous violence inflicted upon Correctional Officer Williams cost a dedicated federal officer his life. At the Philadelphia FBI, our hearts go out to the Williams family and all who knew and loved Eric."

At the time of his death, Officer Williams was 34 years old, and a resident of Wapwallopen, Pennsylvania.

The charges against Con-Ui resulted from an investigation by the FBI, with assistance from the Federal Bureau of Prisons. The case is being prosecuted by the Criminal Division's Capital Case Section and the U.S. Attorney's Office for the Middle District of Pennsylvania.

---

**Topic(s):**
Violent Crime

**Component(s):**
Criminal Division

**Press Release Number:**
17-756

*Updated November 8, 2017*

Exhibit N

**Your browser is not fully supported.**

For full feature support, please upgrade to a modern browser such as Microsoft Edge.

BRADFORD-COUNTY

# Stunning Video, Testimony in Prison Murder Trial

SCRANTON — Four years after the vicious and deadly attack on a federal correctional officer in Wayne County, the man accused of killing Eric Williams of N...



jessie con-ui

Author: **Jim Hamill**
Published: **11:53 AM EDT June 5, 2017**
Updated: **5:04 PM EDT June 5, 2017**

 

SCRANTON -- Four years after the vicious and deadly attack on a federal correctional officer in Wayne County, the man accused of killing Eric Williams of Nanticoke is on trial.

The convicted gang member's attorneys fully admit he is guilty.

The Williams family was on hand for opening statements and testimony from about a half dozen correctional officers from USP Canaan in Wayne County.



But Eric Williams' parents did not stay in court while jurors watched their son get stabbed 200 times by an inmate who faces the death penalty.

Eric Williams' parents left the federal courthouse in Scranton following opening statements in their son's murder trial.

Jessie Con-ui is charged with first-degree murder of a U.S. correctional officer after the convict jumped Williams in a housing unit at the federal prison near Waymart in 2013.

Assistant U.S. Attorney Francis Sempa told the jury, "Eric Williams was two hours from shift end and going home. He never made it home."

Prosecutors say Con-ui waited for Williams to walk to the top of the stairs that night before kicking him. Williams fell, then Con-ui spent the next 11 minutes attacking the officer while more than 100 inmates watched and did nothing.

Williams was stabbed more than 200 times with two shanks, kicked repeatedly in the head, stomped, and his head was slammed onto the concrete floor.

There were gasps in the courtroom when a photo of Williams' bloodied face was shown.

Con-ui told prison officials that night it was, "a disrespect issue."

Defense attorneys fully admitted to jurors that "Jessie is guilty of murder beyond all doubt" and plan to focus on trying to keep him from being sentenced to death.

By afternoon, Williams' parents left the courtroom while video of the murder played for the jury. The room was silent. Con-ui covered his eyes the entire time. Many watched in horror as Williams was stabbed repeatedly.

A fellow corrections officer broke down on the stand and testified when he finally found Williams, "He was mutilated, my friend, co-worker, and brother. I couldn't recognize him."



Prosecutors will keep presenting evidence in the coming days, but a guilty verdict is all but guaranteed without a defense

However, Con-ui's attorneys made it clear they plan to do everything it takes to keep him off death row.

The penalty phase is expected to last weeks.



Exhibit O

**News**Room

8/13/18 WashingtonPost.com (Pg. Unavail. Online)
2018 WLNR 24685603

WashingtonPost.com
Copyright (c) 2018 The Washington Post

August 13, 2018

Section: post-nation

**Drug companies don't want to be involved in executions**, so they're suing to keep their drugs out
Companies that make and sell the drugs have restricted who can buy them,
asked states to return them and even stopped making one to try to keep it ...

Mark Berman

Companies that make and sell the drugs have restricted who can buy them, asked states to return them and even stopped making one to try to keep it away from lethal injections.

Drug companies have made it clear that they don't want states using their products to carry out death sentences. They've imposed strict limits on who can buy the drugs used for lethal injections, asked states to return some chemicals and, in one case, completely stopped making a drug to keep it out of the nation's death chambers.

The strategy has helped cut states off from many of the drugs they have used or sought to use for lethal injections, causing authorities to scramble to find new drug combinations or different execution methods. But it hasn't entirely stopped states from getting the drugs they seek, so some companies have started testing a new tactic: Filing lawsuits aimed at keeping their drugs away from executions.

In three suits filed since last year, drug manufacturers and distributors have taken aim at states on the verge of carrying out executions, accusing them of using deceit to obtain the chemicals and demanding states return them. Experts say the drug companies are turning to the courts as a last resort.

"The companies have found that you have to up the ante because a threat is simply not enough," said Deborah W. Denno, a law professor at Fordham University and a death penalty expert.

While the lawsuits have had mixed results, Denno said she expects more could follow as companies further try to distance themselves from capital punishment.

"The company's goal is to not have their medicine used to kill prisoners," said Robert Dunham, executive director of the Death Penalty Information Center, a Washington nonprofit. These firms worry about "the damage to their reputation that is caused by having medicines associated with death instead of life," he said.

Supporters of capital punishment accuse the drug companies of forcing states to use inferior execution options and of using the court battles as a way to stop executions — or at least delay them just long enough for the drugs to expire.

The latest of these legal fights has unfolded in Nebraska, where state officials have been preparing to execute Carey Dean Moore, 60, who was sentenced to death for killing two Omaha cabdrivers in 1979. Moore's execution, scheduled for Tuesday morning, would be Nebraska's first-ever lethal injection and the country's first execution using the powerful opioid fentanyl.

The drug company Fresenius Kabi filed a federal lawsuit last week seeking to block Nebraska from using what the company says it believes are two of its drugs to execute Moore. The company said it took no position on the death penalty but "opposes the use of its products for this purpose and therefore does not sell certain drugs to correctional facilities." In court papers, the firm accused Nebraska of obtaining its drugs "through improper or illegal means" because of the restrictions it has in place.

Nebraska officials pushed back, arguing they bought their drugs lawfully and legitimately. They also argued they had no other way to obtain drugs. Scott R. Frakes, director of Nebraska's Department of Correctional Services, wrote in an affidavit that he had contacted at least 40 suppliers and a half-dozen other states seeking drugs; only one supplier would provide them, and it will not sell more to the state, he said.

A federal judge ruled against the drug company Friday, and a three-judge panel of the U.S. Court of Appeals for the 8th Circuit affirmed that ruling on Monday. A spokesman for the company said it will not seek further appeals, likely clearing the way for Nebraska to carry out the execution. The office of Nebraska's attorney general declined to comment on the appellate court's decision.

That lawsuit came closely on the heels of another drug company's suit that, at least temporarily, blocked Nevada from carrying out an execution using fentanyl. The state was hours away from executing Scott Dozier for murder last month, when a judge halted it because Alvogen, a pharmaceutical firm, accused the state of "illegitimately" acquiring its drug, the sedative midazolam.

The cases both have echoes of an effort last year by McKesson, the drug distributor, which went to court to stop Arkansas from using a drug the company said state officials had obtained under false pretenses. A state judge initially prohibited officials from using the drug, but Arkansas Attorney General Leslie Rutledge (R) successfully appealed to the Arkansas Supreme Court to have that order stayed. The state went on to carry out four executions in eight days.

"Pharmaceutical companies are trying to circumvent the rule of law by using eleventh-hour litigation tactics to stall these lawful executions," Rutledge said in a statement last week. Rutledge and more than a dozen other attorneys general have opposed the drug companies' lawsuits in Nebraska and Nevada, calling them "frivolous claims" and accusing the firms of "abusing the litigation process."

"The Arkansas Supreme Court did not cave to the pressure from anti-death-penalty advocates," Rutledge said. "I will continue to fight for justice and support my colleagues against these meritless arguments in states like Nevada and Nebraska, where drug companies have asked courts to halt lawful executions."

In briefs filed in the Nebraska and Nevada cases, the attorneys general said "these lawsuits did not come out of nowhere" but are "the most recent battle" in what Supreme Court Justice Samuel A. Alito Jr. has described as "a guerrilla war against the death penalty."

After Louisiana Attorney General Jeff Landry (R) joined the group of attorneys general weighing in on the Nevada case, he issued a statement saying the drug company "stood between victims' families and justice" and added: "No family should be deprived of their hard-won justice and closure because of the hypocritical actions of this drug peddler."

The legal fights come at an uncertain moment for capital punishment in the United States, where the practice remains on the books in 31 states but death sentences are carried out by far fewer.

Executions and death sentences alike have both plummeted in recent years. Lethal injection remains the main execution method nationwide, used in 289 out of the 292 executions carried out since 2010, according to records kept by the Death Penalty Information Center. (The others were two electrocutions in Virginia and one execution by firing squad in Utah; both states have lethal injection but allowed inmates to choose other options.)

Unable to readily obtain lethal drugs, Oklahoma said this year it would begin using nitrogen gas for all executions, which Alabama and Mississippi recently approved as backup options. Utah also has approved using a firing squad in more cases.

"Lethal substances used in a lethal injection execution are difficult, if nearly impossible, to obtain," Frakes said in an affidavit filed in federal court. "This problem is not limited solely to Nebraska, but exists in other death penalty states."

Officials seeking drugs for executions also have turned to new, untested drug combinations. What used to be a largely uniform process nationwide — a three-drug protocol using an anesthetic, a paralytic and then a drug to stop the heart — has become something that varies from state to state.

Florida last year became the first state to use the anesthetic etomidate in an execution. Ohio, Arkansas, Alabama and Tennessee are among the states that have recently carried out executions using a combination of three drugs that includes midazolam, which is a common sedative but has become controversial for its use in unusually lengthy or bungled executions.

Nevada and Nebraska both announced plans to use fentanyl in lethal injections, scheduling the first executions involving the powerful synthetic opioid for this summer. Both ran headlong into drug companies asking courts to block the states from using their products and to hand them over, albeit with different results. Nevada's execution remains on hold, and the case is ongoing, while Nebraska's court fight appears to be over.

Richard G. Kopf, senior U.S. district judge, issued an order last week rejecting the drug company's request in Nebraska. He pointed to the particularly tangled recent history of capital punishment in the state, noting that lawmakers abolished the death penalty in 2015 and then voters restored it the following year after it was added to the statewide ballot.

"The will of the people, as very currently understood, is plain," he wrote.

Read more:

Trump remains a staunch supporter of the death penalty, but many Americans are souring on it

The steady decline of America's death rows

Using a new drug, Florida executes a death-row inmate for the first time in a year-and-a-half


---- Index References ----

Company: FRESENIUS KABI NV; MCKESSON CORP

News Subject: (Crime (1CR87); Criminal Law (1CR79); Death Penalty (1DE04); Government Litigation (1GO18); Judicial Cases & Rulings (1JU36); Legal (1LE33); Social Issues (1SO05))

Industry: (Pharmaceuticals (1PH33); Pharmaceuticals & Biotechnology (1PH13); Pharmaceuticals Wholesale Distribution (1PH35))

Region: (Alabama (1AL90); Americas (1AM92); Arkansas (1AR83); Florida (1FL79); Nebraska (1NE88); Nevada (1NE81); North America (1NO39); U.S. Midwest Region (1MI19); U.S. Southeast Region (1SO88); U.S. West Region (1WE46); USA (1US73); Utah (1UT90))

Language: EN

Other Indexing: (Deborah Denno; Samuel Alito Jr.; Scott Frakes; Dean Moore; Dean Moore; Richard Kopf; Scott Dozier; Robert Dunham)

Word Count: 1447

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

**News**Room

Exhibit P



**HEALTH**

Published — April 4, 2012
Updated — May 19, 2014 at 12:19 pm ET

# LETHAL INJECTION DRUG ACCESS COULD PUT EXECUTIONS ON HOLD

↑ Inmates on death row in the United States are executed by means of lethal injection. Dave Martin/AP

## Pentobarbital, now most-commonly used execution drug, likely to face barriers in coming months

Kimberly Leonard

Thomas Arthur has spent 29 years in prison. He was scheduled to be executed last week in Alabama, but the lethal injection was put on hold because of pentobarbital concerns. (AP)

A federal judge's decision to block imports of a drug used in executions will leave states to rely more on a substitute drug that could itself be getting scarce — developments that raise questions about both how these drugs are regulated and whether states will have the drugs they need to continue capital punishment by lethal injection.

Over the past three decades, lethal injection has become the primary method of execution in the United States because it is widely viewed as the most humane alternative. Thirty-five states and the federal government use this method and more than 1,100 inmates have been put to death by lethal injection.

State justice or corrections departments have conducted these executions by administering the anesthetic sodium thiopental in a lethal dosage on its own, or as part of a three-step "cocktail" in which sodium thiopental is followed by pancuronium bromide, a paralytic agent, then potassium chloride, which stops the heart and causes death.

But in late March, a federal judge **blocked importation** (https://ecf.dcd.uscourts.gov/cgi-bin/show_public_doc?2011cv0289-23) of sodium thiopental, ruling that the Food and Drug Administration (FDA) ignored the law by allowing it to be imported into the country without following regulatory protocol. The drugs were slated for executions, a purpose unapproved by the agency — and unlikely to ever be approved by the agency. Sodium thiopental is only available from overseas, because its U.S. manufacturer, Hospira Inc., stopped making it 2011, as a result of controversies over its use in executions.

Case 1:18-cv-01559-TSC Document 35-4 Filed 06/12/20 Page 145 of 177

### Search for an alternative

The logical alternative to sodium thiopental is pentobarbital, an anesthetic that causes people to lose consciousness, sensation and memory. Since 2010, 12 state justice departments have used pentobarbital, a drug veterinarians also administer to euthanize animals, to execute 47 inmates, usually as part of a three-drug cocktail, according to the **Death Penalty Information Center** (http://www.deathpenaltyinfo.org/) , a nonprofit organization that publishes annual reports on capital punishment.

With sodium thiopental now nearly impossible to access, pentobarbital is likely to become even more critical for those who want to carry out executions in the near future, Richard Dieter, executive director for the Death Penalty Information Center, told *iWatch News*. If the restrictions become effective, correctional departments may have to choose another drug or form of execution altogether, he said.

## Related Articles

**HEALTH** (HTTPS://PUBLICINTEGRITY.ORG/TOPICS/HEALTH/)

### Texas switches to 1-drug execution due to shortage (https://publicintegrity.org/health/texas-switches-to-1-drug-execution-due-to-shortage/)

**READ** (HTTPS://PUBLICINTEGRITY.ORG/HEALTH/TEXAS-SWITCHES-TO-1-DRUG-EXECUTION-DUE-TO-SHORTAGE/) →

(https://publicintegrity.org/health/texas-switches-to-1-drug-execution-due-to-shortage/)

But pentobarbital could eventually become scarce. Most state justice departments say that for security reasons they cannot specify how much of the drug they have stored, but pentobarbital's manufacturers for human uses have in recent months acted on a number of fronts to prevent its use for executions.

Lundbeck Inc., a Danish pharmaceutical company that manufactured the drug until late last year, sent **letters** (http://www.deathpenaltyinfo.org/documents/LundbeckLethInj.pdf) last August to governors and correctional departments in 16 states — Alabama, Arizona, Florida, Georgia, Idaho, Louisiana, Mississippi, Montana, Nebraska, Ohio, Oklahoma, Oregon, South Carolina, Tennessee, Texas and Virginia — saying it did not want its drug used for executions.

When that request was ignored, the company switched from using several distributors last June to using a drop ship program, selling its product directly to health care facilities through a single distributor, Cardinal Health. In addition, every medical facility that received the drugs had to sign a document saying the product would not be used for executions or resold for that purpose.

"We stated very clearly that we're in the business of improving peoples lives and using it for capital punishment is against what we do," Matt Flesch, spokesman for Lundbeck, told *iWatch News*.

Finally last December Lundbeck sold its pentobarbital rights to Illinois-based Akorn Inc., which signed an agreement promising it would not sell the drug for the purpose of executions.

### Stockpiled

For the moment, though, pentobarbital is still available. States bought supplies of the drug before distribution limitations were enacted, Flesch said, though some states may soon run out, or the drug could expire. Like most pharmaceuticals, pentobarbital has an expiration date of about 18 months.

Dale Baich, assistant federal public defender in the state of Arizona, said his state and other obtained pentobarbital some time ago. "In Arizona, the state was ordering it in 2010, along with sodium thiopental," he said. "Other states stockpiled it."

A spokesman for the Department of Criminal Justice in Texas, the state responsible for the highest number of executions in the country, would not specify how much pentobarbital the state had left, though he did confirm in an email to *iWatch News* that there was enough to carry out the seven executions it has scheduled for 2012. In Georgia, a spokeswoman also confirmed in writing that the state had "an adequate supply of all pharmaceuticals necessary to carry out lethal injections."

But the efforts to limit the supply for executions may be having some effect. Oklahoma only has enough pentobarbital to execute three more people, said Jerry Massie, public information officer at the state's Department of Corrections. Two inmates were executed earlier this year, and the state had purchased enough pentobarbital for five executions. Two more executions have been scheduled for 2012, and the state has more than 60 inmates on death row.

## Obstacles

The use of pentobarbital is facing other challenges, as well. In several cases, judges have put executions on hold until questions about the drug can be answered. Alabama was supposed to put Thomas Douglas Arthur to death by lethal injection last week, but shortly before the scheduled execution date, a federal appeals court **put his execution on hold** (http://www.ca11.uscourts.gov/opinions/ops/201115548.pdf) for the fifth time over the course of his 29 years in prison, because of concerns about pentobarbital.

His attorney, Suhana Han, argued it might not knock her client out all the way. This could make the subsequent injections extremely painful, she argued, falling under the definition of "cruel and unusual punishment," prohibited by the Eighth Amendment.

**Megan McCracken** (http://www.law.berkeley.edu/2868.htm) , Eighth Amendment resource counsel at the University of California-Berkeley School of Law, is worried that states have simply switched to using pentobarbital in executions without much study or oversight. "There really hasn't been a thorough look at the use of this drug in a three-drug execution protocol," she said, "where the prisoner is paralyzed, and cardiac arrest is induced, shortly after administration of the pentobarbital."

Texas started using pentobarbital last year, and did not consult a physician in the process. The decision was made by officials within the correctional department, a department spokesman told *iWatch News*.

In Ohio and Washington state, the three-step execution cocktail has been scrapped altogether in favor of a single, lethal dosage of pentobarbital.

Mike Rushford, president and CEO at the **Criminal Justice Legal Foundation** (http://www.cjlf.org/) , which supports the death penalty, is encouraging states to use this approach. The important thing is not whether states use pentobarbital or sodium thiopental, he said, but to simplify the process so the arguments against lethal injections fall away.

## Regulatory limbo

Just who has the authority to decide whether pentobarbital can or should be used in executions is more than a little murky. Tightly monitoring the use of any drug is nearly impossible. The safety and efficacy of all drugs has to be approved by the FDA, but once pharmaceuticals are approved for any purpose, it is up to physicians to determine to whom and for what reasons they will prescribe them, said **Ed Elder** (http://apps.pharmacy.wisc.edu/sopdir/PersonDetails.cfm?ID=213) , director at Lenor Zeeh Pharmaceutical Experiment Station at the University of Wisconsin-Madison.

The FDA-approved uses for pentobarbital include short-term treatment for insomnia and seizure control for patients with epilepsy. It is not FDA approved to alleviate Reye's syndrome, a disease of the brain and liver, though some physicians have prescribed it for that purpose.

It is also not FDA-approved for use in executions or for the use of anesthesia, but it's not clear the FDA believes that's its business. A spokeswoman declined to comment on the FDA's role in overseeing pentobarbital for the use of executions, but spoke generally of the agency's practices. "FDA has authority to take both administrative and judicial actions to protect the public from dangerous and illegal products, to punish persons and companies who violate the law, and to deter violations," she said.

Elder said drugs for the use of executions may fall outside their oversight definition, and in the past the FDA has publicly taken that stance. "The use of drugs for an indication that doesn't involve making people well is contrary to what the FDA is trying to do with approving drugs," he said.

In 2008, the **Supreme Court upheld** (http://www.law.cornell.edu/supct/html/07-5439.ZS.html) the constitutionality of the three-drug protocol that Kentucky used for lethal injections. The state was using the former drug, sodium thiopental, as its anesthetic. The high court hasn't said anything about pentobarbital, but several federal courts and the Florida Supreme Court have signed off on it.

Rushford from the Criminal Justice Legal Foundation sees the concerns raised about legal injections as merely the latest effort by groups whose mission is to thwart the death penalty. "These are claims by people who wouldn't want to execute any murderer under any circumstances by any means," he said.

# Read more in Health

HEALTH

## HIGH COURT UPHOLDS KEY PART OF OBAMA HEALTH LAW

HEALTH

## SLIDESHOW: LOOKING AT 4 YEARS OF H.E.A.T.

Exhibit Q

☰

Sign In    Subscribe

NATIONAL

# The Hidden Hand Squeezing Texas' Supply of Execution Drugs

After lobbying by human-rights groups, European drug companies are increasingly unwilling to supply U.S. states with lethal medicine

By Josh Sanburn | Aug. 07, 2013

 Read Later

By September, Texas will run out of the sole drug it uses in lethal injections thanks in part to an overseas effort that has persuaded a European pharmaceutical company to halt its supply to U.S. states for use in executions.

The Texas Department of Criminal Justice announced last week that the state's supply of pentobarbital — the sedative used in the lethal injections of its death-row inmates — would expire in September. Pentobarbital has become the most common drug in lethal injections in the U.S. Of the 23 executions this year, 22 of them used pentobarbital by itself or in combination with other drugs.



PAUL BUCK / EPA

The death chamber inside the Huntsville Unit in Huntsville, Texas, seen in 2000

Texas is facing a depleted supply after a Danish drugmaker announced two years ago that it would no longer supply the drug for use in executions, thanks in part to pressure from multiple groups in Europe that have unexpectedly thrown up obstacles to U.S. states carrying out the death penalty.

Email     Print

Share

Follow @TIME

In early 2011, Danish drugmaker Lundbeck, which at that time manufactured pentobarbital (sold under the name Nembutal), discovered that U.S. states were using its product in lethal injections. The complex international distribution networks of pharmaceuticals often make it difficult for manufacturers to know exactly where their products end up. But once pentobarbital's use in U.S. executions came to light, many in Denmark were upset that medicine made in a country that abolished the death penalty decades ago was being used for ending lives rather than saving them.

(MORE: Werner Herzog Dives Into the Abyss of the American Death-Penalty System)

By spring 2011, Danish newspapers were regularly publishing stories about pentobarbital's use as several human-rights organizations, including Amnesty International and U.K.-based Reprieve, issued press releases to highlight each new execution that used drugs made by Lundbeck. In June 2011, Dr. David Nicholl — a neurologist and human-rights activist — wrote an open letter to Ulf Wiinberg, the chief executive of Lundbeck. The letter, signed by more than 60 other doctors and academics urging the company to halt its U.S. supply, was published in the medical journal the Lancet.

"As clinicians and prescribers of Lundbeck's products, we are appalled at the inaction of Lundbeck to prevent the supply of their drug, Nembutal [pentobarbital], for use in executions in the USA," the letter stated. "Pentobarbital is rapidly proving to be the drug of choice for U.S. executions. Lundbeck should restrict distribution of pentobarbital to legitimate users ... but not to executioners."

Three weeks later, Lundbeck said it would no longer allow the drug to be used in U.S. executions and began reviewing all orders of the drug and denying U.S. prisons looking to order it. Now, states like Texas, Georgia and Missouri are grappling with how to continue their planned executions without their go-to drug.

"When I first approached this issue, I thought it would never work," says Nicholl, referring to the decision to apply pressure to drugmakers supplying states carrying out executions. "But our efforts have turned out to be quite

## Most Popular

FROM U.S.

1   Female Generals: The Pentagon's First Pair of Four-Star Women

2   Top 10 U.S. News Stories

3   Chicago Girl Who Performed at Obama's Inauguration Killed in Shooting

4   From Messiah to Hitler, What You Can and Cannot Name Your Child

5   The Outing of the SEALs Has SecDef Ticked Off

FROM TIME.COM

CONNECT WITH TIME



Sign In    Subscribe

To halt its supply, Lundbeck worked with human-rights group Reprieve to simplify its distribution model, essentially taking out middlemen so the company could more easily identify who ended up with its products. Maya Foa, deputy director of Reprieve's death-penalty team, says her organization's goal isn't to end capital punishment in the U.S. but merely to get pharmaceutical companies to follow the Hippocratic oath to do no harm.

"Their reason to be is to make medicine to save lives," Foa says.

The struggle to obtain pentobarbital is the latest in a series of problems that have dogged lethal injection. In 2009, Hospira Inc., a drugmaker headquartered in Lake Forest, Ill., stopped making sodium thiopental, a general anesthetic often used in a three-drug method of lethal injection. That forced many states to look overseas, but both the U.K. and the E.U. blocked their own manufacturers from supplying it to the U.S. for executions.

(**MORE:** Articles of Faith: Is the Death Penalty in Keeping With Catholic Doctrine?)

The obstacles to getting sodium thiopental pushed states to rely even further on pentobarbital — but now it appears that states like Texas will once again have to find another drug to take its place. There are no generic versions of the drug, and the alternatives available have yet to be either tested or used in lethal injections.

John Hurt, the director of public information for the Texas Department of Criminal Justice, says the state is considering finding another supplier of pentobarbital, a different drug altogether or possibly working with a compounding pharmacy that could create the drug specifically for the state's executions. (Texas, which has executed 503 inmates since 1982, more than any other state by far, has two executions scheduled in September, two more in October and one in November.)

It's unclear where Texas would find another supplier. In December 2011, Lundbeck sold the rights to pentobarbital to Illinois-based Akorn Inc. The new company, however, signed an agreement saying it would follow the same distribution restrictions as Lundbeck.

Texas could turn to a compounding pharmacy, but according to the Death Penalty Information Center, those providers don't face oversight from the Food and Drug Administration. That often leads to questions about the drugs' safety and its intended effects of being a more humane alternative of execution.

"Compounding pharmacies are the underbelly of the industry," says Maurie Levin, who has represented death-sentence inmates for 20 years, referring to a sector of the pharmaceutical industry that often goes under the radar of federal and state regulators.

Hurt says the most likely scenario is that Texas will simply find another drug to replace pentobarbital, and he cites Missouri's intention to switch to the general anesthetic propofol, which gained notoriety when an overdose of the drug was blamed for singer Michael Jackson's death. But last year, German drug manufacturer Fresenius Kabi announced last year that it too would no longer sell the drug to states for executions, shifting its distribution with help from Reprieve.

The best hope for states like Texas is that a domestic manufacturer would agree to make drugs like propofol or pentobarbital, far from a continent that has largely done away with the death penalty. But it should be no surprise that pharmaceutical companies aren't racing to distribute drugs that are often associated more with death than life.

**MORE:** A Brief History of Lethal Injection

*Correction: An earlier version of this story stated that Fresenius Kabi is the only supplier of propofol in the U.S. Hospira and Teva Pharmaceuticals restarted manufacturing and selling the drug earlier this year.*

## Sponsored Stories

Recommended by



**Americas #1 Futurist 2020 Prediction Will Surprise You**

Internet Reboot 2020



**Your Response Missing: Are You Voting for Joe Biden?**

share.joebiden.com



**The Early Signs of Psoriatic Arthritis**

Yahoo Search

Sign In     Subscribe



**White House Releases Staff Salaries Report**

The Delite | Scripps

**[Pics] He watched neighbor expand into his yard for years, but he finally got his revenge**

Top5



**45 Weird Small Towns In The United States**

Ranker

© 2020 TIME USA, LLC. All rights reserved.

Exhibit R

Case 1:18-cv-01556-TSC Document 35-4 Filed 06/12/20 Page 153 of 177



REUTERS

HEALTH NEWS

OCTOBER 10, 2013 / 9:57 PM / 7 YEARS AGO

# German firm blocked shipments to U.S. distributor after drug sent for executions

Kevin Murphy



（Reuters）- A German manufacturer confirmed on Thursday that it took the extraordinary step of suspending shipments of a widely used drug to a U.S. distributor this year after 20 vials were mistakenly sent to the state of Missouri to be used in executions.

Drugmaker Fresenius Kabi said shipments of the anesthetic propofol were halted to a Louisiana distributor for 4 1/2 months through mid-March because the company feared the European Union would ban export of the drug altogether if it was used in executions.

"We felt it was important to make sure it was restricted to the healthcare professionals," said Geoffrey Fenton, a U.S. spokesman for the firm.

Propofol, which is mostly made in Europe, is administered about 50 million times a year in the United States during various surgical procedures, according to the manufacturer.

Case 1:18-cv-01556-TSC  Document 35-4  Filed 06/12/20  Page 154 of 177

The Death Penalty Information Center said Missouri had been expected to become the first U.S. state to use the drug in an execution scheduled for October 23.

The death penalty is banned in the European Union, and the 28-country bloc, of which Germany is a part, bans the export of drugs for use in executions.

Fresenius Kabi said it had stopped shipments to Louisiana distributor Morris & Dickson LLC from November 1, 2012 to mid-March, 2013 after the U.S. firm inadvertently sent a carton containing 20 vials to Missouri's department of corrections.

The German company confirmed it had suspended the shipments a day after Missouri announced that it would return the drugs to the distributor. Missouri is taking the unusual step some 11 months after the distributor frantically pleaded for the return of the vials, according to emails recently made public.

A leading death penalty expert, Richard Dieter, executive director of the Death Penalty Information Center, said he had never heard of a drug firm suspending shipments to a distributor over their possible use in U.S. executions.

The move shows how U.S. states and suppliers of drugs are coming under strong pressure from big pharmaceutical companies, especially in Europe, not to use supplies in executions.

The campaign against the death penalty has forced death-penalty states to change the drugs they use in lethal injections, find new supplies of existing drugs, or buy drugs from lightly regulated compounding pharmacies.

The American Civil Liberties Union of Missouri Foundation filed a lawsuit against the Department of Corrections on October 4 in an attempt to obtain information about the state's supply of propofol.

According to one of the documents posted on the ACLU's website the distributor mistakenly sent propofol to the department of corrections on September 26 or 27, 2012.

Case 1:18-cv-01556-TSC Document 35-4 Filed 06/12/20 Page 155 of 177

A salesperson for the distributor spent the "entire day" on November 1 at the state prison in Bonne Terre, Missouri, attempting in vain to retrieve the propofol, according to an email sent to George Lombardi, director of the department of corrections, from Dale Kelley, vice president of purchasing at Morris & Dickson.

In the email, Kelley said Fresenius Kabi had suspended distribution of propofol to Morris & Dickson, a move that would "cause irreparable harm to the medical community which we serve."

The email said the suspension would affect thousands of patients in need of the anesthetic at more than 600 hospitals in the Midwest and southern United States.

"Please - Please - Please HELP ...this system failure - a mistake - 1 carton of 20 vials - is going to affect thousands of Americans," he wrote.

The salesperson was told that approval to give the drug back had to come from Lombardi or Missouri Governor Jay Nixon, according to the email from Kelley to Lombardi.

The suspension did not end up restricting supply of propofol in the United States because Fresenius Kabi delivered the drug directly to hospitals rather to the distributor, Fenton said.

An audit was conducted of Morris & Dickson to ensure the sale of the drug to prisons would not happen again and then supplies to the distributor were resumed, he said.

Fresenius Kabi sells propofol to a total of 14 U.S. distributors, which agree not to sell the drug to jails and prisons, Fenton said.

Missouri state officials did not respond to requests to comment about the incident.

The state had been expected to use propofol for the execution of convicted murderer Allen Nicklasson scheduled for October 23, according to the Death Penalty Information Center.

(This story has been corrected for paragraph 6 to read '28-country' instead of '27-country', and to the company's Reuters Instrument Code)

Additional reporting and writing by Brendan O'Brien; Editing by Greg McCune

*Our Standards:* *The Thomson Reuters Trust Principles.*

**MORE FROM REUTERS**

PAID PROMOTIONAL LINKS      Promoted by **Dianomi**



**This Startup Raised $51M to Help You Retire On Time**

smartasset



**Motley Fool Issues Rare "All In" Buy Alert**

The Motley Fool



**NYU's Executive MBA Program Offers Convenient Classes in D.C.**

NYU Stern Executive MBA



**How to Earn a Fortune (Outside of Stocks)**

Crowdability



**Legend Who Bought Apple at $1.42, Amazon at $48 Says Buy This Now**

Empire Financial Research

6/10/2020
Case 1:18-cv-01556-TSC   Document 35-4   Filed 06/12/20   Page 158 of 177
German firm blocked shipments to U.S. distributor after drug sent for executions | Reuters

**MORE FROM REUTERS**



Exclusive: Canada, U.S. set to extend border closure to end-July -...

09 Jun



California bans private prisons and immigration detention centers

12 Oct



Arizona calls for emergency plan as COVID-19 spikes after reopening

10 Jun



Widespread mask-wearing could prevent COVID-19 second waves: study

10 Jun



North Korean leader's sister emerges as policymaker in spat...

10 Jun

Case 1:18-cv-01556-TSC Document 35-4 Filed 06/12/20 Page 159 of 177

**MORE FROM REUTERS**



U.S. decision to withdraw troops from Germany...

08 Jun



Georgia Democrats vote on Senate challenger as five U.S. states...

09 Jun



Swedish prosecutor names killer of PM Palme, closes 34-year case

10 Jun



Republican 'law and order' appeal prompts U.S....

09 Jun



California, Southwest face new coronavirus woes as U.S. economy...

10 Jun

Apps　　Newsletters　　Advertise with Us　　Advertising Guidelines　　Cookies　　Terms of Use　　Privacy



All quotes delayed a minimum of 15 minutes. See here for a complete list of exchanges and delays.

https://www.reuters.com/article/us-usa-execution-drugs/german-firm-blocked-shipments-to-u-s-distributor-after-drug-sent-for-executions-idUSBRE99…　　9/10

© 2020 Reuters. All Rights Reserved.

Exhibit S

## BuzzFeed News

**POLITICS**

# FBI Documents Don't Back Up Claimed Threat To Execution Drug Supplier

While death penalty states make the case that secrecy laws are needed to protect execution drug suppliers from possible violence, a review of the available information shows evidence for that argument is lacking.

**By Chris McDaniel**
Posted on August 29, 2016, at 10:04 p.m. ET



"Your site says n......ng about pentobarbital. Do you c
Missouri's depart....ent of corrections, as has been pr
this morning, and if so, now that the story has gone p
Seems to me that manufacturing a drug expressly to
those commandments Moses got from Jehovah on S
fashioned. Still, were I you I'd at least want to beef u
put in the spotlight as a likely supplier and failed to is
federal building can tell you, it only takes one fanatic
a real dent in business as usual. In your place, I'd ei
company didn't make execution drugs of ANY sort, a
or else openly accept the burden of putting my emplo
(and possibly uninsurable) risk. Just sayin'."

*BuzzFeed News*

Over the past several years, states have become increasingly secretive about the drugs officials use to execute people.

Despite widespread problems with drugs used in executions, states often claim this secrecy is necessary, and the product of intimidation: Officials say lethal drug suppliers face harassment and even physical threats after the suppliers' identities have been revealed.

But there are few concrete examples to justify the secrecy, a BuzzFeed News review found. And the states' marquee example — in which the FBI allegedly investigated a serious bomb threat sent to a drug supplier — is contradicted by internal FBI documents.

The question of who supplies drugs, and which drugs are used, has dominated discussion about the death penalty over the last several years. Inmates argue that information about who is supplying the drugs could reveal questionable practices or even illegal activity, and that without transparency there can be no oversight. States counter that the information is too dangerous to be made public.

But the real danger to drug suppliers appears to be legal and economic risk, not risk of violence.

Two states appear to have premised the need for this kind of secrecy on an FBI investigation of threats made to one drug supplier. But the states' claims don't hold up to scrutiny.

In early 2014, a man sent an email in his own name to a pharmacy that supplied execution drug that alluded to violence the pharmacy could face.

Later, states claimed that FBI agents investigated the man, believing it was a credible threat, and hired an expert who testified to that effect under oath.

But according to documents obtained by BuzzFeed News, the FBI didn't even hear about the threat until months later, when a reporter

**BuzzFeed News**   **FBI Documents Don't Back Up Claimed Threat To Executio**

called. FBI documents show that the threats were characterized as "not specific" in nature, there was no follow up provided by the the pharmacy, and no further action was taken by the FBI.

---

In the course of fighting lawsuits seeking information about execution drug suppliers, both Texas and Ohio hired the same expert to gauge the risk of threats to those suppliers. The two states turned to Lawrence Cunningham, a former US Secret Service officer who retired in 1994 and now works as a security consultant for a company called Torchstone.

Cunningham admits that he didn't speak to any execution drug suppliers when he was forming his opinions, and based much of his research on social media. Cunningham found evidence of angry emails and protests, but was unable to find any examples of suppliers actually being attacked.

The most damning evidence Cunningham and the two states were able to find was an email sent to a pharmacy in Oklahoma that, at the time, supplied execution drugs to Missouri.

Missouri had been trying to keep the supplier of its execution drugs a secret. But in early 2014, journalists discovered a pharmacy called the Apothecary Shoppe was selling the drugs without a license in Missouri.

A retired college humanities professor living in Ohio read one of the stories, went to the pharmacy's website, clicked on "Contact," and left a comment.

In the comment, Nick Humez wrote:



*"Your site says nothing about pentobarbital. Do you compound it for the state of Missouri's department of corrections, as has been publicly alleged in an AP story that ran this morning, and if so, now that the story has gone public, do you think that is prudent? Seems to me that manufacturing a drug expressly to kill people flies in the face of one of those commandments Moses got from Jehovah on Sinai, but maybe I'm just being old-fashioned. Still, were I you I'd at least want to beef up my security now that you've been put in the spotlight as a likely supplier and failed to issue a flat denial. As the folks at the federal building can tell you, it only takes one fanatic with a truckload of fertilizer to make a real dent in business as usual. In your place, I'd either swear to the nation that my company didn't make execution drugs of ANY sort, and then make dang sure that's true, or else openly accept the burden of putting my employees and myself at unacceptable (and possibly uninsurable) risk. Just sayin'."*

In a court filing, Texas Attorney General Ken Paxton's office wrote, "Needless to say, the email got the authorities' attention. Federal agents questioned Humez about it and his underlying intentions in connection to the" pharmacy.

"The undisputed content of Humez's email, and the extent to which federal and state law enforcement took the email seriously, exceeds what is required to demonstrate a substantial threat of physical harm, as a matter of law," the state asserted.

Humez has claimed in repeated conversations, including with BuzzFeed News, that he didn't intend the email as a threat — pointing out that he included his real name and phone number in the email. Instead, he says he was trying to warn the supplier to be cautious.

In the Ohio and Texas cases, arguing for secrecy, Cunningham said

The contention that law enforcement considered the email credible enough for an investigation is central to the states' argument that this information is too dangerous to be public.

"The fact that they went to interview him based on this email is significant," Cunningham said in the Texas case. "They felt it was serious. They interviewed him.

"I would offer that the FBI considered that serious enough to interview Humez, so they considered that a threat on its surface," Cunningham testified. "They had to investigate it further. They expended resources to go talk to this individual."

In an October 2014 deposition for the Texas case, Cunningham initially claimed knowledge of why the FBI interviewed Humez — specifically noting his reference to the Oklahoma City bombing — and said that the FBI kept a file on the professor after speaking with him.

But an internal FBI report obtained by BuzzFeed News through a Freedom of Information Act request disputes Cunningham's testimony.

According to a May 2014 report, Tulsa's FBI office did not hear about the threat from the pharmacy when it received the email. Instead, the report shows the office only heard about it months later, when an Associated Press reporter called and asked about threats against the pharmacy.

Both the Tulsa Police Department (TPD) and the FBI's Tulsa office wrote in the report that they weren't aware of any threats against the pharmacy. The FBI and a TPD detective then reached out to the pharmacy's employees.

An Apothecary Shoppe employee "stated that immediately following their name being released to the media they received a couple of threatening phone calls and emails but the threats [were] not specific in nature," according to a TPD report.

The FBI provided contact information so the Apothecary Shoppe could provide any copies of threatening emails. But a month later, the FBI wrote in its report that the pharmacy had not forwarded any threats and that "[w]ithout further cooperation from the Apothecary Shoppe the types of threats remain unspecified."

An FBI spokesperson told BuzzFeed News that it has no other reports about threats against the pharmacy. The only evidence in the court record that Humez was interviewed by the FBI is Humez's claim that he was.

Cunningham declined numerous requests for an interview. "At this juncture, I have no comment," Cunningham said, when asked to explain his testimony. Torchstone did not respond to a request for comment.

The Ohio and Texas departments of correction declined to comment, and their attorneys general did not respond to requests for comment.

A year after the Texas testimony, in September 2015 testimony in the Ohio case, Cunningham claimed that the Texas Department of Public Safety interviewed Humez as well.

However, that claim is contradicted by Texas DPS documents and sworn statements of its department head, FBI internal documents, and Cunningham's own testimony in the Texas case.

The head of the Texas DPS, in that earlier case, said his agency "[a]bsolutely [did] not" do any investigation into the matter.

"I did not do any investigations," Colonel Steven McCraw said in a deposition, when asked about the email. "We didn't look at any people. We didn't do anything."

At that time, Cunningham himself also agreed that the Texas law enforcement agency did not interview Humez.

---

Cunningham's testimony in both cases was based more on conclusions he drew from related — or what he determined to be analogous — threats than on specific, concrete examples relating to execution drugs.

In his testimony in the two cases, Cunningham readily admits that he didn't speak to any execution drug suppliers when he was forming his opinions, and based much of his research on social media.

"In this era, as we all know now, social media has become both a blessing and a curse," Cunningham said.

"In the curse side of it, yes, a lot of recruiting can go on. In fact, ISIS and other terrorist organizations are doing a very effective job recruiting children and others to join the cause. It's a very serious

issue. And so a lot of what you find on the internet can be very useful in validating and adding to the leads or the assessment process."

In fact, between the two cases, Cunningham referenced ISIS, al-Qaeda, or the September 11th attacks a total of 28 times in his testimony.

At one point, Cunningham claimed that his company checked Humez out in a database. When asked what database they used, he clarifies that they had Googled him.

Cunningham also testified that he believed that the anti-death penalty movement is similar to the anti-abortion movement, or movements for animal and environmental rights.

"I would consider, for example, the abortion movement relevant," he said. "This is a relatively new focus compared to the history of the abortion issue. If you look at the abortion issue and trace its history, there's an ocean of examples showing violence, bombings, and killings. It's created an outrage and they've acted on it. Animal rights groups have done the same thing."

"So the point is, these things are in a similar vein. They have to do with life and right to life. And they're obviously divisive, they create a lot of angst and in some cases people act on these things and become very obsessed and attack."

The National Abortion Federation keeps data on incidents of violence against abortion providers, detailing more than 7,000 incidents since 1977. Regarding execution drug providers, on the other hand, Cunningham was unable to find any examples.

Cunningham testified that "it would be nice to have a direct threat" that he could point to, but said that "just because I'm not aware of it doesn't mean it doesn't exist."

In what could stand in as a summary of his analysis, Cunningham later said, "In my mind, in my view it's very important to [be proactive] to identify the threat before it finds you."

For example, Cunningham identified threats in many places. At one point, he said Christians boycotting the abortion pill was "an aggressive act" and financial terrorism.

 **BuzzFeed.News**   FBI Documents Don't Back Up Claimed Threat To Executio

"Your grandmother. Your sister. My mother. My first grade teacher if she was still alive. All these people we're finding have propensity for violence. If they're involved in [boycotts and protests], I don't just offhandedly say, well, that's just one — one little protest, this is America, they're allowed to be protesting, they're allowed to sit down and be arrested. Environmental — environmental protests do it all the time," Cunningham said. "But in the context of what we're talking about here, I feel like it adds more to the argument" that execution drug suppliers should be secret.

At another point, Cunningham pointed to a list of news stories that he believed supported his opinion that the drug supplier information should be kept secret. One of the news stories detailed a love triangle murder that had been featured on *Dateline*. In that case, a plastic surgeon hired a man to kill another doctor because the doctor was dating his ex-girlfriend.

Cunningham argued the case showed violence in the medical community. The lawyer deposing him — fighting the secrecy — was skeptical.

"This seems far fetched and crazy," attorney Philip Durst said. He then read from Cunningham's notes. "'David Shepard murdered Dr. Joseph Sonnier in Lubbock, Texas. Shepard was hired to commit the crime by a plastic surgeon angry about a love triangle.' You're the paid expert for the state," he continued. Of Cunningham's conclusion that the story is relevant to the question of execution drug secrecy, Durst asked: "Tell me why you think that is not crazy."

"I wouldn't call it crazy, but it speaks to violence," Cunningham responded. "It speaks to violence in the medical arena. This is important."

 FBI Documents Don't Back Up Claimed Threat To Executio

Cunningham wasn't the first expert that Texas turned to in the case. The state earlier had the head of the Department of Public Safety, Col. McCraw, perform a threat assessment. McCraw said he spent "a couple of hours at the most" looking at emails sent to drug suppliers, and concluded there was the potential for serious threats.

In a deposition, McCraw said that the head of the Texas Department of Criminal Justice requested specific language be used — that he say there was a "substantial threat" of harm to the pharmacies if they were made public.

McCraw testified that the request did not bother him and that he was not asked to conclude anything he did not believe.

As the case progressed, however, Texas also retained Cunningham's services to do his external threat assessment.

A year later, he gave a similar assessment for Ohio, concluding, "I believe it's reasonable to withhold the identities of those people."

Threats "have to be taken seriously," he explained. "When you look at all these factors in total I believe it's very important to protect their identities until this firestorm dies down, if you will, or is reconciled. But right now this is a volatile area and these people are vulnerable based on my experience and my assessment of all the factors I've looked at in this case."

In the two cases where Cunningham testified, state officials received mixed results.

A federal judge in the Ohio case found Cunningham's testimony "perhaps more persuasive" than the expert hired by death row inmates, ultimately deciding that information about execution drug suppliers could be kept secret. The inmates have appealed the ruling.

Much of the Ohio case took place behind closed doors, and most of the filings, including Cunningham's testimony, were originally sealed. Later, at the request of death row inmates, the judge unsealed the testimony — enabling this BuzzFeed News review to proceed.

In the Texas case, the state lost but has has appealed the decision. In a May hearing, Texas' 3rd Court of Appeals appeared skeptical of the state's position.

"Where do we draw the line... without blowing a hole in the (Public Information Act) big enough to drive a truck through anytime the government says, 'Well, gee, this can cause harm?'" asked one of the justices.

"It is not as if there's a known assailant out there who says any compounding pharmacy will be attacked. It's not that specific," another justice remarked.

The appeals court has yet to make a ruling in the case.

---

It's not just Ohio and Texas arguing that threats necessitate increased secrecy regarding execution drugs. Around the country, other states are arguing the same thing.

Mississippi recently approved a new law, written by Attorney General Jim Hood's office, that made execution drug suppliers confidential.

The state lawmaker who championed the bill said Hood's office warned that there had been threats and harassing phone calls to executioners.

But in a court case, when forced to identify all known threats, harassment, or harm from supplying execution drugs, Hood's office

"The pharmacy that supplied [the Mississippi Department of Corrections] with pentobarbital in May 2012 and its owners were harmed when they were forced to incur significant legal expenses in order to respond to a document subpoena served on them by [death row inmates'] counsel. Further, they were harmed when the pharmacy was identified as a supplier of lethal injection drugs in court papers and media reports and disparaged as an herbal remedy shop."

Evidence provided by multiple states shows that the biggest threats drug suppliers have faced are legal and economic ones, not violent ones.

In the Ohio case, the judge, U.S. District Court Judge Gregory Frost, ruled that capital attorneys were not allowed to know the name of the supplier — even if the attorneys agreed it was for their eyes only.

"Part of the harassment, harm, or similar undesirable consequences implicitly animating the protective order decision is that disclosure of identities subjects the disclosed persons or entities to suit," Frost wrote. "A reasonable inference … is that the entities … do not want to subject themselves to such litigation."

In 2013, a pharmacy that supplied Texas with execution drugs complained to the state about a "firestorm" after its identity was revealed. The pharmacy received calls from media, angry emails, negative reviews on Google, and protests. The pharmacy demanded Texas return the drugs, but the state did not comply.

In February 2014 in Missouri, Attorney General Chris Koster's office complained to a judge that a death row inmate wrote a "threatening letter" to a pharmacy that sold execution drugs to the state.

But the "threatening letter" was a letter that said the attorney would sue the Apothecary Shoppe if it sold drugs to the state.

The pharmacy was sued by that Missouri death row inmate, Michael Taylor, in February 2014. The pharmacy, still trying to keep its identity under wraps, filed some of its arguments under seal. The lawsuit lasted less than a month, and the pharmacy settled out of court, agreeing to not sell execution drugs to the state.

Its troubles didn't end there. The pharmacy faced significant economic troubles since then. When the Apothecary Shoppe was inspected by Oklahoma regulators, more than a thousand pharmaceutical violations were found — leading to its pharmacy license being put on probation.

The company subsequently defaulted on loans in November 2015. Months ago, the pharmacy sold off its assets to another pharmacy business in Oklahoma.

**Read the FBI report:**

Download PDF





Chris McDaniel is an investigative reporter for BuzzFeed News and is based in New York. His secure PGP fingerprint is C90B B2EF E872 EF22 4EDA DABB 50E6 F2BE 1164 FCAF

Contact Chris McDaniel at chris.mcdaniel@buzzfeed.com.

Got a confidential tip? Submit it here.