**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BUZZFEED INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 18-cv-1556 (TSC) |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANTS'
SUMMARY JUDGMENT MOTION AND IN SUPPORT OF PLAINTIFF'S CROSS-
MOTION**

The Supreme Court has made very clear that the FOIA statute must be interpreted in accordance with its plain meaning.  Ignoring that command, Defendants ask this Court to expansively read the provisions of Exemption 7 in a manner that goes well beyond the statutory text and lacks support in FOIA case law: an execution is not the kind of law enforcement purpose that qualifies for Exemption 7 at all;  Exemption 7(A) does not apply after conviction where there is no prospect of a new trial; Exemption 7(E) applies only to "investigations and prosecutions"; and neither "interference" nor "circumvention" under either exemption apply to the legal acts of participants in a free-market, democratic society on which Defendants rely for their exemption theory.  Nonetheless, except to the extent they implicate straw buyers or violations of FDA regulations, *see* ECF 34-5 at Ex. B, Plaintiff does not object to withholding of "the identity of individuals supplying or potentially supplying lethal injection substances to the federal government"; the "identity of BOP staff involved in procurement of lethal injection substances"; and the "identity of third-party individuals who have not consented to release of their personal information & who are involved in some aspect of lethal injection substance."

As to Exemption 4, Plaintiff does not object to Defendants' withholdings except for the names and descriptions of the substances at issue, prices, delivery dates, and expiration dates.  To the extent the purchases were made or contemplated to be made through straw buyers or suppliers not authorized by the FDA, Plaintiff also seeks supplier names or at least information sufficient to show that a straw buyer or unauthorized seller was involved.  Defendants have failed to show how this information, divorced from the names of any legitimate individual suppliers, qualifies for protection under Exemption 4 or would result in foreseeable harm if released.  As to Exemption 5, Defendants have failed to satisfy the strict requirements of the foreseeable harm standard.  Rather, they rely on the same kind of generic, boilerplate assertions that courts of this District and others have repeatedly rejected, and also have improperly failed to segregate and produce factual information.

## I.  DEFENDANTS HAVE NOT PROVEN THAT THEY CONDUCTED AN ADEQUATE SEARCH

Defendants' search for records suffers from a clear deficiency: the selection of keywords does not include the names of any other drugs considered by BOP or purchased for lethal injection.  ECF No. 35-1 at 11; *see, e.g.,* Death Penalty Information Center, Overview of Lethal Injection Protocols, *available at* https://deathpenaltyinfo.org/executions/lethal-injection/overview-of-lethal-injection-protocols (listing drugs used in various jurisdictions).  As another judge in this district has held, FOIA is not a game of Battleship, a requester is not required to know every keyword or include them in a request, and an agency must liberally construe the request in developing any keywords.  *Gov't Accountability Project v. DHS*, 335 F. Supp. 3d 7, 9 (D.D.C. 2018).  That is because an agency "must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents."  *Id.* at 10; *see also, e.g., Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007).  Defendants have failed to do so here, so the Court should

order Defendants to conduct a supplemental search using additional drug names as keywords.

## II.      EXEMPTION 7

### A.     Defendants Have Not Established That the Records Meet the Exemption 7 Threshold Requirement

For any category listed in Exemption 7 to be protected, the government must first satisfy the threshold requirement that the records be "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7); *see also Pub. Employees for Env't Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 202-03 (D.C. Cir. 2014) ("*PEER*"). To meet this burden, the agency must establish, among other things, "a connection between an individual or incident and a possible security risk or violation of federal law." *See Cawthon v. DOJ*, No. CIV.A.05-0567(RMU), 2006 WL 581250, at *4 (D.D.C. Mar. 9, 2006) (citing and quoting *Campbell v. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1998)). While non-investigatory records can sometimes qualify, courts have generally done so when the records involve "proactive steps designed to prevent criminal activity and to maintain security." *Elec. Privacy Info. Ctr. v. DHS*, 777 F.3d 518, 522-23 (D.C. Cir. 2015) (quotation and citation omitted). This includes items "akin to 'guidelines, techniques, and procedures for law enforcement investigations and prosecutions outside of the context of a specific investigation.'" *Reporters Comm. for Freedom of Press v. FBI*, 369 F. Supp. 3d 212, 220 (D.D.C. 2019) (quoting *Tax Analysts v. IRS*, 294 F.3d 71, 78 (D.C. Cir. 2002)). This review is "deferential" but "not vacuous." *Pratt v. Webster*, 673 F.2d 408, 421 (D.C. Cir. 1982).

As Defendants admit, no case law has ever held that records about executions were compiled for law enforcement purposes for the purposes of Exemption 7. ECF No. 35-1 at 15. While Defendants cite to various cases in support of their expansive interpretation of this statutory requirement, these cases all share a common trait that is absent here: the information was related

to specific efforts to prevent specific categories of crimes and keeping the information secret would inhibit the ability to commit those crimes or avoid detection. *EPIC*, 777 F.3d 523 (process to decide whether and when to disrupt wireless networks during critical emergencies to "effectively deter the triggering of radio-activated improvised explosive devices"); *PEER*, 740 F.3d 204 (emergency action plans and inundation maps created to prevent attacks on two dams on the U.S.-Mexico border); *Sack v. DOD*, 823 F.3d 687, 694 (D.C. Cir. 2016) (reports about polygraph testing to assist the government in taking proactive steps to prevent avoidance measures). Nor have Defendants here "connect[ed] a particular individual or incident to a potential violation of law." *Benavides v. Bureau of Prisons*, 774 F. Supp. 2d 141, 147 (D.D.C. 2011). Instead, they point to generalized principles of "deterrence," ignoring that the cases discussed above involved a direct nexus to crime prevention that is lacking here, then provide no plausible explanation as to how particular drugs or chemicals or execution protocol would have any more or less deterrent effect.

Moreover, as Defendants note, there has been a long history of death penalty litigation involving the federal government, and "Justice Alito's recounting of the effects of anti-death penalty advocates pressure on pharmaceutical companies" occurred five years ago. ECF No. 35-1 at 20. If Congress wants records about lethal injection drugs to be kept secret, it can pass legislation to so, as many other states have done. Ariz. Rev. Stat. Ann. § 13-757 (2009); Ark. Code Ann. § 5-4-617 (2019); Fla. Stat. § 945.10 (2017); Ga. Code Ann. § 42-5-36 (2017); Idaho Admin. Code r. 06.01.01.135 (2019); Ind. Code Ann. § 35-38-6-1 (2018); Kan. Stat. Ann. § 22-4001; Ky. Rev. Stat. § 45A.720; La. Stat. Ann. § 15:570; Miss. Code. Ann. § 99-19-51 (2017); Mo. Ann. Stat. § 546.720 (2007); Mont. Code Ann. § 46-19-103; Neb. Rev. Stat. Ann. § 83-967 (2009); Ohio Rev. Code Ann. § 2949.221 (2015); Okla. Stat. Ann. tit. 22, § 1015; S.C. Code Ann. § 24-3-580 (2010); S.D. Codified Laws § 23A-27A-31.2; Tenn. Code Ann. § 10-7-504 (2020); Tex. Crim.

Proc. Code Ann. art. 43.14 (2015); Va. Code. Ann. §53.1-234 (2020); Wyo. Code § 7-13-916 (2015); *see, e.g., Bostock v. Clayton Cty., Georgia,* 140 S. Ct. 1731, 1754 (2020) (Alito, J., dissenting) ("There is only one word for what the Court has done today: legislation. The document that the Court releases is in the form of a judicial opinion interpreting a statute, but that is deceptive. . . . A more brazen abuse of our authority to interpret statutes is hard to recall.").

Because an execution does not meet the test for "law enforcement purposes," Defendants' Exemption 7 claims fail.

### B.   Defendants Have Not Proven That Disclosure Could Reasonably Be Expected To Interfere With Law Enforcement Proceedings Under Exemption 7(A)

Even if these records were compiled for law enforcement purposes, however, Defendants must prove one of the specific Exemption 7 provisions.  Under Exemption 7(A), Defendants argue that releasing this information (1) will force the government to fend off "creative" claims by people facing execution, and (2) will result in public pressure that will persuade companies to stop supplying lethal injection drugs and chemicals to the government.  ECF No. 35-1 at 17-24. Defendants do not point to any direct way in which an execution could be interfered with if this information was released, nor could they, and cite no law endorsing a theory of interference under Exemption 7(A) that is based on speculative claims about what particular participants in a free-market, democratic system will do using information obtained under FOIA.  Nor do they cite any authority equating "interference" with the annoyance with which the government apparently views use of the judicial process by people facing death to ensure that Constitutional rights are protected. ECF No. 35-1 at 17 (referring to death penalty litigation as "a unique and rare beast" comprised of "creative claims" that would "bar[1] or delay the timely enforcement of a capital sentence").

---

[1] It is impossible to reconcile Defendants' claim—that releasing information that might reveal that the government's execution protocol should be legally "bar[red]" warrants keeping the information secret—with either FOIA's purpose or the limitations placed on our government under our

Defendants' argument shows a stunning disdain for our cornerstone democratic institutions, through which people are free to use their voices and their dollars to support or oppose companies with whose actions they disagree; companies are free, indeed encouraged, to respond to market demands; and the Freedom of Information Act allows the public to monitor its government and hold it accountable, including with regard to its commercial transactions. *E.g. Abrams v. United States,* 250 U.S. 616, 630 (1919) ("the ultimate good desired is better reached by free trade in ideas" and "the best test of truth is the power of the thought to get itself accepted in the competition of the market"); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 355, 130 S. Ct. 876, 907 (2010) ("Factions should be checked by permitting them all to speak . . . and by entrusting the people to judge what is true and what is false."); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 501 (1996) ("Our commercial speech cases have recognized the dangers that attend governmental attempts to single out certain messages for suppression."); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc*., 425 U.S. 748, 765 (1976) ("So long as we preserve a predominantly free enterprise economy, the allocation of our resources in large measure will be made through numerous private economic decisions. It is a matter of public interest that those decisions, in the aggregate, be intelligent and well informed.").[2]  If the federal

---

Constitution.  Ensuring that the government obeys the Constitution is not "circumvention," but accountability, which is the very purpose of FOIA.

[2] Indeed, the President himself has acknowledged this by participating in exactly such activities. Dan Cancian, Newsweek, Everything Trump Has Said About Kneeling So Far, June 8, 2020, *available at* https://www.newsweek.com/everything-donald-trump-said-nfl-anthem-protests-1509333 (quoting President as saying "Wouldn't you love to see one of these NFL owners, when somebody disrespects our flag, to say, 'Get that son of a b**** off the field right now. Out! He's fired. He's fired.'" and noting subsequent Tweet claiming that protests have negatively impacted the NFL's TV ratings); Adam Edelman, NBC News, Trump Says NFL Players Who Kneel During National Anthem 'Maybe Shouldn't Be In The Country', May 24, 2018, *available at* https://www.nbcnews.com/politics/donald-trump/trump-says-nfl-players-who-kneel-during-national-anthem-maybe-n876996 (quoting President as saying "You have to stand proudly for the

government is paying exorbitant prices to purchase lethal injection drugs, or ignoring expiration dates, or engaged in dubious efforts to obtain these drugs, or violating Constitutional requirements, the public has every right to know about it and demand accountability. *See Elec. Privacy Info. Ctr. v. DOJ*, No. CV 19-810 (RBW), 2020 WL 1060633, at *9 (D.D.C. Mar. 5, 2020) ("The FOIA's policy of broad disclosure of government documents not only gives citizens access to the information on the basis of which government agencies make their decisions, thereby equipping the populace to evaluate and criticize those decisions, but also ensures an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed[.]" (internal quotation and citation omitted)); ECF 34-5 at Ex. B ("Some states have used straw buyers or tried to import drugs from abroad that are not approved by the Food and Drug Administration[.]").

In any event, Defendants acknowledge that the government has historically treated the applicability of Exemption 7(A) as ending with a conviction anyway. ECF No. 35-1 at 17-18; *see also Moorefield v. U.S. Secret Serv.*, 611 F.2d 1021, 1025 (5th Cir. 1980) (holding same). Defendants do not dispute that this would categorically preclude their assertion of Exemption 7(A). Yet the only authority Defendants cite to press on anyway is a District Court case applying Exemption 7(A) to *habeas* proceedings challenging the merits of a conviction, where release of the requested records could be expected to interfere with the new trial that would result if the challenge was successful. *Id.* (*citing Sarno v. DOJ,* 278 F. Supp. 3d 112, 125-126 (D.D.C. 2017)). Here Defendants offer no reasoning, let alone evidence, that releasing information about lethal injection drugs could in any way interfere with any legal proceedings challenging a conviction or

national anthem, or you shouldn't be playing, you shouldn't be there. Maybe you shouldn't be in the country.").

could result in another trial with which release of lethal injection information could interfere. Thus, Defendants have failed to satisfy Exemption 7(A) for this reason too.

### C.       Defendants Have Not Proven Their Exemption 7(E) Claims

The plain text of Exemption 7(E) only applies to techniques, procedures, and guidelines "for law enforcement investigations or prosecutions."  5 U.S.C. § 552(b)(7)(E).  Unlike Exemption 7(A), this exemption does not apply to "proceedings" generally, but only "investigations" and "prosecutions."  Therefore, even if an execution qualifies as a proceeding, which Plaintiff disputes, it clearly is neither an investigation nor a prosecution, and therefore, under the plain text of the statute, Exemption 7(E) cannot apply.  *See Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) (rejecting "casual disregard of the rules of statutory interpretation" that had modified plain text of Exemption 4 because "[i]n statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself"); *Bostock v. Clayton Cty., Georgia,* 140 S. Ct. 1731, 1749 (2020) ("This Court has explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end. The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration."); *Peter S. Herrick's Customs & Int'l Trade Newsletter v. Customs & Border Prot*., No. CIV.A. 04-00377 (JDB), 2006 WL 1826185, at *8 (D.D.C. June 30, 2006) ("It cannot seriously be contended, then, that information concerning the destruction of seized property—which occurs after the seizure and investigation of the property is complete, and only after it is determined that the property will not be used as evidence—relates to a law enforcement investigation or prosecution."); *Cowsen-El v. DOJ*, 826 F. Supp. 532, 534 (D.D.C. 1992) ("Nor can it be said that the BOP understands the harm that must be established under subsection (E). By its express terms, it authorizes the withholding of information consisting of, or reflecting, a law enforcement 'technique' or a law enforcement

'procedure' if it is 'for law enforcement investigations and prosecutions,' not internal agency policies wholly unrelated to investigations or prosecutions. It is well-established that FOIA's statutory exemptions are to be narrowly construed. [citation]  No reason has been advanced by the BOP to ignore this guiding principle in this case and the court declines to do so.").

Similarly, the exemption does not apply to all records the release of which could result in circumvention, but only "techniques," "procedures," and "guidelines."  5 U.S.C. § 552(b)(7)(E). Defendants have not shown that these emails qualify as such, which is the only permissible approach following the *Argus Leader* decision.  And to the extent current Circuit law, untested under *Argus Leader*, permits a departure from the plain text of the statute, Defendants must still show that these emails are functionally equivalent to techniques, procedures, and guidelines, which they have not.  *See Gilman v. DHS*, 32 F. Supp. 3d 1, 20 (D.D.C. 2014) ("Accordingly, while the emails in question do not reveal formal guidelines, CBP has demonstrated that the information contained in the emails could be used in the same manner as a 'technique, procedure, or guideline.'").

Even if Defendants prevailed on these legal questions, however, they must still prove that disclosure could "risk circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).  Defendants cite no law equating possible future decisions by manufacturers to stop selling a product to the government in perfectly legal response to perfectly legal public pressure as any kind of "circumvention."  Nor have they shown that there are no other ways for the government to manufacture or obtain these materials or otherwise carry out executions, as necessary for an execution to be "circumvented."  But, again, the Court need not even resolve this question because Defendants ignore the plain text of the statute.

**D.    Neither Exemption 7(C) Nor Exemption 6 Apply to Straw Buyers or FDA Violations**

Plaintiff generally does not challenge withholding of names or personal information of individual employees of the government or suppliers. But Defendants' own exhibit shows that states have resorted to straw purchases and importations that violate FDA regulations in pursuit of their own executions. ECF 34-5 at Ex. B. To the extent the federal government has done the same in response to the same supply issues, the public interest in disclosure outweighs any privacy interest. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004).

### III.        EXEMPTION 4

Plaintiff challenges the withholding of the following information under Exemption 4 based on Defendants' failure to prove foreseeable harm under the 2016 FOIA amendments: dates of purchases or potential purchases; substance descriptions; price; and expiration dates. *See e.g. Ctr. for Investigative Reporting v. U.S. Customs & Border Prot*., 436 F. Supp. 3d 90, 113 (D.D.C. 2019) (applying foreseeable harm requirement under Exemption 4). Here, the harm on which Defendants rely—which they do not even expressly indicate as directed to the foreseeable harm requirement—is entirely and exclusively premised on the public identifying these companies that apparently are willing to take a still undisclosed amount of public money to supply lethal injection drugs, but only if they do not have to face scrutiny for that decision publicly. ECF. No. 35-1 at 36.

Defendants fail to prove, as they must, that these pieces of information could be used to identify any of these companies, without which their theory of harm collapses. Indeed, Defendants make only a single conclusory statement to that effect, claiming, without any plausible explanation or any specifics, that "individuals could compare dates, times, or the manner in which a substance was packaged or sold to heightened email activity, or activity reported in accordance with government reporting requirements, within a certain timeframe to determine, or least narrow down, companies who were manufacturing or otherwise supplying lethal injection substances to BOP." ECF No. 35-4 at ¶ 67. This is plainly inadequate to meet the government's burden of proof. *See*

*e.g. Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 110-111.  As a result, the Court should reject Defendants' Exemption 4 claim as to this information.

Finally, to the extent Defendants attempted to use or actually did use straw buyers or unauthorized sellers, *see* ECF 34-5 at Ex. B, Defendants have not shown any legitimate foreseeable harm from release of those company names, or at least general information showing that a straw buyer or unauthorized seller was involved.

## IV.      EXEMPTION 5

Plaintiff challenges the withholding of Records 1, 19, 33, 45, 57, 58, 135, and 137, which, as to Exemption 5, are withheld solely based on deliberative process. Record 1 is described as an "email record between BOP staff forwarding a drug list provided by a source provider in order to complete a transaction"; Records 19, 33, and 45 are described as "email between BOP staff including purchase information based on information provided by a source provider"; Records 57 and 58 are described as "email between BOP staff discussing purchasing quantity based on information provided by a source provider"; and Records 135 and 137 are described as "email discussing availability of potential lethal injection substances and equipment with regard to a proposed protocol under consideration."  ECF 35-4 at Ex. F.

While Plaintiff does not dispute that discussions about this information could potentially qualify as a deliberative process, Defendants have also used the exemption to withhold "information provided by a source provider," and have not shown that this factual information cannot be segregated from any opinions expressed about that information, while the simultaneous assertion of Exemption 4 over this information (with the exception of Records 135 and 137) shows that it can.  And more broadly, the declaration on which Defendants rely is far too generic to meet Defendants' burden.  ECF No. 35-1 at 45 (citing Christianson Decl., ECF No. 35-4, at ¶ 100 as evidence of non-segregability); ECF No. 35-4 at ¶ 100 ("While every effort was made to release

all segregable information, *see supra* ¶¶ 38 & 50, BOP withheld the entirety of those records in which exempt information was inextricably intertwined with non-exempt information."); *id.* at ¶ 38 ("I processed all records responsive to Mr. McDaniel's [sic] request to achieve maximum disclosure consistent with the access provisions of the FOIA and the FOIA statutory exemptions. Every effort was made to provide Mr. McDaniel [sic] with all reasonably segregable nonexempt information in the responsive records. The following email records were released in part to Mr. McDaniel [sic]: Record Nos. 153 and 154. Exempt information was redacted from the records, as described herein and in Ex. F, the Vaughn Index."); *id.* at ¶ 50 ("I processed all records responsive to Mr. McDaniel's [sic] request to achieve maximum disclosure consistent with the access provisions of the FOIA and the FOIA statutory exemptions. Every effort was made to provide Mr. McDaniel [sic] with all reasonably segregable nonexempt information in the responsive records. The following non-email records were released in part to Mr. McDaniel [sic]: Record Nos. 155, 156, and 158. Exempt information was redacted from the records, as described herein and in the Vaughn Index."); *see e.g. Ctr. for Pub. Integrity v. Dep't of Commerce,* 401 F. Supp. 3d 108, 118 (D.D.C. 2019) (conclusory claims  that "no additional information can be released without jeopardizing information that falls within the scope of one or more FOIA exemptions" insufficient to satisfy segregability requirement); *ACLU v. FBI*, 429 F. Supp. 2d 179, 193 (D.D.C. 2006) (ordering factual information in emails to be segregated from exempt deliberations and produced).

Further, Defendants have failed to prove any Exemption 5 foreseeable harm.  Under the 2016 amendments to the FOIA statute, even if a record would otherwise be exempt, it cannot be withheld unless there is (1) a legal prohibition against release, or (2) "the agency reasonably foresees that disclosure would harm an interest protected by an exemption[.]"  5 U.S.C. § 552(a)(8)(A)(i).  In passing these amendments, "Congress sought to establish a 'presumption of

openness' in FOIA." *Rosenberg v. Dep't of Def.*, 342 F. Supp. 3d 62, 72–73 (D.D.C. 2018).  This was "based on the recognition that 'from the beginning, agencies have taken advantage of these exemptions to withhold any information that might technically fit.'" *Judicial Watch, Inc. v. Dep't of Commerce*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019) (quoting 162 Cong. Rec. H3714-01, H3717162 (2016) and noting that although some agencies "have made an effort to comply with the letter of the law, very few have complied with the spirit of the law"). To satisfy this heightened requirement, the agency must "articulate both the nature of the harm and the link between the specified harm and specific information contained in the material withheld." *Judicial Watch*, 375 F. Supp. 3d at 100 (quoting H.R. Rep. No. 114-391, at 9 (2016)). "Boilerplate" language is insufficient. *Id.*  Similarly, the Senate Report for the bill explains that "mere speculative or abstract fears . . . are an insufficient basis for withholding information." S. Rep. No. 114–4, at 8 (2015).

Defendants offer no evidence at all to meet this requirement, let alone evidence that is specifically directed to these records and these deliberations.  For this additional reason, Defendants' Exemption 5 claim should be rejected and Records 1, 19, 33, 45, 57, 58, 135, and 137 should be ordered produced.

## V.      DOCUMENT DATES SHOULD NOT BE WITHHELD

Finally, Defendants have not produced the dates and times of the records they have withheld, and have cited no exemption that would apply to them or any way in which the release of dates or times would allow the public to ascertain any exempt material.  Therefore, the Court should order Defendants to produce the dates and times from all of the records they have withheld, even if any content of the records is exempt. *Ctr. for Pub. Integrity v. Dep't of Commerce*, 401 F. Supp. 3d 108, 121 (D.D.C. 2019) ("The Court therefore concludes that Defendants must disclose the header information in the disputed documents—dates, names of senders and recipients, titles, and subject-matter descriptions—that is segregable and non-exempt."); *see also Citizens for*

- 13 -

*Responsibility & Ethics in Washington v. DOJ*, 955 F. Supp. 2d 4, 20 (D.D.C. 2013) (requiring

"dates of creation" to be divulged to assess validity of Exemption 5 claim); *Ctr. for Biological*

*Diversity v. EPA*, 279 F. Supp. 3d 121, 144 (D.D.C. 2017) (dates are typically included in *Vaughn*

index); *Hussain v. DHS*, 674 F. Supp. 2d 260, 267 (D.D.C. 2009) (same).

## VI.        CONCLUSION

For these reasons, the Court should grant summary judgment for Plaintiff and deny

summary judgment to Defendants.  For information that Plaintiff has elected not to challenge,

without conceding that Defendants proved their claims, Defendants' motion should be denied as

moot.  Defendants should also be ordered to conduct a supplemental search.


RESPECTFULLY SUBMITTED,

/s/ *Matthew V. Topic*

_____

Attorneys for Plaintiff


Matthew Topic
Joshua Burday
Merrick Wayne
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312-243-5900
foia@loevy.com
DC Bar No. IL0037

**<u>CERTIFICATE OF SERVICE</u>**

I, Matthew Topic, an attorney, hereby certify that on July 28, 2020, I caused the foregoing to be served on all counsel of record via the Court's CM/ECF system.

*<u>/s/ Matthew V. Topic</u>*