**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BUZZFEED INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 18-cv-1556 (TSC) |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.   **BOP IGNORES THE SCOPE OF WHAT IS STILL AT ISSUE AND FAILS TO SHOW THAT RELEASING THAT INFORMATION WILL IDENTIFY ANY SUPPLIERS** ............................................................................1

II.  **BOP HAS STILL NOT SATISFIED EXEMPTION 7'S THRESHHOLD REQUIREMENT** ................................................................................5

III. **BOP'S EXPANSIVE THEORY OF "INTERFERENCE" UNDER EXEMPTION 7(A) IS UNFOUNDED** .......................................................7

IV.  **THE PLAIN STATUTORY TEXT—NOT BOP'S POLICY ARGUMENTS— GOVERN AND DEFEAT BOP'S EXEMPTION 7(E) CLAIM** ...................8

V.   **BOP HAS STILL FAILED TO PROVE FORESEEABLE HARM ON ITS EXEMPTION 4 AND 5 CLAIMS** ........................................................10

VI.  **THE GOVERNMENT CONCEDES THAT DATES ARE NOT EXEMPT YET REFUSES TO PRODUCE REDACTED COPIES OF THE RELEVANT RECORDS** ........................................................................................11

VII. **BOP HAS STILL NOT PROVEN AN ADEQUATE SEARCH** .................12

VIII. **CONCLUSION** ..................................................................................12

# TABLE OF AUTHORITIES

***Cases***

*Anderson v. BOP*, 806 F. Supp. 2d 121 (D.D.C. 2011) ...................................................5

*Bigwood v. Department of Defense*, 132 F. Supp. 3d 124 (D.D.C. 2015) .......................9

*Campbell v. DOJ*, 164 F.3d 20 (D.C. Cir. 1998) ...........................................................5

*Center for Investigative Reporting v. U.S. Customs & Border Protection*,
436 F. Supp. 3d 90 (D.D.C. 2019) ................................................................................10

*CNA Financial Corp. v. Donovan*, 830 F.2d 1132 (D.C. Cir. 1987) ............................10

*Ctr. for Nat. Sec. Studies v. DOJ,* 331 F.3d 918 (D.C. Cir. 2003) ................................10

*Elec. Privacy Info. Ctr. v. DHS*, 777 F.3d 518 (D.C. Cir. 2015) ....................................5

*Food Marketing Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019) ....................8, 10

*Griffin v. EOUSA*, 774 F. Supp. 2d 322 (D.D.C. 2011) ..................................................5

*Karantsalis v. DOJ*, 635 F.3d 497 (11th Cir. 2011) ......................................................5

*King v. DOJ*, 830 F.2d 210 (D.C. Cir. 1987) ..................................................................2

*Matter of Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-MC-145 (TSC),
2020 WL 5061668 (D.D.C. Aug. 27, 2020) ....................................................................1

*Mayer Brown LLP v. IRS*, 562 F.3d 1190 (D.C. Cir. 2009) ...........................................9

*McGehee v. CIA*, 697 F.2d 1095 (D.C. Cir. 1983) .........................................................6

*Milner v. Dep't of Navy,* 562 U.S. 562 (2011)................................................................8

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) ...........................................................12

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004)................................6

*Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978)........6, 8

*Pratt v. Webster*, 673 F.2d 408 (D.C. Cir. 1982).......................................................3, 4

*Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n,*
*U.S.-Mexico*, 740 F.3d 195 (D.C. Cir. 2014) .................................................................................9

*Smith v. United States*.  No. 1:18-CV-00777 (TSC), 2019 WL 4860823 (D.D.C.
Sept. 30, 2019) .................................................................................................................................9

*U.S. Dep't of the Air Force v. Rose*, 425 U.S. 352 (1976) ..............................................................6

*Wash. Post Co. v. U.S. Dep't of Health & Human Servs*., 690 F.2d 252 (D.C. Cir. 1982) ............6

***Other Authorities***

Fed. R. Civ. P. 56(c)(4) ...................................................................................................................4

Fed. R. Civ. P. 56(e)(3) ...................................................................................................................4

Defendant BOP's response brief is heavy on mischaracterizations and policy arguments in its effort to deny the public information about what lethal injection drugs the government bought at what expense to taxpayers.  As this Court recently held, BOP violated "any basic notion of fairness" by attempting to conduct an execution despite its "failure to abide by its own statutory obligations" under the Food, Drug, and Cosmetic Act.  *Matter of Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-MC-145 (TSC), 2020 WL 5061668, at *7 (D.D.C. Aug. 27, 2020).  Here BOP asks this Court to ignore the plain text of the Freedom of Information Act, and binding Supreme Court precedent about how it must be interpreted, in service of unprecedented claims to secrecy over BOP's efforts to obtain lethal injection drugs.  The Court should reject them and order the release of this information.

## I.     BOP IGNORES THE SCOPE OF WHAT IS STILL AT ISSUE AND FAILS TO SHOW THAT RELEASING THAT INFORMATION WILL IDENTIFY ANY SUPPLIERS

Strewn around BOP's brief are various claims that Plaintiff has "conceded" some of BOP's exemption claims, along with efforts to piggyback these purported concessions to support other arguments.  ECF No. 40 at 1, 3, 13.  Plaintiff conceded nothing.  As Plaintiff's brief makes clear, Plaintiff has simply elected not to challenge certain things.  ECF No. 37 at 1-2 ("Plaintiff does not object to" certain withholdings); *id.* at 14 ("For information that Plaintiff has elected not to challenge, without conceding that Defendants proved their claims, Defendants' motion should be denied as moot.").  As a result of Plaintiff's reasonable efforts to narrow the scope of this case, here is what is now at issue: (1) the names and descriptions of the substances, prices, delivery dates, and expiration dates, which are withheld under Exemptions 4 and 7(A); (2) internal discussions withheld as deliberative process under Exemption 5; and (3) alleged "techniques" for obtaining execution drugs withheld under Exemption 7(E).

Despite this case being limited to these discrete categories of information, BOP spends the vast majority of its 25-page brief arguing about the harms that would supposedly result if the suppliers of execution drugs were revealed.  But Plaintiff did not challenge the withholding of such names unless they demonstrate straw buyers or unauthorized sellers, which BOP has now said under oath, for the first time in its reply brief, that it has not used, at least not during the "relevant time period."  ECF No. 40-1 at ¶ 3.  Thus, BOP argues against a straw man.

But wait, BOP cries: an enterprising person could figure out who the companies are.  A look at the specifics reveals that BOP has established no such thing.  It claims that "individuals could compare dates, times, or the manner in which a substance was packaged or sold to heightened email activity, or activity reported in accordance with government reporting requirements, within a certain timeframe to determine, or at least narrow down the identity of suppliers," and now, for the first time in its reply, that suppliers can be identified by (1) comparing "dates of purchases or potential purchases" with "reporting logs or databases maintained by the Drug Enforcement Agency" to "narrow down or identify suppliers"; and (2) examining "the manner in which [a particular substance] is produced, packaged, or sold, or the shelf-life of a particular substance (expiration date)" where "a particular company is known or discovered to package or price a substance in a particular way."  ECF No. 39 at 19-20.  These claims are thoroughly inadequate.

First, they are simply too vague to show that this ill-defined sleuthing would work.  "In all FOIA cases, the district courts are to review *de novo* all exemption claims advanced," and "the agency bears the burden of justifying its decision to withhold requested information."  *King v. DOJ*, 830 F.2d 210, 217 (D.C. Cir. 1987).  Even in the more deferential context of Exemption 1, an agency must "describe . . . the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the

exemption claimed." *Id.* (collecting cases).  An agency's explanation and proof must be "full and specific enough to afford the FOIA requester a meaningful opportunity to contest." *Id.*; *see also, e.g.*, *Pratt v. Webster*, 673 F.2d 408, 421 (D.C. Cir. 1982) (court's review is not "vacuous").  BOP has fallen well short.

Next, while BOP obscured this from its brief, its affiant placed a significant limitation on these claims: "Certain information is required to be reported to the DEA, and ***some*** of its databases and logs are publicly available, or can be obtained through other means, such as unrelated FOIA requests or discovery."  ECF No. 40-2 at ¶ 5 (emphasis added).  BOP does not explain the extent to which this "certain information" is in fact publicly available, and it admits that not all of it is. It does not explain how discovery could be used to identify any suppliers, or who could issue such discovery, or why a protective order in such a case would not protect any legitimate concerns about release of that information.

Further, BOP admits in its brief that to some unexplained extent, the list would only be "narrowed down."  And it continues to rely on this mysterious "heightened email activity" but still fails to explain what that even means, let alone whose emails and how this heightened activity could be observed.

The little specifics BOP actually offers are that the allegedly essential pieces of information are purchase dates, manner of packaging, and expiration date.  ECF No. 39 at 20.  Plaintiff does not seek "manner of packaging," and at most, BOP's claim would allow for purchase dates and expiration dates to be withheld, with the substance name and pricing information—the most important information for public oversight into BOP's use of taxpayer funds—subject to disclosure.  And while BOP claims that a supplier could be identified "if a particular company is known or discovered to package or price a substance in a particular way," it does not even attempt

to prove that this "if" has any basis in reality, and thus, is rank speculation that the Court should and must ignore.

That just leaves BOP's reliance on a news article that "purportedly identified three independent laboratories involved in testing compounded pentobarbital to be used for federal executions." ECF No. 39 at 9. BOP's affidavit "presume[es]" that the identification was made through "the process of comparison and elimination" based on review of publicly filed laboratory reports in which company names had been redacted by the Justice Department. ECF No. 40-2 at ¶ 7. But presumptions are not evidence. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Nor has BOP established, even if its admitted presumption was correct, that the process for identifying manufacturers is the same as the process for identifying testing companies, or that the laboratory reports that were "presumably" used to identify these testing companies are comparable to the vague sources of information BOP claims to be sufficient to identify manufacturers. The news article does not explain how it identified any testing companies, all of them "*confirmed* that they had produced the test results," and one explained that it had been duped into conducting the testing. ECF No. 40-2 at Ex. B-1 (emphasis added). Only a vacuous review could find this sufficient to justify BOP's secrecy claims. *Pratt*, 673 F.2d at 421.

Finally, the Court should not give BOP yet another bite at the apple after providing two sets of affidavits. Under Rule 56(e), when "a party fails to properly support an assertion of fact," the court is permitted to grant summary judgment against the offending party. Fed. R. Civ. P. 56(e)(3). Allowing BOP another round of summary judgment briefing with another round of affidavits, as some courts in this District have done in various FOIA cases, would simply

encourage agencies to violate basic notions of fairness by allowing them months of additional delay through inadequate affidavits, knowing that, at worst, they will get yet another chance later while enjoying secrecy in the meantime, often until after a news story has blown over.

## II.    BOP HAS STILL NOT SATISFIED EXEMPTION 7'S THRESHHOLD REQUIREMENT

As the D.C. Circuit has held, and as BOP has not disputed, Exemption 7 requires the government to establish "a connection between an individual or incident and a possible security risk or violation of federal law," or at least "proactive steps designed to prevent criminal activity and to maintain security." *See* ECF No. 37 at 3; *Campbell v. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1998); *Elec. Privacy Info. Ctr. v. DHS*, 777 F.3d 518, 522-23 (D.C. Cir. 2015).  Yet despite the statutory presumption of access to agency records, despite bearing the burden of proving its exemption claims, and despite the well-established rule that exemptions must be narrowly construed, BOP offers no argument or evidence showing that the death penalty is a proactive step designed to "prevent" criminal activity (as opposed to allegedly deterring it, and then only quite indirectly).  It cites no case law applying Exemption 7 to death penalty records like this, and ignores that states that wanted this information secret have done so through statutes addressing this information specifically, as Congress is free to do if it has the votes.

Further, the cases BOP cites as applying Exemption 7 to "non-investigatory records" involved mug shots; an investigation into an incident that might warrant an inmate transfer to prevent future violence; and records related to federal arrest warrants, the investigation of fugitives, and the transport and maintenance of federal prisoners. *Karantsalis v. DOJ*, 635 F.3d 497, 502 (11th Cir. 2011); *Anderson v. BOP*, 806 F. Supp. 2d 121, 126-27 (D.D.C. 2011); *Griffin v. EOUSA*, 774 F. Supp. 2d 322, 325 (D.D.C. 2011)).  None are comparable to the facts of this case, and to accept BOP's expansive argument would make Exemption 7 effectively limitless

whenever the defendant is a law enforcement agency because it takes little creativity to draw some connection between ***any*** law enforcement activity and crime deterrence.  For example, records that would reveal misconduct, incompetence, or corruption by law enforcement agents might reduce "deterrence" by making the agency appear less likely to solve crimes, secure convictions,  or resist bribery or blackmail.   The resulting invitation for mischief from BOP's limitless scope of Exemption 7 cannot be reconciled with a statutory regime that is premised on the importance of transparency to ensuring good government.  *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co*., 437 U.S. 214, 224 (1978) (FOIA intended to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed"); *Wash. Post Co. v. U.S. Dep't of Health & Human Servs*., 690 F.2d 252, 264 (D.C. Cir. 1982) (Congress passed FOIA for concern over the "[i]nnumerable times that agencies had withheld information under prior law only to cover up embarrassing mistakes or irregularities" and its purpose "is to permit the public to decide for itself whether government action is proper") (internal quotation marks omitted)); *see also U.S. Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny" (internal quotation marks omitted); *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-172 (2004) (FOIA is intended to provide "a means for citizens to know what their government is up to" and its promise of transparency "should not be dismissed as a convenient formalism"; it "defines a structural necessity in a real democracy"); *McGehee v. CIA*, 697 F.2d 1095, 1108-09 (D.C. Cir. 1983) (FOIA "give[s] citizens access to the information on the basis of which government agencies make their decisions, thereby equipping the populace to evaluate and criticize those decisions").

As this makes clear, it is BOP, not Plaintiff, who resorts to policy arguments—and ones that conflict with FOIA's purpose. *See* ECF No. 40 at 8. They should be directed to Congress, not this Court.

**III.     BOP'S EXPANSIVE THEORY OF "INTERFERENCE" UNDER EXEMPTION 7(A) IS UNFOUNDED**

Because BOP's theory of "interference" is premised on its faulty claim that revealing the limited pieces of information still at issue would identify execution drug suppliers, *see* Section I above, the Court need not go any further. Should the Court elect to do so, however, BOP cites no case law or other authority applying Exemption 7(A) to the theory BOP puts forth in this case. Instead, BOP simply distorts Plaintiff's arguments.

First, Plaintiff did not argue that Exemption 7(A) requires "direct evidence" of interference that has actually occurred. ECF No. 40 at 9. Rather, Plaintiff argued that "Defendants do not point to any direct ***way*** in which an execution could be interfered with if this information was released[.]" ECF No. 37 at 5 (emphasis added). And Plaintiff was and is correct: BOP's claim is based on the theory that legal, market-based actions that third parties may take if the public learns the truth of their involvement in supplying drugs for executions is "interference" with a law enforcement proceeding. But that claim expands "interference" into something boundless and that is inconsistent with FOIA and First Amendment principles, with no evidence that Congress intended any such absurd result.

Next, BOP claims that "Plaintiff further argues hyperbolically that Defendants are seeking to distort FOIA's exemptions to avoid 'releasing information that might reveal the government's execution protocol.' Opp'n at 5 n.1. That is false." ECF No. 40 at 12. The only thing that is false is BOP's purported quote of Plaintiff's brief: what Plaintiff actually said was that BOP was attempting to keep secret "information that might reveal ***that*** the government's execution protocol

*should be legally 'bar[red]'*." ECF No. 37 at 5 n.1 (emphasis on language omitted from BOP's purported quote of Plaintiff's brief). For example, expiration dates would show whether BOP is using expired drugs. To be sure, this Court has already found that BOP violated the FDCA in connection with obtaining execution drugs, and the public has every right to examine and determine for itself what other questionable conduct BOP may have engaged in with regard to execution drugs. These are not policy arguments: they are the very essence of the Freedom of Information Act. *E.g.*, *Nat'l Labor Relations Bd.*, 437 U.S. at 224; *see* Section II (collecting cases). But, again, BOP's entire argument is built on a false premise of supplier identification anyway and can be rejected on that basis alone.

## IV.     THE PLAIN STATUTORY TEXT—NOT BOP'S POLICY ARGUMENTS—GOVERN AND DEFEAT BOP'S EXEMPTION 7(E) CLAIM

As Justice Kagan famously noted, "We are all textualists now." Harvard Law School, The Antonin Scalia Lecture Series: A Dialogue with Justice Elena Kagan on the Reading of Statutes, YouTube (Nov. 25, 2015). Not surprisingly, therefore, the Supreme Court has repeatedly held that FOIA must be interpreted consistent with its plain language. *Food Marketing Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019); *Milner v. Dep't of Navy,* 562 U.S. 562, 569 (2011).

In this case, however, using the same kind of reasoning that the Supreme Court rejected in *Argus Leader*, BOP argues that the Court should reject the "hyper-technical interpretation of Exemption 7(E)" on which Plaintiff relies. ECF No. 40 at 14. But there is nothing "hyper-technical" about it at all: despite using the broad term "proceedings" elsewhere in the statutory exemptions related to law enforcement, for Exemption 7(E), Congress used the phrase "investigations or prosecutions." BOP concedes that an execution is not an investigation or a prosecution, and therefore, under the plain text of the statute, Exemption 7(E) does not apply. BOP points to nothing in *Argus Leader* limiting its plain-text mandate to Exemption 4, and phrases like

"[w]e cannot approve such a casual disregard of the rules of statutory interpretation" are hardly limited to that specific exemption.  *Id.* at 2364; *see also Milner,* 562 U.S. at 569.

The D.C. Circuit case law on which BOP nonetheless relies does not help its case, and if anything, helps Plaintiff.  In *PEER*, the D.C. Circuit did not ignore "investigations or prosecutions" as BOP attempts to do here; it specifically addressed this provision, holding that the documents "describe how law enforcement personnel might investigate the cause of a dam failure. And because such investigations may constitute 'law enforcement investigations' when there is suspicion of criminal sabotage or terrorism, we conclude that the emergency action plans contain guidelines 'for law enforcement investigations or prosecutions.'"  *Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 205 (D.C. Cir. 2014).  Perhaps the court was stretching to reach this conclusion, but it unequivocally treated "investigations or prosecutions" as a meaningful part of the analysis.  It most certainly did not ignore it as "hyper-technical" as BOP asks this Court to do.

BOP also makes much of the supposedly broad scope of Exemption 7(E) described in *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009).  But that decision addressed the scope of the open-ended "could reasonably be expected to risk circumvention" provision, not the narrow and specific phrase "investigations or prosecutions."  *Id.*  In fact, in doing so, the D.C. Circuit held that in "matters of statutory construction" . . . wait for it . . . "the text is our primary guide."  *Id.*  That is precisely the guide that BOP asks this Court to ignore in an effort to withhold records that the plain text of the statute does not permit.  Similarly, the "investigations or prosecutions" requirement was not even before this Court in *Smith v. United States*.  No. 1:18-CV-00777 (TSC), 2019 WL 4860823, at *7 (D.D.C. Sept. 30, 2019).  And *Bigwood v. Department of Defense* addressed "law enforcement purposes," not "investigations or prosecutions."   132 F.

Supp. 3d 124, 152 (D.D.C. 2015) (*citing Ctr. for Nat. Sec. Studies v. DOJ,* 331 F.3d 918, 926 (D.C. Cir. 2003) (applying Exemption 7(E) to records about a "terrorism **investigation**" (emphasis added))).  These cases do nothing to aid BOP in its anti-text argument.

Because the plain text of "investigations or prosecutions" does not apply here, BOP's Exemption 7(E) claim must be rejected.  Plaintiff stands on its opening brief for its remaining Exemption 7(E) arguments.

### V.      BOP HAS STILL FAILED TO PROVE FORESEEABLE HARM ON ITS EXEMPTION 4 AND 5 CLAIMS

BOP argues that the foreseeable harm requirement does not apply to Exemption 4 because, solely as a result of the Trade Secrets Act, it is not an exemption "under which discretionary disclosures can be made."  ECF No. 40 at 18-19.  But the D.C. Circuit held the opposite in *CNA Financial Corp. v. Donovan*: "an agency possesses **discretion** to control the applicability of the Trade Secrets Act." 830 F.2d 1132, 1129 (D.C. Cir. 1987).  Thus, "the Trade Secrets Act does not, by virtue of Exemption 3, erect a disclosure bar that is impervious to the mandate of FOIA," but instead reflects "a congressional judgment that private commercial and financial information should not be revealed by agencies that gather it, absent a conscious choice in favor of disclosure by someone with power to impart the force of law to that decision."  *Id.* at 1141.

Further, BOP contends only that the TSA prohibits unauthorized disclosure of "most" information falling within Exemption 4, and fails to establish that the information at issue here—which does not disclose the identity of any supplier—falls within "most."  ECF No. 40 at 19.  And, despite bearing the burden of establishing its exemption claims, BOP does not even attempt to reconcile the cases on which it relies with the later-decided *Argus Leader* decision that fundamentally changed the requirements of Exemption 4 by eliminating a central component: that publication would result in competitive harm.  Finally, BOP argues that *Center for Investigative*

- 10 -

*Reporting v. U.S. Customs & Border Protection*, which found that the foreseeable harm requirement applies to Exemption 4, "failed to recognize" the argument BOP makes here. ECF No. 40 at 19.  But the reason for that alleged "failure" is that the government did not even make the argument, despite it being as allegedly obvious as it now claims.  436 F. Supp. 3d 90 (D.D.C. 2019).

Because the foreseeable harm provision applies, BOP must satisfy it with a heightened, specific showing.  *See* ECF No. 37 at 10-11.  But as explained above in Section I, BOP's cornerstone claim about supplier identification does not meet its burden under regular FOIA principles, let alone the heightened requirements of the foreseeable harm standard.

BOP's Exemption 5 foreseeable harm claims fare no better.  There is no dispute that the provision applies to Exemption 5.  BOP offers no new affidavits on this point to cure the deficiencies identified in Plaintiff's opening brief.  *See* ECF No. 40 at 23-24.  Instead, it simply repeats its generic claims about inhibiting the "free and frank exchange of ideas" relying on pre-2016 cases.  *Id.*  For the reasons Plaintiff explained in its opening brief, those claims do not meet the foreseeable harm standard, and it would relegate the amendment to an empty formality to allow exactly the same generic claims that were the impetus for the amendment also to satisfy it.

Finally, as to segregability, the Court need look no further the BOP's *Vaughn* index to reject BOP's claim, which easily separates various categories of discreet information like supplier names, priced, etc.  ECF No. 45-4 at Ex. F.

## VI.   THE GOVERNMENT CONCEDES THAT DATES ARE NOT EXEMPT YET REFUSES TO PRODUCE REDACTED COPIES OF THE RELEVANT RECORDS

BOP contends that information that is properly contained on a *Vaughn* index can nonetheless be withheld from the underlying documents.  That makes no sense: BOP has conceded, and common sense dictates, that dates can be readily segregated from the rest of the information

- 11 -

on these records (especially emails) without committing "significant time and resources."  ECF
No. 39 at 25.  As such, BOP should produce redacted copies of the few-dozen records at issue with
dates unredacted.  BOP cites no law treating document dates as "disjointed word, phrases, or even
sentences," and they clearly are much more than that.  *Id.*

## VII.        BOP HAS STILL NOT PROVEN AN ADEQUATE SEARCH

BOP does not dispute that it bears the burden of proving a reasonable search and cannot
limit the keywords it selects by ignoring terms that are reasonably likely to uncover responsive
records.  As explained in Plaintiff's opening brief, BOP has included the names of drugs that it has
used for executions but not others that have been used at the state level and which one would
expect an agency in BOP's position to have at least consider as it searched for a way to resume
executions.  ECF No. 37 at 2.

In response, BOP simply confirms that Plaintiff is correct: BOP did not search for any of
these other drug names, like Fentanyl, which Nebraska used in 2018 to carry out an execution.
Death Penalty Information Center, Overview of Lethal Injection Protocols, *available at*
https://deathpenaltyinfo.org/executions/lethal-injection/overview-of-lethal-injection-protocols;
*see* ECF No. 40 at 5 (*citing* ECF No. 35-4 at ¶ 25 and ECF No. 40-2 at ¶ 2).  Therefore, Plaintiff's
argument is far from speculative: BOP has not shown "beyond material doubt" that its search was
reasonable in the first place. *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007).

## VIII.        CONCLUSION

For these reasons, the Court should grant summary judgment for Plaintiff and against
Defendant.  For the information Plaintiff elected not to challenge, the Court should deny both
parties' motions as moot.

RESPECTFULLY SUBMITTED,

/s/ *Matthew V. Topic*

_____

Attorneys for Plaintiff

Matthew Topic
Joshua Burday
Merrick Wayne
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312-243-5900
foia@loevy.com
DC Bar No. IL0037

## CERTIFICATE OF SERVICE

I, Matthew Topic, an attorney, hereby certify that on September 25, 2020, I caused the foregoing to be served on all counsel of record via the Court's CM/ECF system.

*/s/ Matthew V. Topic*