UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BUZZFEED, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 18-cv-1556 (TSC) |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | ) |
| Defendants. | ) |

MEMORANDUM OPINION

Plaintiff BuzzFeed, Inc. has sued the United States Department of Justice ("DOJ") and the Federal Bureau of Prisons ("BOP") (collectively, "the Government") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). BuzzFeed seeks to compel production of certain documents related to BOP's acquisition and use of lethal injection drugs, and the Government has withheld all responsive documents pursuant to various FOIA exemptions. Before the court are the parties' respective motions for summary judgment: Defs' Motion, ECF No. 35 and Pl's Motion, ECF No. 36. For the reasons explained below, both parties' motions will be GRANTED in part and DENIED in part.

I. BACKGROUND[1]

A. Submission and Referral of Plaintiff's FOIA Request

---

[1] "Plaintiff does not dispute, for the purposes of summary judgment, Defendants' statement of facts," except as to certain legal conclusions regarding whether (i) "withheld information is 'identifying' if company names are redacted," (ii) that certain records contain "no segregable factual information," and (iii) "release of information with company names redacted would reveal who the companies are." Pl's Statement of Material Facts, ECF No. 36-2.

On August 25, 2015, BuzzFeed reporter Christopher McDaniel submitted a FOIA request to DOJ requesting that BOP provide all records related to the Government's use of lethal injection drugs. *See* Decl. of Kara Christenson ¶ 12, ECF No. 35-4. McDaniel sought the following records, from the prior two years:

> 1. Emails pertaining to an effort to obtain lethal injection chemicals;
>
> 2. Emails pertaining to an attempt to select a drug for use in lethal injections;
>
> 3. Emails in which sodium thiopental, midazolam, pentobarbital were discussed;
>
> 4. All records indicating the federal government's current inventory of execution drugs;
>
> 5. All records indicating the source of all execution drugs in the federal government's current inventory;
>
> 6. All records indicating the person or persons that authorized the purchase(s) of all execution drugs in the federal government's current inventory;
>
> 7. All email messages between the Department and any supplier or potential supplier of execution drugs;
>
> 8. All email messages between the Department and the Bureau of Prisons regarding execution drugs.

*Id*. ¶ 12. The request was referred to BOP which determined that all responsive documents should be withheld in full under FOIA exemptions 5, 6, 7(A), 7(C), 7(E) and 7(F). *Id*. ¶¶ 13, 15. On May 10, 2017, BOP informed McDaniel of its release determination and advised him of his right to appeal to the Office of Information and Policy ("OIP"). *Id*. ¶ 16. On July 7, 2017, McDaniel filed an appeal with OIP, and on September 19, 2017, OIP agreed with BOP's determination and concluded that the information was properly withheld pursuant to Exemption 7(A). *Id*. ¶¶ 17–18.

**B.     BOP's Search and Processing of Records**

BOP uses a Novell GroupWise email system for internal and external staff email communication, and GroupWise emails are archived by the Netmail Email Archive System

("Netmail") which saves emails in a SML file format. *See id.* ¶ 22. Typically, emails are retained for seven years, and emails flagged as trash are retained for forty-five-days. *Id.*

BOP used key words from McDaniel's FOIA request and identified staff who were involved in "obtaining, selecting, or purchasing lethal injection substances" during the relevant time frame, including staff at the North Central Regional Office who oversee the United States Penitentiary located in Terre Haute, Indiana ("USP Terre Haute"), where federal executions are performed. ECF No. 35-2 at 4 (citing ECF No. 35-4 ¶ 25). BOP then conducted an email search of eight custodians (current and retired employees), from August 25, 2013 through August 25, 2015, using the search terms: "lethal injection," "execute," "execution," "thiopental," "midazolam," and "pentobarbital." ECF No. 35-4 ¶¶ 12 n.3, 26. It found that 154 of the records located were responsive and seventy-five were duplicative. *Id.* ¶ 36.

In addition, BOP conducted a search for responsive non-email records. It determined that during the relevant time, lethal injection substances

> would have been purchased by USP Terre Haute, and stored in locked space at that facility, to which only specific staff would have had access. Documents reflecting the inventory or purchase of such substances during the relevant time frame would have been maintained in a locked filing cabinet located at USP Terre Haute, to which only specified staff had access. Additionally, pursuant to BOP policy, any purchasing documents generated during the relevant time frame would have been forwarded for budgeting purposes to the Financial Management Department at NCRO, and would have been maintained in a locked filing cabinet to which only specified staff had access.

ECF No. 35-2 at 5 (citing ECF No. 35-4 ¶¶ 41–42). Accordingly, BOP staff at USP Terre Haute and the NCRO Financial Management Department searched for non-email records and found eleven responsive non-duplicative records. ECF No. 35-4 ¶¶ 46–47.

Since BuzzFeed filed this case on June 29, 2018, the parties have narrowed their dispute; Plaintiffs no longer challenge the Government's non-disclosure of certain documents—withheld pursuant to Exemptions 6, 7(c), 7(f), and attorney-client and attorney work product privileges

under Exemption 5—and the Government is no longer relying on Exemption 7(A). *See* Pl's Reply, ECF No. 41 at 1; Defs' Notice, ECF No. 43 at 1.

## II. LEGAL STANDARD

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)). It requires federal agencies to comply with requests for records unless such "information is exempted under [one of nine] clearly delineated statutory [exemptions]." *Id.* (citation omitted); *see also* 5 U.S.C. §§ 552(a)–(b). "The agency bears the burden of justifying the application of any exemptions, 'which are exclusive and must be narrowly construed.'" *Ctr. for Investigative Reporting v. U.S Dep't of the Interior*, No. 18-cv-1599, 2020 WL 1695175, at * 3 (Apr. 7, 2020) (quoting *Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015)).

Summary judgment in FOIA cases may be based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and nonconclusory." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted). These declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id*. (internal quotation marks and citation omitted). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).

In FOIA litigation, as in all civil cases, summary judgment is appropriate only when the pleadings and declarations demonstrate that there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c).  In reviewing a motion for summary judgment under FOIA, the court must view the facts in the light most favorable to the requester.  *See Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  But unlike most other litigation, the "burden is on the [defendant] agency to sustain its action"—not the plaintiff challenging the defendant's compliance with FOIA.  5 U.S.C. § 552(a)(4)(B); *see Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  Nonetheless, "[t]o successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld . . . records."  *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

An agency's decision to "withhold or disclose information under FOIA are reviewed de novo."  *Jud. Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 256 (D.D.C. 2004).

### III.   ANALYSIS

At this stage of the litigation, the only asserted exemptions that Plaintiff still challenges are "(1) the names and descriptions of the substances, prices, delivery dates, and expiration dates, which are withheld under Exemptions 4 and 7(A); (2) internal discussions withheld as deliberative process under Exemption 5; and (3) alleged 'techniques' for obtaining execution drugs withheld under Exemption 7(E)."  Pl's Reply, ECF No. 41 at 1.  Given that Plaintiffs no longer challenge the Government's invocation of Exemptions 6, 7(c), 7(f), and attorney-client and attorney work product privileges under Exemption 5, the court finds the Government's motion for summary judgment moot as to those exemptions.  *See Almaqrami v. Pompeo*, 933 F.3d 774, 779 (D.C. Cir. 2019) ("A lawsuit becomes moot—and is therefore no longer a 'Case'

or 'Controversy'—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'"(citation omitted)).  Accordingly, the court will analyze only the remaining disputed exemptions: Exemptions 4, 5, and 7(E).

A.   **Adequacy of BOP's Search**

An "agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested, which it can do by submitting a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Shapiro v. United States Dep't of Just.*, 40 F.4th 609, 612–13 (D.C. Cir.), *cert. denied sub nom. Shapiro v. Dep't of Just.*, 143 S. Ct. 526 (2022) (cleaned up).  "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  *SafeCard Servs., Inc.*, 926 F.2d at 1200 (citation omitted).

BuzzFeed argues that BOP's search for responsive documents was inadequate because "the selection of keywords does not include the names of any other drugs considered by BOP or purchased for lethal injection," and therefore "the Court should order [the Government] to conduct a supplemental search using additional drug names as keywords."  Pl's Combined Mot. and Opp'n., ECF No. 36-1 at 2–3.

BuzzFeed does not suggest what these additional keywords should be, however, nor does it cite any evidence that BOP considered the use of any "additional drugs" as part of its lethal injection protocol.  Moreover, BuzzFeed does not argue that BOP's search efforts were made in bad faith or that Christenson's declaration is not reasonably detailed.

Consequently, BuzzFeed's argument that BOP's search was inadequate is "purely speculative." *SafeCard Servs. Inc.*, 926 F.2d 1197 at 1200. The court will not order a supplemental search and will deny BuzzFeed's motion regarding the adequacy of BOP's search.

**B.      Exemption 7(E) — Law Enforcement Techniques and Procedures**

Agency "records or information compiled for law enforcement purposes" are protected from disclosure to the extent that release "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Satisfying the exemption is a 'relatively low bar' in this Circuit," *Bigwood v. United States Dep't of Def.*, 132 F. Supp. 3d 124, 152 (D.D.C. 2015) (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)), but here, the Government has not met that bar.

The Government "has applied Exemption 7(E) here to withhold information describing the guidelines, techniques and procedures used to obtain lethal injection substances in Record Nos. 1-128, 130-37, 152, and 155-59.8." ECF No. 35-1 at 30 (citing ECF No. 35-4 ¶ 130). BuzzFeed argues that the Government has not demonstrated that the withheld records were (i) "compiled for law enforcement purposes," ECF No. 36-1 at 3, (ii) their release would disclose techniques and procedures for law enforcement investigations or prosecutions, *id.* at 8, and (iii) disclosure would "risk circumvention of the law." *Id.* at 9.

In *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, ("*CREW I*"), plaintiff sought release of all BOP records pertaining to certain drugs it believed might have been used in the federal government's lethal injection protocol, including pentobarbital, from February 14, 2019, through August 8, 2019. 567 F. Supp. 3d 204, 208 (D.D.C. 2021), *rev'd on other grounds. Citizens for Resp. & Ethics in Washington*, 58 F.4th 1255. BOP "invoked Exemption 7(E) 'to

withhold information describing the guidelines, techniques and procedures used to obtain Pentobarbital.'" *Id*. at 215. The court held that the records were compiled for law enforcement purposes because "[t]he effectuation of the death penalty is unquestionably a punishment for violating the law." *Id*. at 215. It also held that although the withheld records were plainly "techniques and procedures," BOP had not demonstrated that the techniques and procedures had anything "to do with 'law enforcement investigations or prosecutions,'" and therefore the information was improperly withheld under exemption under 7(E). *Id*. at 215–17.

As a threshold matter, this court agrees that BOP's administration of the death penalty is a punishment for violating the law. *See Mittleman v. Office of Personnel Mgmt.*, 76 F.3d 1240, 1243 (D.C. Cir. 1996) (per curiam) ("enforcement of the law fairly includes . . . the detection and punishment of violations of law" (internal quotations and citations omitted)).

But the Government's argument, that the meaning of "investigations or prosecutions" in this Circuit is so capacious as to include the procurement and use of lethal injections, is unpersuasive. The Government does not claim disclosure would affect an investigation or a prosecution. At most, it argues that "there is a clear logical nexus between BOP's efforts to obtain lethal injection drugs and the implementation of a legitimate, lawfully-imposed capital sentence." Defs' Combined Opp'n and Reply, ECF No. 39 at 15. While that statement is correct, it reveals nothing about the asserted connection to law enforcement investigations or prosecutions. As the court explained in *CREW I*, "[a]n investigation is an inquiry to discern a truth about the world," *CREW I*, 567 F. Supp. 3d at 215, and "the most natural meaning of prosecution is a kind of court proceeding." *Id*. at 216 (citing six dictionaries). Because the Government has made no new arguments on this issue, here too the court finds "that what [BOP]

does in this context is neither an investigation nor a prosecution," *id*. at 216, and the Government has not demonstrated that Exemption 7(E) covers the withheld documents.

Consequently, the Government's motion for summary judgment as to Exemption 7(E) will be denied, and BuzzFeed's motion will be granted.

C.	**Exemption 4 — Confidential Commercial or Financial Information**

Exemption 4 protects "[t]rade secrets and commercial or financial information obtained from a person [that is] . . . privileged or confidential." 5 U.S.C. § 552(b)(4). "When an agency withholds non-trade-secret information under Exemption 4, it must demonstrate that the withheld information is '(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential.'" *Citizens for Resp. & Ethics in Washington v. United States Dep't of Just.* ("*CREW II*"), 58 F.4th 1255, 1262 (D.C. Cir. 2023) (quoting *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983)). The term "commercial or financial" "reaches . . . broadly and applies (among other situations) when the provider of the information has a commercial interest in the information submitted to the agency." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006). "Commercial or financial" information is considered "confidential" under Exemption 4 "whenever it is customarily kept private, or at least closely held, by the person imparting it." *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356, 2363 (2019).

The Government applied Exemption 4 to "all information that could lead to the identity of individuals and/or companies supplying or potentially supplying lethal injection substances to the federal government. This information includes names (both personal and company names), account numbers, phone numbers, addresses, DEA & Tax ID numbers, dates of potential or actual sales of lethal injection substance(s), and substance descriptions, including

item/stock/UPC numbers, price, quantity, and packaging details, all of which could be used to identify the suppliers and/or potential suppliers of lethal injection substances." ECF No. 35-1 at 35–36 (citing ECF No. 35-4 ¶¶ 58-59 & Ex. F).  It also applied the exemption to "expiration dates for substance(s) manufactured and/or held for sale, pricing strategies, unique business models, and purchasing requirements utilized by the commercial entity supplying the information." *Id*. at 36.  The Government contends that courts have "routinely found" this type of information "to be commercial in nature." *Id*. at 36 (citing *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 117 F. Supp. 3d 46, 62 (D.D.C. 2015) and *Gellman v. Dep't of Homeland Sec.*, No. 16-CV-635 (CRC), 2020 WL 1323896, at *10 (D.D.C. Mar. 20, 2020)).  And it claims that the confidentiality of the information is evidenced by "express assurances" it provided to "suppliers/potential suppliers" to keep "their identities and contact information" "confidential" because disclosure "could subject such individuals and/or companies to harm to their competitive business interests." *Id*. at 36–37 (citing Rick Winter Decl. ¶ 21, ECF No. 35-4).

Recently, in *CREW II*—an appeal of the court's opinion in *CREW I*—the D.C. Circuit considered whether BOP could properly assert Exemption 4 to withhold "any information that could lead to the identity" of lethal injection drug "suppliers or of individuals or companies that performed related critical services." 58 F.4th at 1262 (quotation marks and citation omitted). The Circuit's inquiry focused on whether contractors' "names" could be "commercial information," and whether "key contract terms"—including drug prices, quantities, expiration dates, invoices, container units, lot numbers, purchase order/reference numbers, substance descriptions, drug concentrations, and dates of purchase, service, and/or delivery—could "in fact

Page **10** of **14**

reveal the identities of individuals and companies" such that the information could be considered confidential. *Id*. at 1262–71.

The Circuit reversed and remanded, first holding that BOP had failed to provide "detailed and specific information" showing that the withheld contractor names fell within Exemption 4, and that on remand, the district court should "require supplemental affidavits to help it determine whether the contractors' names demonstrably pertain to the exchange of goods or services or the making of a profit, such that they may be withheld under Exemption 4." *Id*. at 1269. Second, the Circuit held that the district court must require BOP to "explain how the [key] contract terms are identifying." *Id*. at 1271. "Should the district court conclude that any identifying information is appropriately withheld under Exemption 4, it should also make an express finding as to whether portions of the withheld documents are reasonably segregable." *Id*.

Here too the Government's declarations and briefing lack the requisite specificity to show whether withheld contractor names "demonstrably pertain to the exchange of goods or services or the making of a profit," and whether contract terms are identifying. *Id*. at 1269–71. The Government has merely asserted that the withheld information is confidential and that it is routinely withheld. *See* ECF No. 35-1 at 36–37. On the basis of the record before it, the court cannot determine whether Exemption 4 is rightfully applied; accordingly, both parties' summary judgment motions as to Exemption 4 will be denied, and the court will order the Government to supplement the evidentiary record and its briefing on the application of Exemption 4.

D. **Exemption 5 — Deliberative Process Privilege**

FOIA's Exemption 5 exempts from disclosure only those records that traditionally would be exempt from production in the civil discovery context. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). This includes documents that would be withheld under the

deliberative process privilege.  *See Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

To withhold records under Exemption 5, an agency must "identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials." *Jud. Watch, Inc.*, 2019 WL 4644029, at *5. "The question is not whether disclosure could chill speech, but rather if it is reasonably foreseeable that it will chill speech and, if so, what is the link between this harm and the specific information contained in the material withheld." *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 375 F. Supp. 3d 93, 101 (D.D.C. 2019).  It is not enough for an agency to speculate that harm could result from disclosure.  *Id*.  It must "connect[] the harms" in a "meaningful way to the information withheld, such as by providing context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure."  2019 WL 4644029, at *5; *see also Jud. Watch, Inc. v. U.S. Dep't of Just.*, 487 F. Supp. 3d 38, 47 (D.D.C. 2020), *rev'd and remanded on other grounds by Jud. Watch, Inc. v. United States Dep't of Just.*, 20 F.4th 49 (D.C. Cir. 2021) (concluding that DOJ sufficiently connected the disclosure of withheld documents to foreseeable harm where agency submitted a particularized affidavit linking disclosure to tangible chilling effect).

BuzzFeed challenges the Government's withholding of Records 1, 19, 33, 45, 57, 58, 135, and 137 under Exemption 5's deliberative process privilege, arguing that the Government has not "shown that this factual information cannot be segregated from any opinions expressed about that information," and it has not demonstrated foreseeable harm" from disclosure.  ECF No. 36-1 at 11–13.  But "agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," and BuzzFeed has not proffered some

"quantum of evidence" that BOP failed to comply with that obligation. *Sussman v. U.S. Marshals Serv.*, 494 F. 3d 1106, 1117 (D.C. Cir. 2007)). Consequently, BuzzFeed's first argument is unpersuasive, but the court agrees with BuzzFeed that the Government has failed to demonstrate the requisite foreseeable harm.

Without reliance on a declaration or affidavit, the Government argues that because Pentobarbital's selection in the lethal injection protocol is publicly known and has been used to carry out five executions, "the public's interest in the disclosure of BOP's prior efforts to procure lethal injection drugs is minimal." ECF No. 39 at 24. In addition, it argues that the value of disclosure does not outweigh the foreseeable harm to BOP's future decision making, given that it will likely have to identify new suppliers or different drugs in the future. *Id*.

To the extent that the Government argues that disclosure would discourage frank dialogue, it cannot rely on generalized statements. *See Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019). The Government has failed to connect any particular document to the stated harm, and it does not "provid[e] context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, No. 17-cv- 0832, 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019).

Consequently, the court will deny summary judgment for both parties regarding Exemption 5 and permit the Government to supplement the record regarding foreseeable harm.

### IV.   CONCLUSION

Accordingly, the Government's motion for summary judgment and the Plaintiff's motion for summary judgment will both be GRANTED in part and DENIED in part. A corresponding Order will accompany this Memorandum Opinion.

Date: August 30, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge